**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ADAM PERRY, on Behalf of Himself and All Others Similarly Situated, | ) ) ) ) |
| | Case No. 1:20-CV-04494 (GHW) |
| Plaintiff, | ) ) |
| v. | ) ) |
| WELLS FARGO & COMPANY, CHARLES W. SCHARF, TIMOTHY J. SLOAN, and JOHN R. SHREWSBERRY, | ) ) ) |
| Defendants. | ) ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF THE INSTITUTIONAL INVESTORS'**
**MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND**
**APPROVAL OF THEIR SELECTION OF LEAD COUNSEL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................. 4

ARGUMENT ............................................................................................. 7

    I.     THE INSTITUTIONAL INVESTORS SHOULD BE APPOINTED
          LEAD PLAINTIFF ............................................................................ 7

         A.    The PSLRA's Standard for Appointing Lead Plaintiff.............................. 7

         B.    The Institutional Investors Are the "Most Adequate Plaintiff" ................. 8

               1.    The Institutional Investors' Motion Is Timely.............................. 8

               2.    The Institutional Investors Have the Largest Financial
                       Interest........................................................................... 8

               3.    The Institutional Investors Satisfy Rule 23's Requirements ......... 9

               4.    The Institutional Investors Are Precisely the Type of Lead
                       Plaintiff Envisioned by the PSLRA ............................... 10

    II.    THE COURT SHOULD APPROVE THE INSTITUTIONAL
         INVESTORS' SELECTION OF COUNSEL ...................................... 13

    III.    CONCLUSION.................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
  258 F.R.D. 260 (S.D.N.Y. 2009) ...................................................................................11, 12

*In re Braskem S.A. Sec. Litig.*,
  2015 WL 5244735 (S.D.N.Y. Sept. 8, 2015).................................................................15

*Chahal v. Credit Suisse Grp. AG*,
  2018 WL 6803377 (S.D.N.Y. Aug. 27, 2018) ..............................................................15

*City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp.*,
  2019 WL 364570 (S.D.N.Y. Jan. 30, 2019) ....................................................................7

*City of Taylor Police & Fire Ret. Sys. v. W. Union Co.*,
  2014 WL 4799659 (D. Colo. Sept. 26, 2014) ...............................................................10

*Felix v. Symantec Corp.*,
  2018 WL 4029053 (N.D. Cal. Aug. 23, 2018) ..............................................................10

*Hom v. Vale S.A.*,
  2016 WL 880201 (S.D.N.Y. Mar. 7, 2016) .....................................................................9

*Mustafin v. GreenSky, Inc.*,
  2019 WL 1428594 (S.D.N.Y. Mar. 29, 2019) ..........................................................12, 15

*Owen v. Elastos Foundation*,
  2020 WL 2824624 (S.D.N.Y. May 26, 2020) .................................................................9

*Reimer v. Ambac Fin. Grp., Inc.*,
  2008 WL 2073931 (S.D.N.Y. May 9, 2008) .................................................................13

*Reitan v. China Mobile Games & Entm't Grp., Ltd.*,
  68 F. Supp. 3d 390 (S.D.N.Y. 2014)..............................................................................10

*Topping v. Deloitte Touche Tohmatsu CPA*,
  95 F. Supp. 3d 607 (S.D.N.Y. 2015)..............................................................................15

*In re Vivendi Universal, S.A. Sec. Litig.*,
  605 F. Supp. 2d 570 (S.D.N.Y. 2009)............................................................................10

*Weltz v. Lee*,
  199 F.R.D. 129 (S.D.N.Y. 2001) .....................................................................................9

*Workman v. Namaste Techs., Inc.*,
  2019 WL 280948 (S.D.N.Y. Jan. 22, 2019) ....................................................................9

**STATUTES**

15 U.S.C. § 78u-4(a)(1) ....................................................................................................7

15 U.S.C. § 78u-4(a)(3) ........................................................................................... *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(a)(4) ....................................................................................................9

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 (1995) ....................10

