LCSBWELC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

HANDELSBANKEN FONDER AB,
*et al,*

                    Plaintiffs,

          v.                          20 Civ. 4494  (GHW)

WELLS FARGO & COMPANY, *et al,*

                    Defendants.
                                      Conference
------------------------------x
                                      New York, N.Y.
                                      December 28, 2021
                                      12:00 p.m.

Before:

                    HON. GREGORY H. WOODS,

                                      District Judge

                         APPEARANCES

COHEN MILSTEIN SELLERS & TOLL, PLLC
     Attorneys for Plaintiffs
BY:  LAURA H. POSNER
     STEVEN J. TOLL
     DOUGLAS BUNCH

BERNSTEIN LITOWITZ BERGER & GROSSMANN
     Attorneys for Plaintiffs
BY:  JOHN C. BROWNE
     JONATHAN D. USLANER
     LAUREN M. CRUZ

SULLIVAN & CROMWELL, LLP
     Attorneys for Defendants WELLS FARGO & COMPANY
BY:  CHRISTOPHER M. VIAPIANO
     LEONID TRAPS
     JOHN R. SHREWSBERRY
     ELIZABETH DUKE
     ALLEN PARKER
     RICHARD C. PEPPERMAN

LCSBWELC

APPEARANCES (Continued)


CLARENCE DYER & COHEN, LLP
     Attorneys for Defendant TIMOTHY J. SLOAN
BY:  JOSH COHEN
     ADAM F. SHEARER

LCSBWELC

THE COURT:  Let me begin by taking appearances from the parties.  What I'd like to do is to ask the principal spokesperson for each set of parties to identify herself and the members of her team, rather than asking each of the lawyers to introduce themselves individually.

Let me begin with counsel for plaintiff.  Who's on the line for plaintiffs?

MS. POSNER:  Good afternoon and happy holidays, your Honor.

This is Laura Posner from Cohen Milstein Sellers & Toll, and with me from my firm is Steven Toll and Doug Bunch.

And from the Bernstein Litowitz firm, it should be John Browne Jonathan Uslaner and Lauren Cruz.

THE COURT:  Very good.  Thank you very much.

Who's on the line on behalf of defendant?

MR. VIAPIANO:  Good afternoon, your Honor.

This is Christopher Viapiano from Sullivan & Cromwell representing Wells Fargo & Company, John Shrewsberry, Allen Parker and Elizabeth Duke, and I should be joined by my colleagues Rich Pepperman and Leonid Traps.

THE COURT:  Very good.

MR. COHEN:  Good afternoon, your Honor.

This is Josh Cohen from Clarence Dyer & Cohen, on behalf of defendant Timothy Sloan. I'm joined by my colleague Adam Shearer.

LCSBWELC

THE COURT:  Let me begin with just a few brief instructions for the parties about how I'd like you to conduct yourselves during this conference.

First, please remember that this is a public proceeding.  Any member of the public or press is welcome to audit this conference.  The dial-in information for the proceeding is available on the Court's website.

I am not presently monitoring whether third-parties are auditing the conference, so you should just keep the fact that this is a public proceeding in mind as we proceed.

Second, please keep your phone on mute at all times, except when you're speaking to me or to one of the other parties' representatives. I was just hearing a little bit of background noise.  Please remember to keep your phones on mute, even if you don't think that there's background noise where ever you may be.  That could be distracting.

Third, please state your name each time that you speak during this conference.  You should do that even if you've spoken previously.

Fourth, I'm inviting our court reporter to let us know if she has any difficulty hearing or understanding anything that we have to say here today.  If she asks you to do something that will make it easier for her to do her job, please do it to the extent that you can.

And finally, I'm ordering that there be no recording

LCSBWELC

or rebroadcast of all or any portion of today's conference.

Counsel, with that out of the way, let's turn to my agenda for the conference.  This is an initial pretrial conference for this case, and my agenda is relatively straight forward.

First, I'm going to give each of the parties the opportunity to describe any legal or factual issues that you'd like to bring to my attention.  I've reviewed the materials that have been submitted on the docket to date.  Still, I'm happy to hear from you about any issues or facts that you'd like to highlight.

Second, I hope to talk about the process that the parties will be using to litigate the case going forward.  For that portion of the conference, I expect to look to the parties' proposed case management plan and scheduling order to provide a framework for our conversation.

