# Exhibit 16

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 20-civ-4494(GHW)

- - - - - - - - - - - - - - - - - - - - - -x

IN RE WELLS FARGO & COMPANY

SECURITIES LITIGATION

- - - - - - - - - - - - - - - - - - - - - -x

                    November 2, 2022

                    10:30 a.m.

            REMOTE VIRTUAL VIDEOTAPED

DEPOSITION of CHARLES NIELSEN, taken

by Defendant Wells Fargo & Company,

pursuant to Notice, held at 429

Mississippi Street, Jackson,

Mississippi, before Kathleen Piazza

Luongo, a Notary Public of the State

of New York.

Charles Nielsen

6101.

Q.    Yes, that's right.

A.    I don't know -- I don't know if there's any -- are there any more that are 101s?

Q.    Yes, there are.  Towards the end they're a whole block.

A.    Okay.  Okay.  Yeah, okay, I see -- I see those, but I -- as far as individual dates?  I can't make out those numbers at all.

So I'll -- I'll try to answer your questions the best I can.

Q.    Okay.

So let's -- let's assume together that this is an accurate record of purchases and sales on behalf of Miss PERS in Wells Fargo securities, including the common stock with security ID ending 6101.

MS. POSNER:  Objection.

The description of what's included is in the actual Interrogatory Responses and

Charles Nielsen

Objections, but that's close.

Q.    Would all of these transactions have been made on behalf of Miss PERS' by investment managers?

A.    Yeah, any -- any purchase or sales are under the direct, you know, control of investment managers that PERS has retained; so they have complete discretion, you know, inside the parameters in which they were hired to manage, to buy and sell.

Q.    Did Miss PERS have any input into any of these specific transactions?

A.    That's -- Mississippi PERS does not do that.

MR. TRAPS:  Let me do another exhibit.

And let me, just as I'm introducing it...

CONTINUED EXAMINATION BY MR. TRAPS:

Q.    If I wanted to understand the circumstances of any of these individual transactions I would have to speak to the investment manager; correct?

Page 101

Charles Nielsen

A.    That would be correct.

Q.    Okay.

MR. TRAPS:  Okay.

The long-awaited exhibit is coming up.

(Whereupon, the above-mentioned document bearing Bates stamp WFC_MissPERS-0019943 was marked Exhibit 6 for identification and shown to the witness on Veritext Exhibit Share.)

MR. TRAPS:  Okay.  I've introduced as Exhibit 6 document Bates stamped WFC_MissPERS-0019943.

CONTINUED EXAMINATION BY MR. TRAPS:

Q.    Do you see that, Mr. Nielsen?

A.    I do.

Q.    Do you recognize this document?

A.    Let's see.

It looks like a, uh, it looks like a transaction or maybe a holdings report produced by -- looks like something Longview would produce -- not Longview -- yeah, Longview, yeah.

Page 105

Charles Nielsen

moved to a come called LSV.

Q.    Okay.

Back to the page I have you on. Do you see after the "Sold due to client instruction" there is a redaction and then there is a repeated notation to sold selling -- "Sold/Selling having been downgraded to Quality 3."

A.    I -- I don't know what that means.

Q.    Is it possible that only one sale of Wells Fargo securities was done pursuant to client instruction and the rest were not?

MS. POSNER:  Objection.

There are specific date ranges on this document and your question assumes many more months and years.

A.    As far as that goes, I -- honestly, you'd have to -- you'd have to talk to Longview.

Q.    But to be clear, Miss PERS never on any occasion instructed Longview to sell Wells Fargo securities

Page 106

Charles Nielsen

specifically?

A.    That is correct.  We -- that's not something that's under our purview.

We -- we just don't have the staff level to make those level of decisions; that's why we hire these firms to do that, that end of it for us.

Q.    But there are never exceptions to that general practice?

A.    No, there's -- there's no exceptions.

Q.    Okay.

Do you recall any communications with Longview around this time in July 2020 about Wells Fargo securities in particular?

A.    I think they may have sent just in their normal reporting package, you know, information on, you know, companies, you know, that -- that they had in their portfolio; but, um, generally if -- if that type of information comes through it's for informational purposes.

Page 128

Charles Nielsen

Q.    And I know you testified that Miss PERS did not get involved in individual investment decisions -- and by "individual investment decisions" I mean individual equities for the purposes of this case -- could anything in a news source have prompted you to reach out to an investment manager about a particular equity investment?

MS. POSNER:  Objection. Beyond the scope, and as to form; but if you can understand, go ahead.

A.    It wouldn't, for me, um, I can't speak for anybody else, but in general Mississippi PERS, we hire investment managers that we believe are best in class and we rely heavily upon their ability, decision-making ability, to make these type of, you know, this granular level of decisions.

Q.    You said you can't speak for anybody else; are you aware of anyone else at Miss PERS during the Class

Page 129

Charles Nielsen

Period?

A.    I am not aware.

Q.    Okay.

MR. TRAPS:  Just a couple of questions on two exhibits that we already looked at.  They're general questions but you can look back at them for context.  It's Exhibit 7 and Exhibit 8.  These are the two Longview presentations we looked at.

THE WITNESS:  Which one did you want me to look at?

MR. TRAPS:  Exhibit 7 and Exhibit 8.

THE WITNESS:  Okay.

CONTINUED EXAMINATION BY MR. TRAPS:

Q.    So we talked about these presentations already but my question is would Miss PERS have available copies of presentations like these in its records?

A.    They should be -- they should be retained, um, unless, you know, unless they fall out of, you know, our retention period and that's, I believe the

Page 154

C E R T I F I C A T I O N

I, KATHLEEN PIAZZA LUONGO, a Notary Public for and within the State of New York, do hereby certify that the foregoing witness, CHARLES NIELSEN, was duly sworn on the date indicated, and that the foregoing is a true and accurate transcription of my stenographic notes.

I further certify that I am not employed by nor related to any party to this action.

_____
KATHLEEN PIAZZA LUONGO