# Exhibit 24

S. Hrg. 116–119

# OVERSIGHT OF FINANCIAL REGULATORS

# HEARING

BEFORE THE

## COMMITTEE ON BANKING, HOUSING, AND URBAN AFFAIRS UNITED STATES SENATE

ONE HUNDRED SIXTEENTH CONGRESS

FIRST SESSION

ON

EXAMINING THE EFFORTS, ACTIVITIES, OBJECTIVES, AND PLANS OF FEDERAL REGULATORY AGENCIES WITH RESPECT TO PRUDENTIAL REGULATIONS FOR U.S. FINANCIAL INSTITUTIONS AND CREDIT UNIONS

MAY 15, 2019

Printed for the use of the Committee on Banking, Housing, and Urban Affairs



Available at: https://www.govinfo.gov/

U.S. GOVERNMENT PUBLISHING OFFICE

39–484 PDF       WASHINGTON : 2022

COMMITTEE ON BANKING, HOUSING, AND URBAN AFFAIRS

MIKE CRAPO, Idaho, *Chairman*

| | |
|---|---|
| RICHARD C. SHELBY, Alabama | SHERROD BROWN, Ohio |
| PATRICK J. TOOMEY, Pennsylvania | JACK REED, Rhode Island |
| TIM SCOTT, South Carolina | ROBERT MENENDEZ, New Jersey |
| BEN SASSE, Nebraska | JON TESTER, Montana |
| TOM COTTON, Arkansas | MARK R. WARNER, Virginia |
| MIKE ROUNDS, South Dakota | ELIZABETH WARREN, Massachusetts |
| DAVID PERDUE, Georgia | BRIAN SCHATZ, Hawaii |
| THOM TILLIS, North Carolina | CHRIS VAN HOLLEN, Maryland |
| JOHN KENNEDY, Louisiana | CATHERINE CORTEZ MASTO, Nevada |
| MARTHA MCSALLY, Arizona | DOUG JONES, Alabama |
| JERRY MORAN, Kansas | TINA SMITH, Minnesota |
| KEVIN CRAMER, North Dakota | KYRSTEN SINEMA, Arizona |

GREGG RICHARD, *Staff Director*
LAURA SWANSON, *Democratic Staff Director*

JOE CARAPIET, *Chief Counsel*
BRANDON BEALL, *Professional Staff Member*
CATHERINE FUCHS, *Professional Staff Member*

ELISHA TUKU, *Democratic Chief Counsel*
COREY FRAYER, *Democratic Professional Staff Member*

CAMERON RICKER, *Chief Clerk*
SHELVIN SIMMONS, *IT Director*
CHARLES J. MOFFAT, *Hearing Clerk*
JIM CROWELL, *Editor*

(II)

# C O N T E N T S

---

**WEDNESDAY, MAY 15, 2019**

|  | Page |
|---|---|
| Opening statement of Chairman Crapo | 1 |
| Prepared statement | 39 |
| Opening statements, comments, or prepared statements of: | |
| Senator Brown | 3 |
| Prepared statement | 40 |

## WITNESSES

| | |
|---|---|
| Joseph M. Otting, Comptroller of the Currency, Office of the Comptroller of the Currency | 5 |
| Prepared statement | 41 |
| Responses to written questions of: | |
| Chairman Crapo | 97 |
| Senator Brown | 97 |
| Senator Menendez | 107 |
| Senator Rounds | 107 |
| Senator Tillis | 108 |
| Senator Warren | 111 |
| Senator Moran | 113 |
| Senator Schatz | 114 |
| Senator Cortez Masto | 115 |
| Senator Smith | 121 |
| Senator Sinema | 121 |
| Randal K. Quarles, Vice Chairman for Supervision, Board of Governors of the Federal Reserve System | 6 |
| Prepared statement | 50 |
| Responses to written questions of: | |
| Chairman Crapo | 122 |
| Senator Brown | 125 |
| Senator Menendez | 197 |
| Senator Rounds | 199 |
| Senator Tillis | 202 |
| Senator Warner | 211 |
| Senator Warren | 213 |
| Senator Moran | 215 |
| Senator Schatz | 216 |
| Senator Cortez Masto | 219 |
| Senator Smith | 228 |
| Senator Sinema | 229 |
| Jelena McWilliams, Chairman, Federal Deposit Insurance Corporation | 8 |
| Prepared statement | 54 |
| Responses to written questions of: | |
| Chairman Crapo | 230 |
| Senator Brown | 233 |
| Senator Menendez | 243 |
| Senator Rounds | 244 |
| Senator Perdue | 245 |
| Senator Tillis | 246 |
| Senator Moran | 249 |
| Senator Schatz | 250 |
| Senator Cortez Masto | 252 |
| Senator Sinema | 255 |