Movants Handelsbanken Fonder AB ("Handelsbanken"), Public Employees' Retirement System of Mississippi ("Mississippi"), State of Rhode Island, Office of the General Treasurer, on behalf of the Employees' Retirement System of Rhode Island ("Rhode Island"), and the Louisiana Sheriffs' Pension & Relief Fund ("Louisiana Sheriffs") (collectively, the "Institutional Investors") respectfully submit this memorandum of law in support of their motion, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for entry of an Order: (i) appointing the Institutional Investors as Lead Plaintiff on behalf of themselves and all persons or entities that purchased or otherwise acquired Wells Fargo & Company ("Wells Fargo" or the "Company") common stock between February 2, 2018 and March 10, 2020, both dates inclusive (the "Class Period"); (ii) approving the Institutional Investors' selection of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") and Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Lead Counsel for the proposed Class; and (iii) granting such other and further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

The Institutional Investors—four sophisticated institutional investors with a combined $108 billion in assets under management—respectfully submit that they should be appointed Lead Plaintiff on behalf of all persons or entities who purchased or otherwise acquired Wells Fargo common stock during the Class Period (the "Class"). The above-captioned action (the "Action") brought against Well Fargo and current and former executives Timothy J. Sloan ("Sloan"), Charles W. Scharf ("Scharf"), and John R. Shrewsberry (collectively, "Defendants"), alleges violations of Sections 10(b) and 20(a) of the Exchange Act and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder. Specifically, the Action alleges that, in the wake of a widespread banking scandal, Wells Fargo misrepresented that it had improved its governance

and oversight structures to ensure that there would be no recurrence of the abuses of customer and shareholder trust that had plagued the Company. Wells Fargo shareholders—including the Institutional Investors—incurred significant losses after the U.S. House of Representatives Financial Services Committee issued a report revealing that Wells Fargo has "clearly demonstrated an unwillingness and inability to stop harming its customers."

The PSLRA governs the appointment of a lead plaintiff in class action lawsuits asserting violations of the federal securities laws, and directs courts to appoint the "most adequate plaintiff" to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to identify the movant that asserts the "largest financial interest" in the relief sought by the Class in this litigation, and also determine whether such movant has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). For the reasons set forth below, the Institutional Investors are the "most adequate plaintiff" by virtue of, among other things, the approximately $39.7 million in losses that they incurred on their purchases of 2,284,583 shares of Wells Fargo stock during the Class Period.[1]

The Institutional Investors also meet the typicality and adequacy requirements of Rule 23 because their claims are typical of those of absent Class members, and because they will fairly and adequately represent the interests of the Class. Additionally, the Institutional Investors are precisely the type of sophisticated institutional investors that Congress intended to empower to

---

[1] The Institutional Investors' PSLRA-required Certifications are provided as Exhibit A to the Declaration of Hannah Ross in Support of the Motion of the Institutional Investors for Appointment as Lead Plaintiff and Approval of Their Selection of Lead Counsel ("Ross Decl."). In addition, charts setting forth calculations of the Institutional Investors' losses are provided as Exhibit B to the Ross Decl.

lead securities class actions.  The Institutional Investors possess the capability, resources, and experience to oversee this complex litigation and guarantee the vigorous prosecution of the Action.

Further, as set forth in greater detail in their Joint Declaration submitted herewith, the Institutional Investors fully understand the Lead Plaintiff's obligations to the Class under the PSLRA, and are willing and able to undertake the responsibilities of the Lead Plaintiff to ensure the vigorous prosecution of this action.[2]  Indeed, each of the Institutional Investors has experience overseeing counsel in complex litigation or benefits from the resources and dedicated personnel of an in-house legal staff, and will bring those resources and experiences to bear on behalf of the Class as Lead Plaintiff.  *See id*. ¶¶ 2-11.  The Institutional Investors' decision to jointly prosecute this action was also motivated, in part, by their shared view that the Action presents a number of issues from a public policy perspective that are of special concern to institutional investors worldwide.  *See id*. ¶¶ 12-15.  Prior to seeking a role as Lead Plaintiff, representatives from the Institutional Investors held a conference call to discuss, among other things, the merits of the claims against Defendants, as well as their respective funds' common goals in the litigation.  *See id*. ¶ 16.  The Institutional Investors also established a clear and well-coordinated litigation strategy for this case, including a process for joint decision-making, and to ensure close oversight of proposed Lead Counsel.  *See id*. ¶¶ 17-22.