And finally, I hope to discuss what, if anything, I can do at this point to help facilitate any amicable resolution of the case.

So, counsel, with that agenda established, let me begin with counsel for plaintiffs, what would you like to tell me about the case as a whole?

MS. POSNER:  Thank you, your Honor.

Laura Posner from Cohen Milstein.  As your Honor is aware, this is a securities fraud class action brought pursuant

LCSBWELC

to Section 10(b) and 20(a) of the Securities Exchange Act.

In 2018, the Federal Reserve Board, the Office of the Comptroller of the Currency and the Consumer Financial Protection Bureau issued three separate orders that required Wells Fargo to rectify its corporate mismanagement, under which it had engaged in serious and widespread fraudulent practices, including the opening of millions of unauthorized bank accounts and the charging of hundreds of thousands of borrowers for unnecessary and non-consented to insurance.

Those three orders were historic.  They levied hundreds of millions in fines and also imposed an unprecedented asset cap, which to this day prohibits Wells Fargo from expanding its assets until it's complied with the terms of the federal reserve consent order.

Investors were understandably concerned about the ramifications of those consent orders and asset caps in particular on Wells Fargo's viability as a bank and its stock value and it monitors the bank's compliance with those consent orders quite closely.

Following the imposition of the consent orders, Wells Fargo's senior executives and directors made numerous statements that misleadingly represented the status of Wells Fargo's compliance with those consent orders.  They conveyed that Wells Fargo had passed stage one and was focused on the latter execution stages of the consent orders, when in reality

LCSBWELC

they had submitted multiple stage one plans that had been rejected by each of the regulators on multiple occasions.

Wells Fargo also misled investors about the timeframe to the listing of the asset cap and gave an unrealistically short timeframe when it knew that the removal would be significantly delayed based on the multiple extensions that it had requested and received from the regulators, as well as the unfavorable feedback that the regulators had given Wells Fargo on its proposed plan of timeline.

When ultimately the public learned of Wells Fargo's failures in terms of satisfying the consent orders requirement over the course of a series of partial disclosures, the price of its stock dropped pretty precipitously costing investors billions.

As with most 10(b) cases, we obviously need to establish falsities, scienter loss, causation and damages, so we think this will proceed fairly easily down that road.

As kind of moving into the process questions you asked. Since you issued your order denying the motion to dismiss in most respect, the parties have engaged in some discovery to date. We served document requests as to the defendants. We exchange initial disclosures. We agreed to a protective order that your Honor entered last week, and we are in the process of negotiating ESI protocols.

And then, we are going to be shortly moving into next

LCSBWELC

week and probably the week after meeting and conferring on the responses and objections to the discovery requests, as well as some of the specifics with regard to ESI, including custodians and search terms and some other aspects of the ESI protocols.

So that's our plan as of now.  We have not yet received any documents, so little premature to identify certain of the issues that we are likely to see as we move forward, but that's where we are to date.

THE COURT:  Thank you.

Let me hear from counsel for, first, Wells Fargo related defendants.  Counsel, what would you like to tell me about the case as a whole?

MR. VIAPIANO:  Thank you, your Honor.

Again, it's Christopher Viapiano from Sullivan & Cromwell for Wells Fargo and some of the individual defendants.

I think counsel for plaintiffs identified some of the legal issues that we will face down the road, including whether the remaining challenged statements after the Court's September 30th ruling on defendants' motion to dismiss, were false or misleading, whether they were made with scienter and whether those statements actually caused investor losses.

From the defendants' perspective, I think what the discovery process will show and provide is a much more complete picture of Wells Fargo and the individual defendants' efforts to comply with the three, 2018 consent orders, than was shown

LCSBWELC

in the two reports released by the house financial services committee staff in March of 2020, and it's those reports that really form the basis of plaintiffs' complaint in this action.

Those reports were based on limited production of documents, and were obviously public documents, so we look forward to the discovery process, again providing a much more robust picture of what Wells Fargo and the individual defendants were doing.

I also expect the discovery process to provide a more complete picture of the process by which Wells Fargo and the individual defendants went about setting -- excuse me, trying to satisfy the requirements of each of the three consent orders, and I expect that will show just how iterative that process is and better explain the statements that plaintiffs challenge in this case.