IV

|   | Page |
|---|---|
| Rodney E. Hood, Chairman, National Credit Union Administration | 9 |
| Prepared statement | 64 |
| Responses to written questions of: | |
| Senator Brown | 256 |
| Senator Menendez | 266 |
| Senator Cortez Masto | 268 |
| Senator Sinema | 270 |

ADDITIONAL MATERIAL SUPPLIED FOR THE RECORD

| | |
|---|---|
| Letter from an alliance of banking institutions regarding CECL | 272 |
| Letter from the Credit Union National Association (CUNA) | 275 |
| Letter from the National Association of Federally-Insured Credit Unions (NAFCU) | 279 |
| Letter to Secretary Steve Mnuchin and Chairman Jerome Powell regarding comment on proposed amendments from Timothy F. Geithner, Jacob J. Lew, Janet L. Yellen, and Ben S. Bernanke | 282 |

31

Senator MENENDEZ. Thank you very much. I am glad we have gotten that far.

Chair McWilliams and Vice Chair Quarles, because the Community Reinvestment Act is at its core a civil rights law, will you commit to getting the support of the civil rights community before issuing a final rulemaking on the CRA?

Mr. QUARLES. I will take that first. Certainly the process that we are undergoing is to ensure that we have input from the civil rights community, and they have been very supportive of our looking at making this regulation more effective. I think that they are—we have received a lot of support from community organizations, including civil rights organizations generally, about ways in which this regulation can be improved.

Ms. MCWILLIAMS. I can attest, Senator, that as I travel to different States, I try to meet with consumer groups, especially in places where they are very active, to solicit their feedback on the needs of the LMI community as well as what needs to be done for CRA purposes. I have met with a number of CDFIs and CDCs to make sure that their input is heard.

Senator MENENDEZ. I appreciate both of your answers, but could you envision passing a rule where the civil rights community in unity was against the rule?

Mr. QUARLES. If there were unity of the affected communities in opposition to a rule, I think that would be surprising for us to approve a rule.

Senator MENENDEZ. But if it happened, could you envision adopting such a rule?

Ms. MCWILLIAMS. I have worked on some of the rulemakings in the past, and it is almost never in unity that, you know, one part of the industry or consumer community responds. So it is a hypothetical, but I would imagine if there is strong opposition, we would make amends to the rule——

Senator MENENDEZ. Well, I hope you will come up with a rule that ultimately has the support of the civil rights community. If not, I would be looking forward to engaging with you.

Thank you, Mr. Chairman.

Chairman CRAPO. Thank you.

Senator Warren.

Senator WARREN. Thank you, Mr. Chairman.

So over the past few years, we have learned about one illegal scheme after another at Wells Fargo. The bank has scammed customers by opening millions of fake accounts. It has unlawfully repossessed tens of thousands of cars, including cars that belong to deployed servicemembers. It has cheated thousands of their own employees out of their hours and kicked hundreds of families out of their homes in unlawful foreclosures.

Regulators, including your agencies, have sued Wells Fargo over and over again to force it to stop scamming its customers. As I understand it, the OCC alone right now has at least three open enforcement actions against the bank.

So, Comptroller Otting, let me ask, on April 3rd you wrote me that the OCC was "disappointed with the Wells Fargo Bank proposal under our consent orders." Has the OCC's position changed in the last 5 weeks?

32

Mr. OTTING. It has not.

Senator WARREN. All right. So you are not alone in being disappointed by Wells Fargo's progress. Chairman Powell and CFPB Director Kraninger have also made it clear that Wells Fargo has not cleaned up its act. But one big thing has changed. CEO Tim Sloan was finally kicked out, so Wells needs a new CEO.

Now, in a law that was passed in the wake of the savings and loan crisis in the 1980s, Congress gave the OCC the authority to examine the "competence, character, experience, or integrity" of candidates for senior positions in a "troubled bank" like Wells Fargo. In other words, the OCC can effectively veto CEO candidates who do not pass muster.