Finally, the Institutional Investors request that the Court approve their choice of Bernstein Litowitz and Cohen Milstein as Lead Counsel.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("[T]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class").  Bernstein Litowitz and Cohen Milstein are nationally recognized securities class

---

[2] *See* Joint Declaration of Staffan Ringvall, Ta'Shia S. Gordon, Amy L. Crane, and Osey McGee Jr. in Support of the Motion of the Institutional Investors for Appointment as Lead Plaintiff and Approval of Their Selection of Lead Counsel ("Joint Decl."), Ross Decl., Ex. C.

action litigation firms that have recovered billions of dollars for defrauded investors.  Moreover, Bernstein Litowitz and Cohen Milstein have worked together successfully in the past and achieved noteworthy results for investors, including in cases pending in this District.  Notably, Bernstein Litowitz and Cohen Milstein are well-prepared to efficiently litigate this case due to their close familiarity with the facts and Defendants.  Bernstein Litowitz served as Lead Counsel in *Hefler v. Wells Fargo & Co.*, No. 16-cv-5479 (N.D. Cal.), a securities fraud lawsuit based on alleged false and misleading statements by Wells Fargo and its executives about the Company's unauthorized customer account scandal—the very same misconduct at the heart of Defendants' misrepresentations in this case.  *See* Section II, *infra*.

For these reasons, the Institutional Investors respectfully request that the Court appoint them as Lead Plaintiff and approve their selection of Bernstein Litowitz and Cohen Milstein as Lead Counsel for the Class.

## FACTUAL AND PROCEDURAL BACKGROUND

Wells Fargo is a financial services company that provides retail, commercial, and corporate banking services.  In September 2016, investors learned that Wells Fargo had engaged in widespread consumer abuses, including fraudulent bank account opening practices.  Exposure of these practices drew intense regulatory scrutiny and resulted in the U.S. Department of Justice ("DOJ"), SEC, and other federal and state authorities collectively levying billions of dollars in financial penalties on Wells Fargo.  On February 2, 2018, the first day of the Class Period, the Company agreed to a Consent Order ("Federal Reserve Consent Order") with the Federal Reserve System ("FRS") to address the oversight failures of Wells Fargo's Board of Directors that had facilitated widespread abuses and compliance breakdowns.  That day, the Company announced its confidence in its ability to satisfy the Federal Reserve Consent Order's requirements.

Soon after, on April 20, 2018, Wells Fargo entered into consent orders with the Consumer Financial Protection Bureau ("CFPB") and Office of the Comptroller of the Currency ("OCC") (together with the Federal Reserve Consent Order, the "Consent Orders"). The Consent Orders required payment of $1 billion in civil penalties and development of a comprehensive plan to identify and remediate present and future consumer harm.

Throughout the Class Period, Defendants repeatedly reassured investors that the Company was developing and implementing the required governance and risk management reforms, was aligned with regulators, and was making meaningful progress toward meeting its obligations under the Consent Orders. Specifically, Defendants told investors the Company had "centralized all risk management functions and [was] now implementing a fully integrated operating model for risk management"; affirmed its "commitment[] to satisfy the requirements of the [FRS Consent Order]"; and represented that the Company "will work to fully satisfy all of the Consent Order's requirements." These and similar statements by Defendants during the Class Period were false and misleading because Defendants knew but concealed from investors that the Company's remediation plans were inadequate, the Company had received letters from regulators saying as much, and the Company had been threatened with supervisory or enforcement actions and penalties. As a result of Defendants' false and misleading statements and omissions, shares of Wells Fargo common stock traded at artificially inflated prices throughout the Class Period.