I also would like to note that before we get to the Court's consideration of these issues again at the summary judgment stage, we will have plaintiffs' motion to certify a class in this punitive securities class action that's due to be filed under the parties' agreed plan at the end of April of next year.  We anticipate that that will be a substantive motion which will work on both sides, including potentially arguments from the defendants that the challenge statements did not impact the price of Wells Fargo's stock.

Lastly, before we get to the process stage, just

LCSBWELC

another, I think, argument that bears noting as we look ahead is the issue of loss caution. Plaintiffs' counsel referenced very significant declines in the price of Wells Fargo's stock and the alleged corrective disclosure dates.

Three of the six of those dates are from March of 2020, the very beginning of the global pandemic when there was significant volatility in equity prices, significant downturns across the bottom market, and we anticipate significant expert work to get at the actual causes of those stock price declines, as well as the declines on the three other allege corrective disclosure dates.

Let me pause there and see if the Court has questions. Otherwise, I'd like to turn to the discovery process portion.

THE COURT:  Thank you.  Please, counsel, feel free to move along to that portion of the question.

MR. VIAPIANO:  As you saw in the parties' submissions, the parties have been able to agree on a schedule for the case, including for the completion of fact discovery, an interim date by which defendants will substantially complete the production of documents.

I do think, as we noted in our joint letter, that the parties will face challenges in discovery in this action, and the principal challenge will be that many of the documents that the plaintiffs have requested from Wells Fargo and the defendants will be confidential supervisory information or

LCSBWELC

otherwise prohibited from disclosure by regulation issued by the federal reserve, the OCC and the CFPB, and there will need to be a process of request to regulators and regulators weighing in on what documents can and cannot be produced in this case.

Wells Fargo is willing and will work as hard as it can to meet all of those deadlines, but there are going to be other parties that are involved here that will have to weigh in.

And just to note, the privilege against disclosure of those documents is one that belongs to the regulators, not to Wells Fargo. It's not up to Wells Fargo whether to produce those documents that are covered by confidential supervisory information.

THE COURT:  Good. Thank you very much.

Let me turn to counsel for Mr. Sloan.  Counsel, is there anything that you'd like to tell me about the case as a whole beyond what we've heard from your colleagues?

MR. COHEN:  Thank you, your Honor.

Josh Cohen for Tim Sloan.  I don't have anything separate or additional to what Mr. Viapiano just sketched out. We do look forward to the discovery process and the role that we think it will play in illuminating the disconnect between the allegations in the complaint and the truth as we know it.

THE COURT:  Thank you very much.

So, counsel, thank you for your comments about the

LCSBWELC

discovery process.  I looked at the case management plan and scheduling order that's been proposed by the parties, and generally I think it's reasonable, understanding the discovery in this case is expected to be complex.

I appreciate that the parties are meeting and conferring soon about ESI related issues.  I appreciate your thoughtfulness in that regard.  I expect to be in a position to embrace the majority of the deadlines that the parties have proposed in the case management plan and scheduling order.

I have one question about the proposed timeline for the class certification motion, and that's based on the fact that the proposed schedule has class certification motion practice happening before completion of expert discovery.

So, counsel for plaintiffs, can I hear from you on that point?  Do I take it from this proposal that you do not anticipate that there'll be expert affidavits or other information presented to the Court in connection with the class certification motion?

And if not, how do you link the proposal for the deadline for submission of these motions to the deadlines for completion of expert discovery?

MS. POSNER:  Thank you, your Honor.  Laura Posner.

We certainly are anticipating submitting an expert report in connection with our motion for class certification. That expert report will largely consist of an opinion with

LCSBWELC

regard to market efficiencies for the entirety of the class period.  I presume defendants will likewise submit expert report trying to argue that the market was not efficient for Wells Fargo, but we contemplated that expert report portion as separate from the expert discovery deadline of January 27, which I believe the parties anticipated pertain exclusively to merit base expert discovery.

THE COURT:  Good.  Thank you.

So, counsel, I want to make sure that if this is the parties' proposal that you have a clear process in mind regarding how expert reports and discovery with respect to them will be completed prior to the submission of class certification motions.  Have the parties discussed what I'll describe as internal deadlines for such expert disclosures and discovery leading up to the proposed deadline for submission of class certification motion?