Comptroller Otting, I recently wrote you a letter asking why the OCC waived its right to a troubled bank review in recent settlements with Wells Fargo, and you responded yesterday that the agency was committed to conducting a review of the candidates for Wells Fargo CEO.

Will this review be exactly the review that Congress gave you the authority to conduct? I just want to be clear.

Mr. OTTING. Yes. No, I understand. First of all, Wells is currently not a troubled bank by the definition——

Senator WARREN. I just want to know if you are going to conduct the review according to the authority that has been given to you.

Mr. OTTING. Yes, we will.

Senator WARREN. You will. OK. I am glad, because when you, the OCC, waived the examination in your 2015 order settling claims that Wells Fargo broke anti-money-laundering laws and when you waived the examination in your 2016 fake accounts scandal settlement, the result was that Tim Sloan, a bank insider, complicit in the fake accounts scam, became CEO without a peep from the OCC.

Now, you also told me in your letter that you have decided that you will treat the results of the review as confidential supervisory information, which means that this review will be done in secret, behind closed doors, and never discussed publicly.

Comptroller Otting, under the OCC regulations you have the discretion to disclose this confidential supervisory information when it is "necessary and appropriate." Will you commit to publicly disclosing the OCC's evaluation of the "competence, experience, character, or integrity" of the next Wells CEO?

Mr. OTTING. I will not.

Senator WARREN. Why not?

Mr. OTTING. Because it will be confidential supervisory information.

Senator WARREN. Well, it is confidential if you make it confidential. The point is you have the legal authority to——

Mr. OTTING. At this point in time, I do not have plans to release that information publicly.

Senator WARREN. And what is the reason that you do not have plans? Why are you keeping this secret?

Mr. OTTING. Because, as you indicated, it is my prerogative.

Senator WARREN. OK. And our job is oversight here. So I would like to know why you want to exercise your prerogative to keep secret——

33

Mr. OTTING. I have not exercised——
Senator WARREN.——the oversight that the OCC has ducked repeatedly.
Mr. OTTING. Senator Warren, no one has been tougher on Wells Fargo than myself. No one has been more outspoken——
Senator WARREN. You mean at the OCC? That is a low bar.
Mr. OTTING. I would disagree with that. I find that insulting that you would make that comment.
Senator WARREN. Good. You know, people all across this country were scammed and squeezed by Wells Fargo. Their houses were taken away, their cars were stolen, because the bank's executives were more concerned about making mountains of money than about following the law. And the OCC never uttered a peep about their executives who were leading this. The OCC blew it once by letting Tim Sloan take over. This time you need to show your work and make your supervision public. That way consumers and Congress can hold you accountable, too.
Mr. OTTING. I appreciate the request.
Chairman CRAPO. Thank you.
Senator Jones.
Senator JONES. Thank you, Mr. Chairman. And thank you all for being here today.
I would like to follow up in a moment with something that Senator Moran said. I will be very charitable to him and call it a "question." But like my friend on the other side of the aisle, I am also very concerned about the future of rural America and agriculture in this country. Times, as he said, are tough, the future is bleak, and I think he said struggles in rural America are great, and they are because agriculture is being so victimized by nature and fluctuating markets. But I would also add a couple of things.
Number one, it is not just natural disasters. It is congressional disasters, when we cannot find congressional aid, supplemental aid to help these people, and we cannot put—the Congress and the Administration cannot put their politics aside to get some aid to these farmers and folks who need it desperately.
And the other thing is the markets that are leaving because of the Chinese tariffs. That is a huge problem, and we can have wonderful relationships with bankers, but that is not going to do any good if we do not have crops and we do not have commodities and we do not have markets to sell those commodities, and those relationships are going to get strained mightily if that banker is sitting at a witness table at a 341 bankruptcy hearing as the chief creditor for these farmers. So there are a lot of reasons, and I agree with Senator Moran about the relationship banking. I am a big, big proponent of that.
So now that I have gotten through with my "question" on that, as Senator Moran did, I would like to ask just a couple of little bit easier ones. CECL, the current expected credit loss model that is being considered by FASB, Senator Tillis and I and about 15 colleagues sent a letter expressing concern about that. I know that you are looking at that issue. I am concerned about how credit will be available in downturns of the economy, and what I see often in Congress and through regulation is that it is the unintended consequences that are not adequately looked at.