The truth began to be revealed on March 4, 2020, after the market closed, when the House Financial Services Committee released a 113-page report (the "House Report") detailing its year-long investigation into Wells Fargo and concluding that Wells Fargo was *not* in compliance with the Consent Orders and was unwilling to take the steps necessary to satisfy its obligations. The House Report described Wells Fargo's risk management plans as "materially incomplete" and

"woefully short" of the FRS's expectations, and the House Report revealed that in March 2019, the FRS had sent Wells Fargo a letter stating that the Company's remediation plans "remain materially incomplete" and were "riddled with errors and discrepancies." On this news, Wells Fargo shares declined from $41.40 per share on March 4, 2020 to $38.90 on March 5, 2020, on heavy trading volume.

Then, on March 10, 2020, Defendant Scharf testified before the House Financial Services Committee and finally acknowledged that Wells Fargo "ha[s] not yet done what is necessary to address [its] shortcomings" and that "the [C]ompany's leadership failed its stakeholders" and "we did not have the appropriate controls in place across the [C]ompany." Additionally, that day, House Financial Services Committee Chairwoman Maxine Waters requested that the DOJ review 2019 testimony by Defendant Sloan to investigate whether he had lied to Congress in violation of federal laws. As a result of these disclosures, Wells Fargo shares declined from $35.08 per share on March 10, 2020 to $32.33 on March 11, 2020 and then down to $27.20 on March 12, 2020 on heavy trading volume.

As a result of Defendants' false and misleading statements, and the precipitous decline in the value of Wells Fargo common stock as the truth was revealed, the Institutional Investors and other Class members suffered significant losses and damages.

Investors have filed multiple securities class actions alleging violations of federal law and seeking to recover the losses caused by Defendants' fraud. In addition to the instant Action, a similar action is pending in the Northern District of California: *Steamfitters Local 449 Pension & Retirement Security Funds v. Wells Fargo & Company*, No. 4:20-cv-04674, filed on July 13, 2020. The Institutional Investors are filing a separate motion for appointment as Lead Plaintiff and approval of selection of counsel in that case.

**ARGUMENT**

I.  **THE INSTITUTIONAL INVESTORS SHOULD BE APPOINTED LEAD PLAINTIFF**

The Institutional Investors respectfully submit that they should be appointed Lead Plaintiff because they timely filed the instant motion, believe they have the largest financial interest of any qualified movant, satisfy the typicality and adequacy requirements of Rule 23, and are sophisticated institutional investors with the skills and resources to oversee and vigorously prosecute the Action.

A.  **The PSLRA's Standard for Appointing Lead Plaintiff**

The PSLRA established a procedure for selecting a lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1); *see also* 15 U.S.C. § 78u-4(a)(3)(B).

First, within twenty days of filing the action, the plaintiff who files the initial action must publish a notice to the class informing class members of their right to file a motion for appointment as lead plaintiff within sixty days of publication of that notice. 15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, a court is to consider any motion made by class members and appoint the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i). In adjudicating a lead plaintiff motion, the "most adequate plaintiff" is presumed to be the entity, person, or group that (i) filed a complaint or made a motion to serve as lead plaintiff; (ii) has the largest financial interest in the relief sought by the class; and (iii) otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp.*, 2019 WL 364570, at *6 (S.D.N.Y. Jan. 30, 2019) (movant's "substantial financial interest in the litigation provides the ability and incentive to vigorously represent the class' claims."). This presumption may be rebutted only by "proof" that the presumptively most adequate plaintiff "will

- 7 -

not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

**B.** **The Institutional Investors Are the "Most Adequate Plaintiff"**

1.   <u>The Institutional Investors' Motion Is Timely</u>

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A). On June 11, 2020, Plaintiff Adam Perry filed the Action against Defendants in this District. *See* ECF No. 1. On June 15, 2020, counsel for Mr. Perry published on *GlobeNewswire* a press release announcing the pendency of the Action (the "PSLRA Notice"). *See* Ross Decl., Ex. D. The PSLRA Notice incorrectly identified the deadline to seek Lead Plaintiff appointment as August 10, 2020. *See id.* On June 18, 2020, counsel for Mr. Perry published on *GlobeNewswire* a press release correcting the PSLRA Notice and informing investors that the correct deadline to seek Lead Plaintiff appointment is August 14, 2020. *See* Ross Decl., Ex. E. Accordingly, the Institutional Investors have timely moved for appointment as Lead Plaintiff through the filing of this motion.