Please go ahead.

MS. POSNER:  This is Laura Posner again.  We did not discuss any specific deadlines for disclosure of the experts in connection with class certification, but as is typical, and I defendants do not have any objection, we would anticipate submitting our affirmative expert report with our motion for class certification, so that would be on April 29th.

I presume the defendants would submit their opposition expert report on June 28th.  And that to the extent there was

LCSBWELC

the necessity for any form of rebuttal report, that would be filed with our August 29th reply.

And typically what occurs is, the defendants would take the deposition of plaintiffs' expert between the date of the filing of our opening motion for class certification and their opposition, and that we would take the deposition of their expert between the filing of their opposition and our reply.

THE COURT:  Thank you.

Please go ahead, counsel for Wells Fargo.

MR. VIAPIANO:  Christopher Viapiano for Wells Fargo and some of the individual defendants.  I agree with Ms. Posner.  We have the same expectation that the plaintiffs' would submit their expert report with their motion, and then we would, the defendants, would submit their expert report with our opposition.  So on the dates that are included in paragraph 14 of the parties' proposed schedule, we have the same expectations as to depositions of each side's experts.

THE COURT:  Fine.  Thank you.

Let me just say a few words about the proposed case management plan and scheduling order.

First, I'm happy to embrace the deadlines which the parties have proposed largely.  The deadlines for completion of expert and fact discovery are reasonable given the nature of the claims here.

LCSBWELC

The set of deadlines that I'm not going to order now are the deadlines for completion for class certification motions. To the extent, counsel for plaintiffs, that you want to bring such a motion, I'll invite you to submit a premotion conference request letter prior to bringing the motion.

At that conference or otherwise, we will set a schedule for the submission of the class certification motion. That does not mean that we will end up with a schedule other than the one that the parties have proposed, but I think it's premature for me to set a schedule for class certification motion practice here when I trust in the parties' sophistication. I prefer to ask you to submit a premotion conference letter closer to the date, and we'll set a schedule based on what you know and the time.

I will, however, embrace the deadline that the parties have proposed for "substantial completion" of document production, that is by its terms a somewhat flexible deadline; namely, by definition of what substantial completion is. My expectation would be that the parties would bring it to the Court's attention if you believe that for any reason that subsidiary deadline has not been complied with.

Let me just say a few brief words about the case management plan and scheduling order. I expect to enter it later today or perhaps tomorrow. It will govern your conduct going forward. The principal thing that I want to highlight

LCSBWELC

here is that you should view these deadlines as just that, deadlines.

They are deadlines for completion of expert and fact discovery respectively, and you'll see that the deadlines are stated using the word "completed."

So, for example, paragraph 7A states that all fact discovery shall be completed no later than October 28, 2022. The language of those provisions that -- the order that is in 7A and 7C, reflect my expectations that discovery will indeed be completed by that date.  In other words, that there won't be more than this than after those dates.  Please conduct yourselves with that expectation in mind.

Let me just say a couple of brief words about the corollaries to that general rule.  You can extrapolate most of them yourselves, but I just want to highlight two.

First, to the extent that there are any concerns about the adequacy or timeliness of your adversary or any third-parties response to a discovery request, please do not sit on it.  Do not hoard it until late into the discovery period, much less afterwards.

Again, this is the deadline for completion of discovery.  It's not the date on which we will begin litigation about discovery.  You should bring issues to the Court's attention with the expectation that you should do so in a timely manner so that the Court can help you obtain, and

LCSBWELC

therefore use the responsive materials during the discovery period that I'm establishing here.

Again, don't expect that I'll add time to the discovery period, which is already very lengthy, to permit you to litigate discovery related disputes. That's not my expectation. Instead, again, my expectation is that you will bring issues to the Court's attention so that you can get and use materials during the discovery period.

If you hoard discovery disputes, you should not expert that the Court will intervene to help you obtain the information that will take you past the close of discovery; that is, the date by which discovery will be completed.

Another corollary to that basic rule is relatively straight forward, but I'll highlight it nonetheless. Because these are deadlines for completion of discovery, if you wait to take discovery, whether that be a deposition or a request for information until late in the discovery period, you'll be leaving yourself less information to conduct follow-up discovery with respect to any information that you might learn.