2.   <u>The Institutional Investors Have the Largest Financial Interest</u>

The PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the movant with the largest financial interest in the relief sought by the class, as long as that movant otherwise satisfies the requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The Institutional Investors incurred substantial losses of approximately $39.7 million on their purchases of 2,284,583 shares of Wells Fargo common stock during the Class Period. *See* Ross Decl., Exs. A & B. The Institutional Investors are unaware of any other movant with a larger

financial interest in the outcome of the Action.  Accordingly, as a qualified movant with the largest financial interest, the Institutional Investors are the presumptive "most adequate plaintiff."

3.    <u>The Institutional Investors Satisfy Rule 23's Requirements</u>

In addition to possessing a significant financial interest, the PSLRA requires that the lead plaintiff must "satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *see also Owen v. Elastos Foundation*, 2020 WL 2824624, at \*2-3 (S.D.N.Y. May 26, 2020) (Woods, J.).  On a motion to serve as Lead Plaintiff, a movant need only "make a preliminary showing that the adequacy and typicality requirements have been met." *Hom v. Vale S.A.*, 2016 WL 880201, at \*6 (S.D.N.Y. Mar. 7, 2016) (Woods, J.) (citation omitted). Here, the Institutional Investors unquestionably satisfy both requirements.

"Typicality is satisfied 'where the claims arise from the same course of events and each class member makes similar legal arguments to prove defendant's liability.'" *Workman v. Namaste Techs., Inc.*, 2019 WL 280948, at \*3 (S.D.N.Y. Jan. 22, 2019) (Woods, J.) (quoting *In re Symbol Techs., Inc. Sec. Litig.*, 2006 WL 1120619, at \*3 (S.D.N.Y. Apr. 26, 2006)).  Like all Class members, the Institutional Investors purchased Wells Fargo common stock during the Class Period at prices artificially inflated by Defendants' materially false and misleading statements and omissions, and suffered damages when the truth was revealed.  As such, the Institutional Investors satisfy the typicality requirement of Rule 23.

Rule 23's "adequacy" requirement is satisfied when the proposed class representative "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Representation is adequate when "(1) class counsel is qualified, experienced and generally able to conduct the litigation; (2) the class members [d]o not have interests that are antagonistic to one another; and (3) the class has a sufficient interest in the outcome of the case to ensure vigorous adequacy." *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001).  The Institutional Investors' interests are

aligned with those of the other members of the Class and no facts indicate any conflict between the Institutional Investors and other Class members.[3]  In addition, because of the Institutional Investors' substantial financial interest in this Action, Class members can be assured that they have the incentive to vigorously represent the Class' interests.  The Institutional Investors have also demonstrated their adequacy through their selection of highly qualified counsel in Bernstein Litowitz and Cohen Milstein to represent the Class.  Accordingly, the Institutional Investors satisfy Rule 23's adequacy requirement.

4.    The Institutional Investors Are Precisely the Type of Lead Plaintiff Envisioned by the PSLRA

In addition to possessing the largest financial interest and satisfying the requirements of Rule 23, the Institutional Investors are precisely the type of investors Congress sought through the enactment of the PSLRA to encourage to lead securities class actions.  *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) ("The Conference Committee believes that increasing the role of institutional investors . . . will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").  Courts have recognized a preference for institutional investors to be appointed as lead plaintiffs in securities class actions.  *See, e.g.*, *Reitan v. China Mobile Games & Entm't Grp., Ltd.*,