So, for example, here, the parties have proposed that you be permitted to take depositions up until and through the last day of discovery. If you were to take a deposition on the last day of discovery, you would have zero time to ask for information that might be provoked by information that you learned from the deposition. So please do not expect that I

LCSBWELC

will extend these deadlines because you waited to take discovery, and as a result found that there's follow-up information that you wanted to pursue.  Instead, please keep in mind the fact that these are deadlines for completion of discovery and comport yourselves accordingly.

I don't think that I need to tell these parties this, but bear with me.  I just remind you that the deadlines in paragraph 8C too are real deadlines, and that they require that you provide all of the requisite disclosures for any experts by the dates that are described in paragraph 8C.  I said that you have to provide all of the disclosures, that means 100 percent of them, to provide not just your expert's name, but her reports and all the other information that's provided for under Rule 26(a)(2).

Remember, too, the distinction between reports giving and experts who are not required to provide reports, and remember that experts who are not required to provide reports still must provide expert disclosures under the rules.  So please think very carefully about the nature of the testimony that you want to have presented by any given witness.

If it crosses the line into expert testimony, you should make sure that you provide the requisite disclosures by the date specified in paragraph 8C, and not right before trial, but by the date specified in paragraph 8C.  If you don't, you should not expect that your witness will be permitted to

LCSBWELC

provide expert testimony.

Remember, too, that in the absence of a report, experts who do not provide reports, but who do provide the other requisite disclosures under Rule 26(a)(2), are constrained in the scope of the testimony that they can provide.  You should expect that I'll limit their testimony to that that is permitted in the absence of a report if you fail to disclose one by the deadline specified in paragraph 8C.

So, counsel, I will grant extensions of these deadlines, but only for good cause shown.  The heart of evaluation of good cause is the evaluation of due diligence of the parties, and my expectation is that you will make professional judgments about the amount of resources that you want to invest in the case.

If you for whatever reason don't spend as much time on the case as you would like, you should not expect that I'll find that good cause to extend the deadlines.  Rather, I may ask you to live with the consequences of your decisions about how to prioritize your resources.

Any requests for an extension of time has to be made no later than two business days prior to the date sought to be extended as provided in the case management plan and scheduling order and my individual rules.

We're going to talk in just a minute about the prospect of settlement, which is to say I hope the parties are

LCSBWELC

able to work together at some point to resolve the case.  I just want to remind you, however, that my expectation is that work to settle the case will be happening in parallel with your effort to litigate it, unless the Court has given you grace under the case management plan and scheduling order.

So, in other words, if you fail to do the work necessary to litigate the case within the deadlines here because you think or hope the case will settle, but you haven't asked the Court for an extension of time as a result of your negotiations, that you shouldn't expect that will constitute good cause for an extension of the deadlines.

So I hope that the parties will ultimately be able to work together to resolve the case, but my expectation is that those efforts will happen by default in parallel with your efforts to litigate the case.

So I think that is all that I wanted to tell you.  I may potentially -- I haven't decided yet -- refer certain aspects of general pretrial management for this case to the assigned magistrate judge.  It's not my practice in all cases to do so, but I may do so here.  I just haven't decided.  You will see an order of reference if I decide to do so.  I think that's all that I wanted to say about the case management plan and scheduling order.

I see that the parties don't think that the time is proficuous now for you to engage in settlement discussions, and

LCSBWELC

I won't press you on that.  But I just want to let you know, as you already know, that if there's anything that I can do to help you, either by referring you to our free mediation service or to our assigned magistrate judge to help you with settlement discussion that I'm happy to do so.  You should just let me know sufficiently in advance of a date so that I can set something up for you.

I think that's everything that I wanted to cover on the agenda here.  Is there anything that any party would like to raise before we adjourn?

Let me begin with counsel for plaintiffs.

Counsel.

MS. POSNER:  Nothing else at this time, your Honor.

THE COURT:  Very good.

Counsel for Wells Fargo?

MR. VIAPIANO:  Nothing, your Honor.  Thank you very much.

THE COURT:  Counsel for Mr. Sloan?

MR. COHEN:  No, thank you, your Honor.

THE COURT:  This proceeding is adjourned.

(Adjourned)