---

[3] Handelsbanken purchased Wells Fargo shares during the Class Period through its investment funds Handelsbanken Global Index Criteria and Handelsbanken USA Index Criteria.  Under Swedish law, the investment funds do not have legal capacity to sue in, or be brought before, courts of law or any other public authority.  *See In re Vivendi Universal, S.A. Sec. Litig.*, 605 F. Supp. 2d 570, 581 (S.D.N.Y. 2009) (finding that a Swedish asset manager has standing to sue on behalf of investment funds).  Instead, Handelsbanken, as the investment manager to the funds, shall represent the investors in the funds with respect to all issues concerning investments made by those funds and has standing to assert these claims.  *See id.*; *see also City of Taylor Police & Fire Ret. Sys. v. W. Union Co.*, 2014 WL 4799659, at *6 (D. Colo. Sept. 26, 2014) (appointing Swedish asset manager as lead plaintiff after finding that it had standing to sue on behalf of its investment funds); *Felix v. Symantec Corp.*, 2018 WL 4029053, at *4 (N.D. Cal. Aug. 23, 2018) (appointing Swedish asset manager as lead plaintiff).

68 F. Supp. 3d 390, 396 (S.D.N.Y. 2014) (collecting cases and recognizing that "many courts have demonstrated a clear preference for institutional investors to be appointed as lead plaintiffs").

As explained in further detail in the Joint Declaration, the Institutional Investors are four sophisticated institutional investors with significant experience representing investor classes in shareholder lawsuits and overseeing the work of outside counsel.  *See* Joint Decl., Ross Decl., Ex. C; *see also In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) ("Groups of plaintiffs are specifically permitted by the PSLRA to be appointed lead plaintiff. . . . Because they have established their ability to act independent of counsel, [the institutional investors] are a proper group and are presumptive lead plaintiffs.").

As set forth in their Joint Declaration, the Institutional Investors are sophisticated institutional investors that have combined assets under management of approximately $108 billion with experience and success serving as members of lead plaintiff groups under the PSLRA.  *See* Joint Decl., Ross Decl., Ex. C ¶¶ 2-11.  They have demonstrated their willingness, resources, and ability to fulfill the Lead Plaintiff's obligations under the PSLRA and their commitment to working cohesively together in the prosecution of this Action.  *See id.* ¶¶ 1-13.  The Joint Declaration also describes the deliberative and independent processes each of the Institutional Investors followed in deciding to jointly seek appointment as Lead Plaintiff, and discusses the motivations driving that decision.  *See id.* ¶¶ 14-15.  For example, the Institutional Investors' decision to jointly prosecute this Action was, in part, motivated by their shared view that the securities class action against Wells Fargo raises issues of public policy concern to institutional investors worldwide. *See id.* ¶ 12.  In determining to jointly seek Lead Plaintiff status, the Institutional Investors discussed those concerns, and their decision to join together to prosecute this case was in part

based on their view that the Class would benefit by leadership that included the perspectives of U.S.- and foreign-based constituencies.  *See id.* ¶¶ 12-16.

Moreover, the Institutional Investors have already taken measures to ensure the claims are vigorously and effectively prosecuted in the best interests of the Class.  For example, before seeking appointment as Lead Plaintiff, representatives of the Institutional Investors held a conference call in which they discussed the strength of the claims against Defendants, their strategy for prosecuting the Action, the benefits that the Class will receive from the leadership of institutional investors with prior experience serving as lead plaintiff under the PSLRA, and the measures the funds have and will take to ensure that the Class's claims will be zealously and efficiently litigated.  *See id.* ¶ 16.  Among other things, the Institutional Investors directed their proposed Lead Counsel to enter into a joint prosecution agreement that outlines their proposed Lead Counsel's respective responsibilities and ensures there will be no duplication of effort and that the claims of the Class are prosecuted vigorously yet efficiently and in a cost-effective manner, and which can be provided to the Court *in camera*.  *See id.*  ¶ 21.  Through these measures and others, the Institutional Investors have sought to ensure the Class will receive the best possible representation.

In sum, the Institutional Investors have demonstrated their willingness, resources, experience, and commitment to working closely with one another to supervise Lead Counsel and obtain the best possible recovery for the Class.  In other words, the Institutional Investors are precisely the type of institutional investors that Congress sought to empower as Lead Plaintiff when enacting the PSLRA.  *See, e.g.*, *Mustafin v. GreenSky, Inc.*, 2019 WL 1428594, at *5 (S.D.N.Y. Mar. 29, 2019) (appointing group of three institutions that "pledge[d] to work closely together to vigorously prosecute the claims on behalf of the class"); *In re Bank of Am.*, 258 F.R.D.

at 270 (appointing group of institutions as lead plaintiff that submitted declaration detailing discussions regarding "plans for joint oversight over the litigation and joint supervision of counsel"); *Reimer v. Ambac Fin. Grp., Inc.*, 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008) (appointing group of institutions that demonstrated they were "cooperating and pursuing the litigation separately and apart from their lawyers").

## II.   THE COURT SHOULD APPROVE THE INSTITUTIONAL INVESTORS' SELECTION OF COUNSEL

The PSLRA expressly provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should not disturb a proposed lead plaintiff's choice unless "necessary to protect the interests of the plaintiff class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

The Court should approve Bernstein Litowitz and Cohen Milstein as the Institutional Investors' selection for Lead Counsel.  As detailed in their firm resumes, Bernstein Litowitz and Cohen Milstein have extensive experience serving as lead counsel in securities class actions, including in this District.  *See* Bernstein Litowitz Firm Résumé, Ross Decl., Ex. F; Cohen Milstein Firm Résumé, Ross Decl., Ex. G.

Bernstein Litowitz is among the preeminent securities class action law firms in the country. Bernstein Litowitz served as Lead Counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-cv-3288 (S.D.N.Y.), in which settlements totaling in excess of $6 billion—one of the largest recoveries in securities class action history and the largest in this District—were obtained for the class.  More recently, Bernstein Litowitz secured a resolution of $2.43 billion in *In re Bank of America Corp. Securities, Derivative & ERISA Litigation*, No. 09-md-2058 (S.D.N.Y.), and a $1.06 billion recovery in *In re Merck & Co., Inc. Securities, Derivative & "ERISA" Litigation*, No. 05-cv-1151 (D.N.J.), on behalf of the respective classes.

Other significant examples in which courts in this District have recognized Bernstein Litowitz as adequate and qualified class counsel in securities class actions include: *In re Nortel Networks Corp. Securities Litigation*, No. 05-md-1659 (S.D.N.Y.) (recovering $1.07 billion for investors); *In re Citigroup Inc. Bond Litigation*, No. 08-cv-9522 (S.D.N.Y.) (recovering $730 million for investors); *In re Wachovia Preferred Securities and Bond/Notes Litigation*, No. 09-cv-6351 (S.D.N.Y) (recovering $627 million for investors); *In re Lehman Brothers Equity/Debt Securities Litigation*, No. 09-md-2017 (S.D.N.Y) (recovering $516 million for investors); and *In re JPMorgan Chase & Co. Securities Litigation*, No. 12-cv-3852 (S.D.N.Y.) (recovering $150 million for investors).  Additionally, Bernstein Litowitz has achieved noteworthy success in the predecessor case against Wells Fargo based on its secret and illegal opening of millions of unauthorized customer accounts, securing a $480 million recovery for investors in *Hefler v. Wells Fargo & Co.*, No. 16-cv-5479 (N.D. Cal.).  *See* Bernstein Litowitz Firm Résumé, Ross Decl., Ex. F.

Cohen Milstein is a firm with undisputed skill in litigating securities fraud class actions.  It has worldwide expertise as counsel for U.S. and non-U.S. institutional investors who have been the victims of securities fraud.  By applying innovative legal theories and litigation strategies, it has recovered billions of dollars for its clients in some of the largest and most complex securities class actions.  Indeed, in this Circuit, Cohen Milstein has recovered hundreds of millions of dollars for investors, including a $275 million settlement in a mortgage-backed securities class action against the Royal Bank of Scotland (*New Jersey Carpenters Health Fund v. The Royal Bank of Scotland Grp., plc*, No. 08-cv-05310-DAB-HBP (S.D.N.Y.)); $335 million in settlements in a class action against Residential Accredit Loans, Inc. and various investment banks (*New Jersey Carpenters Health Fund v. Residential Capital, LLC*, No. 08-cv-8781 (HB) (S.D.N.Y.)); and a $90

million settlement in a class action against MF Global (*Rubin v. MF Global, Ltd.*, No. 08-cv-2233 (VM) (S.D.N.Y.)), among others.

Due to its qualifications and vigorous advocacy for investors, courts in this District have regularly recognized Cohen Milstein as adequate and qualified class counsel in securities class actions, including in *GreenSky*, 2019 WL 1428594 (appointing Cohen Milstein to serve as lead counsel); *Chahal v. Credit Suisse Grp. AG*, 2018 WL 6803377 (S.D.N.Y. Aug. 27, 2018) (affirming magistrate judge appointment of Cohen Milstein to serve as lead counsel); *Plumbers & Pipefitters Nat'l Pension Fund v. Performance Sports Grp., Ltd., et al.*, No. 1:16-cv-3591-GHW, Dkt. No. 24 at 1-2 (S.D.N.Y. June 7, 2016) (appointing Cohen Milstein to serve as lead counsel) (Woods, J.); *In re Braskem S.A. Sec. Litig.*, 2015 WL 5244735, at *6 (S.D.N.Y. Sept. 8, 2015) (approving Cohen Milstein to serve as lead counsel on the basis of the firm's "experience litigating securities class actions"); *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 624 (S.D.N.Y. 2015) (selecting Cohen Milstein as lead counsel because it "has successfully prosecuted numerous securities fraud class actions"). *See* Cohen Milstein Firm Résumé, Ross Decl., Ex. G.

Moreover, Bernstein Litowitz and Cohen Milstein have a history of successfully prosecuting securities fraud class actions together. Bernstein Litowitz and Cohen Milstein served together as co-lead counsel in the aforementioned *In re Bear Stearns Mortgage Pass-Through Certificates Litigation*, No. 08-cv-8093 (S.D.N.Y.), which resulted in a $500 million recovery for investors, and in *In re Converium Holding AG Securities Litigation*, in which the firms represented Mississippi as a co-lead plaintiff and recovered approximately $85 million for investors. Bernstein Litowitz and Cohen Milstein are currently serving as co-lead counsel in *In re EQT Corporation Securities Litigation*, No. 19-cv-754 (W.D. Pa.).

Thus, the Court may be assured that that by granting this motion, the Class will receive the

highest caliber of legal representation. Accordingly, the Court should approve the Institutional

Investors' selection of Bernstein Litowitz and Cohen Milstein as Lead Counsel for the Class.

## III.    CONCLUSION

For the foregoing reasons, the Institutional Investors respectfully request that the Court

enter an Order: (i) appointing them as Lead Plaintiff; (ii) approving their selection of Bernstein

Litowitz and Cohen Milstein as Lead Counsel for the Class; and (iii) granting such other and

further relief as the Court may deem just and proper.

Dated:  August 14, 2020                          */s/ Hannah Ross*

| **COHEN MILSTEIN SELLERS & TOLL PLLC** | **BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP** |
|---|---|
| Steven J. Toll | Hannah Ross |
| S. Douglas Bunch (SB-3028) | Jeroen van Kwawegen |
| Molly J. Bowen | Avi Josefson |
| 1100 New York Avenue, N.W., Suite 500 | 1251 Avenue of the Americas |
| Washington, DC 20005 | New York, NY 10020 |
| Telephone: (202) 408-4600 | Telephone: (212) 554-1400 |
| Facsimile: (202) 408-4699 | Facsimile: (212) 554-1444 |
| stoll@cohenmilstein.com | hannah@blbglaw.com |
| dbunch@cohenmilstein.com | jeroen@blbglaw.com |
| mbowen@cohenmilstein.com | avi@blbglaw.com |

Laura H. Posner (LP-8612)                     *Counsel for Proposed Lead Plaintiff Handelsbanken*
88 Pine Street, Fourteenth Floor              *and Louisiana Sheriffs, and Proposed Lead Counsel*
New York, NY 10005                            *for the Class*
Telephone: (212) 220-2925
Facsimile: (212) 838-7745
lposner@cohenmilstein.com

*Counsel for Proposed Lead Plaintiff*
*Mississippi and Rhode Island, and Proposed*
*Lead Counsel for the Class*