**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE WELLS FARGO & COMPANY
SECURITIES LITIGATION

Case No. 1:20-cv-04494-GHW-SN

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS'**
**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**
**AND APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**

## TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT .................................................................................. 1

II. BACKGROUND OF THE LITIGATION ................................................................ 2

III. ARGUMENT ........................................................................................................ 5

    A. The Court Should Grant Preliminary Approval of the Proposed Settlement ......... 5

        1. The Settlement Is the Product of Good-Faith, Arm's-Length Negotiations Among Experienced Counsel and a Mediator ........................................... 6

        2. The Proposed Settlement Falls Well Within the Range of Approval ........ 7

        3. The Settlement Treats All Settlement Class Members Fairly .................. 12

        4. The Settlement Does Not Excessively Compensate Plaintiffs' Counsel 14

    B. The Proposed Settlement Class Satisfies Rule 23 ................................................ 15

        1. The Settlement Class Satisfies the Requirements of Rule 23(a) ............. 15

            a) The Settlement Class Is So Numerous That Joinder Is Impracticable ................................................................................. 16

            b) There Are Common Questions of Law and Fact ......................... 16

            c) Lead Plaintiffs' Claims Are Typical of Those of the Settlement Class ............................................................................................. 17

            d) Lead Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class ................................................................... 18

        2. The Settlement Class Satisfies the Requirements of Rule 23(b)(3) ........ 19

            a) Common Legal and Factual Questions Predominate .................. 19

            b) A Class Action Is Superior to Other Methods of Adjudication.... 20

IV. THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS ....................... 20

V. PROPOSED SCHEDULE OF SETTLEMENT EVENTS ............................................. 22

VI. CONCLUSION ...................................................................................................... 22

Appendix A .................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Adv. Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ...........................................................................15

*In re Allergan PLC Sec. Litig.*,
No. 1:18-cv-12089-CM-GWG, 2021 WL 4077942 (S.D.N.Y. Sept. 8, 2021).................16, 20

*In re Alstom SA Sec. Litig.*,
253 F.R.D. 266 (S.D.N.Y. 2008) ...........................................................................16

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)...........................................................................................19

*In re Bank of Am. Corp. Sec., Deriv., & Emp. Ret. Income Sec. Act ("ERISA")*
*Litig.*,
281 F.R.D. 134 (S.D.N.Y. 2012) ...........................................................................17

*In re Barrick Gold Sec. Litig.*,
314 F.R.D. 91 (S.D.N.Y. 2016) ............................................................................17

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)...................................................................................6

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*,
822 F. App'x 40 (2d Cir. 2020) ..............................................................................5

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
574 F.3d 29 (2d Cir. 2009).................................................................................18

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) .......................................................................7, 15

*In re GreenSky Sec. Litig.*,
No. 1:18-cv-11071-AKH (S.D.N.Y. 2021).............................................................21

*Guevoura Fund Ltd. v. Sillerman*,
No. 1:15-cv-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ..................................7

*Hefler v. Wells Fargo & Co.*,
No. 4:16-cv-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ..................................5

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009)....................................................................14

*Lapin v. Goldman Sachs & Co.*,
    254 F.R.D. 168 (S.D.N.Y. 2008) ........................................................................17

*In re Luckin Coffee Inc. Sec. Litig.*,
    No. 1:20-cv-01293-JPC-JLC (S.D.N.Y. 2022) ........................................................21

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    No. 1:04-cv-08144-CM, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ................................19

*In re Merck & Co., Inc. Sec., Deriv. & "ERISA" Litig.*,
    No. 2:05-cv-01151-SRC-CLW, 2016 WL 11575090 (D.N.J. June 28, 2016) ........................14

*Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
    No. 1:17-cv-05543-WHP, 2021 WL 76328 (S.D.N.Y. Jan. 7, 2021)....................................12

*Pearlstein v. BlackBerry Ltd.*,
    No. 1:13-cv-07060-CM-KHP, 2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) ...............11, 21

*In re Pfizer Inc. Sec. Litig.*,
    No. 1:04-cv-09866-LTS-HBP, 2016 WL 11801285 (S.D.N.Y. Dec. 21, 2016) ....................14

*Purple Mountain Tr. v. Wells Fargo & Co.*,
    No. 3:18-cv-03948-JD, 2022 WL 3357835 (N.D. Cal. Aug. 15, 2022) ....................17, 18, 20

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015)................................................................................19

*In re Salix Pharms., Ltd. Sec. Litig.*,
    No. 1:14-cv-08925-KMW (S.D.N.Y. 2017) ..............................................................21

*In re Signet Jewelers Ltd. Sec. Litig.*,
    No. 1:16-cv-06728-CM-RWL, 2019 WL 3001084 (S.D.N.Y. July 10, 2019).................16, 18

*In re Signet Jewelers Ltd. Sec. Litig.*,
    No. 1:16-cv-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020)................5, 7, 21

*In re Twitter, Inc. Sec. Litig.*,
    No. 4:16-cv-05314-JST-SK, 2022 WL 17248115 (N.D. Cal. Nov. 21, 2022) ......................14

*In re Veeco Instruments, Inc. Sec. Litig.*,
    235 F.R.D. 220 (S.D.N.Y. 2006) ..........................................................................19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)................................................................................5, 21

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)..................................................................................15

*Woburn Ret. Sys. v. Salix Pharms., Ltd.*,
    No. 14-cv-8925-KMW, 2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017) .................................22

*In re WorldCom, Inc. Sec. Litig.*,
    219 F.R.D. 267 (S.D.N.Y. 2003) ...........................................................................................18

**STATUTES**

15 U.S.C. § 78u-4(e) .........................................................................................................13

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(a) .................................................................................................. *passim*

Fed. R. Civ. P. 23(b) .........................................................................................15, 18, 19, 20

Fed. R. Civ. P. 23(e) .............................................................................................1, 5, 6, 15

# I. PRELIMINARY STATEMENT

Lead Plaintiffs Handelsbanken Fonder AB ("Handelsbanken"); Public Employees' Retirement System of Mississippi ("Mississippi"); State of Rhode Island, Office of the General Treasurer ("Rhode Island"); and Louisiana Sheriffs' Pension & Relief Fund ("Louisiana Sheriffs") (collectively, "Lead Plaintiffs") are pleased to report that they have reached an agreement, subject to the Court's approval, to settle this securities class action (the "Action") in exchange for a cash payment of $1,000,000,000 for the benefit of the Settlement Class (the "Settlement"). Lead Plaintiffs now seek preliminary approval of the Settlement pursuant to Rule 23(e)(1).[1]

The proposed $1 billion cash Settlement represents an excellent recovery for the Settlement Class. The $1 billion cash recovery would be among the top six securities class action settlements in the past decade, and among the top 17 of all time. The recovery represents a significant percentage of the maximum realistically recoverable damages that could be established at trial. The recovery eliminates the real risks that protracted litigation might lead to lesser or no recovery—including very significant risks relating to price impact, loss causation, and damages—and guarantees a significant and immediate recovery for the Settlement Class.

The proposed Settlement was achieved after nearly three years of hard-fought litigation, substantial motion practice, extensive discovery, and vigorous arm's-length negotiations before the Honorable Layn R. Phillips, a former federal judge and a premier mediator. The Lead Plaintiffs—all sophisticated institutional investors—actively oversaw the litigation and fully endorse the Settlement. The proposed Settlement readily satisfies each of the approval factors required by Federal Rule of Civil Procedure 23(e) and Second Circuit precedent.

---

[1] All capitalized terms that are not otherwise defined in this memorandum have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated May 8, 2023 (the "Stipulation"), filed contemporaneously herewith.

For these reasons and those discussed further below, Lead Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order (Exhibit A to the Stipulation). Entry of the proposed Preliminary Approval Order would authorize the dissemination of notice of the Settlement to the Settlement Class. The Preliminary Approval Order contemplates scheduling a final approval hearing (the "Settlement Hearing") for the Parties and Settlement Class Members to present arguments regarding the Settlement, and for the Court to make a final determination as to whether the Settlement is fair, reasonable, and adequate.

## II. BACKGROUND OF THE LITIGATION

In 2018, Wells Fargo entered into consent orders with the Federal Reserve Board ("Federal Reserve"), Office of the Comptroller of the Currency ("OCC"), and the Consumer Financial Protection Bureau ("CFPB") (together, the "Regulators"). Lead Plaintiffs allege that, during the Class Period, Defendants made false and misleading statements to investors regarding the status of Wells Fargo's compliance with the 2018 Consent Orders and the timing for lifting a cap the Regulators had imposed on Wells Fargo's assets during the pendency of the 2018 Consent Orders. Lead Plaintiffs allege that Wells Fargo was nowhere near meeting the Regulators' requirements that were a predicate to satisfying the 2018 Consent Orders and lifting the asset cap. Lead Plaintiffs allege that a series of disclosures revealed to the market that Wells Fargo had misrepresented its compliance with those orders, causing a decline in Wells Fargo's stock price.

On August 29, 2020, the Court appointed Handelsbanken, Mississippi, Rhode Island, and Louisiana Sheriffs as Lead Plaintiffs for the Action, and approved their selection of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") and Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Co-Lead Counsel for the putative class.

On November 9, 2020, Lead Plaintiffs filed their Consolidated Amended Class Action Complaint (the "Complaint") asserting claims against Defendants under Section 10(b) of the

Securities Exchange Act of 1934 (the "Exchange Act"), and against the Individual Defendants and Charles W. Scharf under Section 20(a) of the Exchange Act.

On December 15, 2020, following letter briefing, the Court held a telephonic conference to hear argument on Defendants' forthcoming motions to dismiss.

On January 22, 2021, Defendants filed a 60-page motion to dismiss the Complaint. On March 8, 2021, Lead Plaintiffs opposed that motion and, on April 2, 2021, Defendants served their reply papers. On September 30, 2021, the Court issued its Memorandum Opinion and Order granting in part and denying in part Defendants' motion to dismiss the Complaint.

Lead Plaintiffs proceeded to serve Defendants with extensive requests for production, seeking documents on all issues relevant to the Action. Lead Plaintiffs also served 27 subpoenas on relevant third-party witnesses, including Wells Fargo's former directors and auditors.

Defendants and many of the subpoenaed third parties took the position that significant portions of the requested documents contained Confidential Supervisory Information ("CSI") and could not be produced to Lead Plaintiffs without permission from the Regulators. As a result, over the course of over a year, Lead Plaintiffs engaged in extensive negotiations with each of the three Regulators, sending six formal letters with extensive exhibits totaling more than 2,400 pages requesting waiver of the CSI privilege, in whole or in part. Ultimately, the Regulators each authorized the production of numerous categories of documents originally withheld as CSI.

In total, Defendants and the third parties produced, and Lead Counsel reviewed, approximately 3.5 million pages of documents in response to Lead Plaintiffs' document requests and subpoenas.

Defendants concurrently served requests for production and interrogatories on Lead Plaintiffs and subpoenaed six of Lead Plaintiffs' outside investment advisers. Following extensive

negotiations, Lead Plaintiffs and their investment advisers produced the requested documents to Defendants and responded to each of their interrogatories.

On October 3, 2022, Lead Plaintiffs filed their motion for class certification, which was accompanied by a 42-page expert report on market efficiency and damages methodology with more than 700 pages of exhibits.

On December 23, 2022, Defendants filed their opposition to Lead Plaintiffs' motion for class certification, which was accompanied by a 102-page expert report on market efficiency and damages methodology with more than 100 pages of exhibits.

Additionally, the Parties conducted a total of ten depositions including of, among others, market participants, each of the Lead Plaintiffs, and Lead Plaintiffs' expert on issues of market efficiency and damages methodology.

On January 6, 2023, the Parties participated in a private mediation overseen by former federal judge, the Honorable Layn R. Phillips of Phillips ADR. In advance of the mediation, the Parties exchanged comprehensive mediation statements, which addressed liability, loss causation, damages, and class certification. During the mediation, the Parties made lengthy and extensive formal presentations. Despite their efforts, the Parties did not reach a settlement at the January 6, 2023 mediation session. Subsequently, Judge Phillips issued a mediator's recommendation to settle the action for $1 billion, subject to certain conditions. On May 8, 2023, the Parties ultimately agreed upon the Stipulation to settle the Action.[2]

---

[2] The Parties also agreed to the conditions under which Defendants may terminate the Settlement if the number of persons or entities who request exclusion from the Settlement Class reaches a certain threshold. *See* Stipulation ¶ 37. This agreement, often referred to as a "blow provision," is a standard feature of securities class action settlements and generally maintained as confidential in order to prevent potential opt-outs from threatening to trigger the blow provision and leveraging that threat to obtain additional payment from the settling parties. The agreement is available for

## III.   ARGUMENT

The Settlement readily meets the standards for preliminary approval. This historic Settlement provides substantial benefits to investors and avoids the meaningful risks and delays that would otherwise accompany the Action. The Settlement is the product of extensive, hard-fought litigation and arm's-length settlement negotiations overseen by an experienced mediator.

### A.   The Court Should Grant Preliminary Approval of the Proposed Settlement

Federal Rule of Civil Procedure 23(e)(2) provides that a class action settlement warrants court approval if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "Courts in this Circuit recognize a strong judicial policy in favor of settlements, particularly in the class action context." *In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018) (citations omitted), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (similar).

Judicial approval of a class action settlement is a two-step process—*first*, the court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class, *see* Fed. R. Civ. P. 23(e)(1), and, *second*, after notice has been provided and a hearing has been held, the court determines whether to grant final approval of the settlement, *see* Fed. R. Civ. P. 23(e)(2). Courts grant preliminary approval upon a finding that it "will likely be able" to (i) finally approve the settlement under Rule 23(e)(2), and (ii) certify the proposed class for purposes of the settlement. *See* Fed. R. Civ. P. 23(e)(1)(B).

---

review *in camera*, however, at the Court's request. *See In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-cv-06728-CM-SDA, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020) ("This type of agreement is a standard provision in securities class actions and has no negative impact on the fairness of the Settlement."); *see also Hefler v. Wells Fargo & Co.*, No. 4:16-cv-05479-JST, 2018 WL 4207245, at *7 (N.D. Cal. Sept. 4, 2018) ("There are compelling reasons to keep [the opt-out threshold] confidential in order to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts.").

In considering *final* approval of the Settlement, Rule 23(e)(2) provides that the Court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[3] These factors are satisfied here, and preliminary approval is appropriate.

## 1. The Settlement Is the Product of Good-Faith, Arm's-Length Negotiations Among Experienced Counsel and a Mediator

The Settlement was achieved after extensive, vigorous negotiations between well-informed and experienced counsel following nearly three years of hard-fought litigation and substantial discovery. The Parties and their counsel were knowledgeable about the strengths and weaknesses of the case before entering into the Stipulation. Lead Plaintiffs conducted an extensive pre-suit investigation; briefed and substantially defeated Defendants' motion to dismiss; sought and conducted a review of approximately 3.5 million pages of documents produced by Wells Fargo and third parties; sought class certification, which was supported by extensive expert analysis and reports; participated in ten depositions; and consulted extensively with experts, including on issues

---

[3] In determining whether to grant final approval of the Settlement, the Court will also be asked to consider the Second Circuit's long-standing approval factors, many of which overlap with the Rule 23(e)(2) factors: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *see also* Fed. R. Civ. P. 23(e)(2) advisory committee note to 2018 amendment (noting that the Rule 23(e)(2) factors are not intended to "displace" any factor previously adopted by the Court of Appeals).

of regulatory compliance, CSI, loss causation, and damages. As a result, Lead Plaintiffs and Lead Counsel had a firm basis to assess the Action's strengths and weaknesses and the reasonableness of the proposed Settlement.

The Settlement was also reached only after arm's-length negotiations between experienced and well-informed counsel with the assistance of Judge Phillips, a well-respected and experienced mediator.

Lead Plaintiffs fully endorse the Settlement. Lead Plaintiffs were each well informed of the strengths and weaknesses of the claims. They consulted extensively with Lead Counsel throughout the litigation, fulfilled their discovery obligations throughout, and actively participated and consulted with Lead Counsel during the Parties' mediation and settlement negotiations. They are precisely the type of sophisticated institutional investors favored by Congress when it enacted the PSLRA.

Each of these facts supports preliminary approval of the Settlement in this case. *See, e.g.*, *In re Signet*, 2020 WL 4196468, at *3 (granting final approval of a settlement following mediation before, and a mediator's proposal by, Judge Phillips); *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-cv-07192-CM, 2019 WL 6889901, at *2 (S.D.N.Y. Dec. 18, 2019) (granting final approval of a settlement after an all-day mediation with Judge Phillips); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (finding that a settlement "was the product of prolonged, arms-length negotiation . . . facilitated by a respected mediator," Judge Phillips).

### 2. The Proposed Settlement Falls Well Within the Range of Approval

The Settlement amount is $1 billion in cash, which would make it one of the top six largest securities class action settlements in the past decade, the ninth largest ever in the Second Circuit, and one of the top 17 of all time in the United States. The Settlement accounts for the meaningful risks associated with the litigation—including at class certification, summary judgment, trial, and

appeal. This Action presented several substantial risks to establishing both liability and damages, which Lead Plaintiffs and Lead Counsel fully recognize, while continuing to believe in the merits of the claims.

First, Lead Plaintiffs faced challenges at trial in establishing that each misstatement was false and misleading. Lead Plaintiffs alleged that the 2018 Consent Orders set forth three distinct, linear stages of compliance, and that Defendants misrepresented that they had completed certain stages. However, Defendants maintained at the pleading stage—and were expected to continue to argue at trial, with the benefit of fact discovery—that the 2018 Consent Orders did not set forth a distinct, linear set of stages. In support of this argument, Lead Plaintiffs anticipated that Defendants would point to their communications with the Regulators, which they would contend supported their interpretation of the 2018 Consent Orders. Lead Plaintiffs further anticipated that Defendants would argue that their statements to investors comported with the ongoing feedback that they received from the Regulators. If a factfinder accepted Defendants' view of the 2018 Consent Orders or the factual record, there was a real risk that the factfinder would find that many of Defendants' statements were truthful.

Second, Lead Plaintiffs faced meaningful challenges establishing that Defendants' alleged misstatements were material to investors. In this regard, Defendants would likely argue that the financial press reported on multiple occasions before the alleged corrective disclosures that Wells Fargo was not yet in compliance with the Consent Orders. For example, *Reuters* reported on September 11, 2018—before any of the alleged corrective disclosures—that "U.S. regulators have rejected Wells Fargo & Co.'s plan to repay customers" under the 2018 OCC/CFPB Consent Orders, and reported again on December 6, 2018, that "the Federal Reserve has rejected Wells

Fargo & Co.'s plans" under the 2018 FRB Consent Order.[4] Lead Plaintiffs anticipated that Defendants would assert that the fact that Wells Fargo's stock price did not meaningfully drop on the dates when the *Reuters* reports were issued demonstrates that the misstatements alleged in this Action were not material to investors and the "omitted" facts were already known to the market.

<u>Third</u>, Defendants had meaningful arguments that they did not act with fraudulent intent. Specifically, Defendants would likely argue that they had no personal motive to lie, evidenced by the fact that they did not engage in suspicious insider sales of their personal Wells Fargo stock or have outsized incentive compensation packages tied to Wells Fargo's stock price. Additionally, the SEC never brought any charges against Wells Fargo or any of the Defendants. The Individual Defendants each have distinguished professional careers—with Defendant Betsy Duke, for example, having been selected by President George W. Bush to serve on the Board of Governors of the Federal Reserve—and would argue to a jury that they would not jeopardize their sterling reputations to temporarily increase the price of Wells Fargo's stock with zero personal benefit to them.

The Individual Defendants would also likely argue at summary judgment and trial that they genuinely believed that they were precluded by law from providing additional information to investors about the status of Wells Fargo's compliance with the 2018 Consent Orders. The Regulators have written rules and regulations that specifically prohibit bank executives from disclosing CSI to non-bank employees—with penalties including criminal punishment and civil fines. The Individual Defendants cited these CSI restrictions in certain of their statements to

---

[4] Patrick Rucker, *Reuters*, "Exclusive: U.S. regulators reject Wells Fargo's plan to repay customers – sources, Reuters" (Sept. 11, 2018), https://www.reuters.com/article/us-wells-fargo-insurance-exclusive/exclusive-u-s-regulators-reject-wells-fargos-plan-to-repay-customers-sources-idUSKCN1LR2LG; Patrick Rucker, *Reuters*, "Wells Fargo reform plans fail to satisfy Fed after scandals: sources" (Dec. 6, 2018), https://www.reuters.com/article/wells-fargo-fed-balance-idCNL1N1Y9034.

investors during the Class Period as the reason why they did not provide investors with further information about the status of their compliance with the 2018 Consent Orders. If the factfinder were to accept Defendants' explanations for why they did not disclose further information, damages could be reduced or eliminated altogether.

Fourth, Lead Plaintiffs faced serious risks in proving price impact, loss causation, and damages. This is particularly true given that three of the largest alleged drops occurred in early March 2020, the same week that the COVID-19 pandemic essentially shut down the country and resulted in unprecedented volatility in the United States capital markets. Indeed, the volatility and declines in the market were so extreme as to trigger market-wide trading halts (known as "circuit breakers") on March 9 and 12, 2020. Further, with respect to March 5, 2020, Defendants argued that news that day could not establish loss causation since the stock-price decline on that date was not statistically significant at the 95% level. And, Defendants argued that no new information was released on March 11-12, 2020—the final days of the Class Period—because all relevant information pertaining to the alleged fraud was previously disclosed in March 5-6, 2020 congressional reports.

The remaining three alleged loss causation events occurred prior to the pandemic, but each took place on dates when Wells Fargo announced quarterly earnings. On those three earnings dates, Wells Fargo disclosed negative news about the Company's financial performance, including about issues wholly unrelated to the 2018 Consent Orders, significantly complicating the issue of loss causation.

Accordingly, Defendants had strong arguments that the stock price declines on the alleged corrective disclosure dates and the concomitant stock drops on each of the disclosure dates were not caused by revelations about the 2018 Consent Orders, but rather were caused by other news—

specifically, the impact of the COVID-19 pandemic on Wells Fargo and unrelated news about Wells Fargo's financial performance.

The Parties' disputes concerning the amount of Wells Fargo's stock price drops attributable to the alleged fraud (versus Wells Fargo's earnings news or the pandemic) would thus be a hotly contested issue at class certification, summary judgment, and trial, with Lead Plaintiffs and Defendants providing dueling expert testimony. This anticipated "battle-of-the-experts" created significant uncertainty and risks to recovery. And if any of those arguments were accepted by the Court or a jury, damages would be meaningfully reduced.

<u>Finally</u>, even if Lead Plaintiffs ultimately prevailed at trial, Lead Plaintiffs still faced likely appeals—a process that could extend for years and might lead to a smaller recovery, or no recovery at all. Given these significant litigation risks, Lead Plaintiffs and Lead Counsel believe that the proposed $1 billion Settlement is an excellent result for the Settlement Class.

In addition, the Settlement is also demonstrably within the range of what is reasonable—and, indeed, is particularly meaningful—when compared to Lead Plaintiffs' maximum realistically recoverable damages. The maximum realistically recoverable damages in this case are approximately $4.2 billion. Thus, a recovery of $1 billion represents a recovery of 24% of investors' maximum realistically recoverable damages. This remarkable percentage-of-recovery dwarfs the typical recovery amounts in securities class actions. *See, e.g.*, *Pearlstein v. BlackBerry Ltd.*, No. 1:13-cv-07060-CM-KHP, 2022 WL 4554858, at *6 (S.D.N.Y. Sept. 29, 2022) (approving recovery of 13.75% of the estimated maximum damages of $1.2 billion which was "well within the range of reasonableness and, in fact, considerably above the high end of historical averages" and "substantially exceed[ed] the median recovery of 2.3% of . . . damages for securities class actions with damages of over $1 billion between 2012-2020" and the "median recovery of 4.2%

of damages in 2021"); *Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, No. 1:17-cv-05543-WHP, 2021 WL 76328, at *3 (S.D.N.Y. Jan. 7, 2021) (approving settlement that was 10% of the estimated damages, noting that the settlement was "within the range previously approved by judges in this District," referencing recoveries ranging from 3% to 11% of estimated damages).

### 3. The Settlement Treats All Settlement Class Members Fairly

The Settlement treats all Settlement Class Members fairly and does not improperly grant preferential treatment to Lead Plaintiffs or any segment of the Settlement Class. All Settlement Class Members will receive a distribution from the Net Settlement Fund pursuant to a plan of allocation approved by the Court.

At the final Settlement Hearing, Lead Plaintiffs will ask the Court to approve the proposed Plan of Allocation for the Net Settlement Fund (the "Plan"), which is set forth in the Notice and was developed by Lead Plaintiffs' damages expert, in consultation with Lead Counsel. *See* Declaration of Michael L. Hartzmark, Ph.D., Regarding the Calculation of Artificial Inflation and Damages for the Plan of Allocation ("Hartzmark Declaration"). The Plan is based on Lead Plaintiffs' allegations that Defendants' materially false and misleading statements and omissions caused artificial inflation in the price of Wells Fargo common stock during the Class Period, and that a series of public disclosures that each partially corrected the alleged misrepresentations and omissions removed that inflation.

As further detailed in the Hartzmark Declaration, the Plan appropriately accounts for the Court's motion to dismiss order, confounding news events, and loss causation. Specifically, the Plan (i) accounts for the Court's dismissal of claims based on purchases made between February 2, 2018 and May 29, 2018 by providing a risk-adjusted discount of 95% for purchases during this dismissed period; (ii) accounts for the fact that confounding news (*i.e.*, adverse non-fraud-related earnings news) was disclosed on the first three corrective disclosure dates of January 15, 2019;

April 12, 2019; and January 14, 2020, by discounting claims on those purchases by, respectively, 50%, 50%, and 42%; and (iii) accounts for the fact that the final three corrective disclosures occurred during the first week of March 2020 (*i.e.*, when there was extreme market volatility and confounding news related to the COVID-19 pandemic) by discounting claims on those purchases by, respectively, 40%, 40%, and 50%.

The Plan then calculates a "Recognized Loss Amount" for each purchase or acquisition of Wells Fargo common stock during the Class Period that is listed in the Claim Form and for which adequate documentation is provided by the Claimant. The calculation of Recognized Loss Amounts under the Plan will depend on when the Claimant purchased and/or sold their shares, whether the Claimant held their shares through the statutory 90-day look-back period, *see* 15 U.S.C. § 78u-4(e), and the value of their shares when the Claimant purchased, sold, or held them. Under the Plan, the sum of a Claimant's Recognized Loss Amounts is the Claimant's "Recognized Claim"[5]; the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims.

The Claims Administrator will calculate Claimants' Recognized Loss Amounts using the transaction information that Claimants provide to the Claims Administrator in their Claim Forms. Once the Claims Administrator has processed all submitted claims, notified Claimants of deficiencies or ineligibility, processed responses, and made claim determinations, the Claims Administrator will make distributions to eligible Authorized Claimants in the form of checks and wire transfers. If any monies remain in the Net Settlement Fund, the Claims Administrator will conduct additional re-distributions until it is no longer cost-effective to do so. At such time, any

---

[5] Subject to a limitation on total market gains and losses. If a Claimant has a market gain on all his, her, or its Class Period purchases, the Claimant's Recognized Claim is zero. If a Claimant has a market loss on all his, her, or its Class Period purchases, the Recognized Claim is set to the lower of his, her or its total Recognized Loss Amount and market loss.

remaining balance will be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s), to be recommended by Lead Counsel and approved by the Court.

**4.    The Settlement Does Not Excessively Compensate Plaintiffs' Counsel**

The proposed Settlement does not grant excessive compensation to Plaintiffs' Counsel. The Settlement does not contemplate any specific award to Plaintiffs' Counsel and Plaintiffs' Counsel will be compensated solely out of the Settlement Fund after approval by the Court.

In connection with Plaintiffs' Counsel's fee and expense application, Lead Counsel will seek a fee of no more than 19% of the Settlement Fund, which is well within the percentages that courts approve in securities class actions. *See, e.g.*, *In re Merck & Co., Inc. Sec., Deriv. & "ERISA" Litig.*, No. 2:05-cv-01151-SRC-CLW, 2016 WL 11575090, at *5 (D.N.J. June 28, 2016) (awarding 20% of $1.06 billion settlement in securities class action); *In re Twitter, Inc. Sec. Litig.*, No. 4:16-cv-05314-JST-SK, 2022 WL 17248115, at *1-2 (N.D. Cal. Nov. 21, 2022) (awarding 22.5% of $809.5 million settlement); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding 29% of $586 million settlement); *In re Pfizer Inc. Sec. Litig.*, No. 1:04-cv-09866-LTS-HBP, 2016 WL 11801285, at *1 (S.D.N.Y. Dec. 21, 2016) (awarding 28% of $486 million settlement).  Lead Counsel will also seek payment of litigation expenses incurred in connection with the institution, prosecution, and resolution of the Action, in an amount not to exceed $2 million, which may include requests for reimbursement of costs and expenses of Lead Plaintiffs under the PSLRA.

Plaintiffs' Counsel's fee and expense application will be fully briefed in a motion filed in accordance with the Preliminary Approval Order. By granting preliminary approval of the proposed Settlement, the Court does not in any way pass upon the reasonableness of the fee or expense application, which will be decided *de novo* at the Settlement Hearing.

### B. The Proposed Settlement Class Satisfies Rule 23

In determining whether to grant preliminary approval, the Court also determines whether it "will likely be able to" grant certification to the proposed Settlement Class for purposes of the Settlement at final approval. Fed. R. Civ. P. 23(e)(1)(B). The proposed Settlement Class, which has been stipulated to by the Parties, consists of:

> all persons or entities who purchased or otherwise acquired the common stock of Wells Fargo during the period from February 2, 2018 through March 12, 2020, inclusive (the "Class Period"), and were damaged thereby.

Stipulation ¶ 1(pp).[6]

The Second Circuit has long acknowledged the propriety of certifying a class for purposes of a class action settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *In re Adv. Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014). Certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *Giant Interactive*, 279 F.R.D. at 158.

As demonstrated below, the proposed Settlement Class satisfies all the applicable requirements of Rules 23(a) and 23(b)(3).

### 1. The Settlement Class Satisfies the Requirements of Rule 23(a)

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the

---

[6] Excluded from the Settlement Class are: (a) Defendants; (b) the Officers (defined as any employee serving on Wells Fargo's Operating Committee) and Directors of Wells Fargo during the Class Period; (c) Defendants' Immediate Family Members; and (d) any entity in which any Defendant has or had a controlling interest. Notwithstanding the foregoing, no Investment Vehicle shall be excluded from the Settlement Class. Also excluded from the Settlement Class are any persons or entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court. Stipulation ¶ 1(pp).

claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

### a) The Settlement Class Is So Numerous That Joinder Is Impracticable

In the Second Circuit, Rule 23(a)(1)'s numerosity requirement is presumed for classes larger than 40 members and, in securities fraud class actions, shown where there are a large number of shares outstanding and traded during the relevant period. *See In re Allergan PLC Sec. Litig.*, No. 1:18-cv-12089-CM-GWG, 2021 WL 4077942, at *6 (S.D.N.Y. Sept. 8, 2021); *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-cv-06728-CM-RWL, 2019 WL 3001084, at *8 (S.D.N.Y. July 10, 2019).

Wells Fargo traded on the New York Stock Exchange, had more than 4.5 billion shares of common stock issued and outstanding during the Class Period, and had an average of 103.8 million shares traded weekly. *See* Expert Report of Michael L. Hartzmark, Ph.D. (Hartzmark Rep.) (ECF No. 147-1) ¶ 23. These metrics easily demonstrate numerosity.

### b) There Are Common Questions of Law and Fact

Commonality exists when "common issues of law or fact affect all class members." *Signet*, 2019 WL 3001084, at *8. Courts in this District hold that, in securities cases, commonality is satisfied where "plaintiffs allege that class members have been injured by similar material misrepresentations and omissions." *Allergan*, 2021 WL 4077942, at *6; *see also In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 276 (S.D.N.Y. 2008) (same).

The common questions of law and fact in this case are numerous and include: (i) whether Defendants' statements (including that they were "executing" on the 2018 Consent Orders, they were being transparent about their compliance, and the asset cap would be timely lifted) were

materially false and misleading when made; (ii) whether Defendants omitted material information regarding the status of Wells Fargo's compliance; (iii) whether Defendants acted with scienter; (iv) whether the price of Wells Fargo's common stock was artificially inflated during the Class Period due to these alleged misstatements; (v) whether Defendants' misrepresentations and omissions caused Settlement Class Members to suffer economic losses when the truth was revealed; and (vi) whether Defendants Sloan, Shrewsberry, Parker, and Duke controlled Wells Fargo during the Class Period. Because these questions of law and fact are common to all members of the Settlement Class, the commonality requirement of Rule 23(a)(2) is met.

### c) Lead Plaintiffs' Claims Are Typical of Those of the Settlement Class

The typicality requirement "is satisfied when each class member's claim arises from the same course of events" and "each class member makes similar legal arguments to prove the defendant's liability." *See In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 98 (S.D.N.Y. 2016). The typicality requirement does not require the plaintiff's claims to be identical; rather, the plaintiff must show the claims are "'so interrelated that the interests of the class members will be fairly and adequately protected in their absence,' and that the claims of the potential class members 'share a common question of law or of fact.'" *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 176 (S.D.N.Y. 2008).

Here, Lead Plaintiffs' claims arise from the same alleged course of conduct that gives rise to claims of other Settlement Class Members, are based on the same legal theory, and will be proven by the same set of operative facts. As such, the typicality requirement is satisfied. *See Purple Mountain Tr. v. Wells Fargo & Co.*, No. 3:18-cv-03948-JD, 2022 WL 3357835, at *2 (N.D. Cal. Aug. 15, 2022); *In re Bank of Am. Corp. Sec., Deriv., & Emp. Ret. Income Sec. Act ("ERISA") Litig.*, 281 F.R.D. 134, 139 (S.D.N.Y. 2012).

### d) Lead Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class

To satisfy the adequacy requirement, the proposed class representative must "fairly and adequately protect the interests of the class." *Signet*, 2019 WL 3001084, at *9. The adequacy requirement "seeks to ensure that Plaintiff's interests are not antagonistic to those of the Class and that Plaintiff's attorneys are qualified, experienced, and able to conduct the litigation." *Id.* "The focus is on uncovering 'conflicts of interest between named parties and the class they seek to represent.' In order to defeat a motion for certification, however, the conflict 'must be fundamental.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). Lead Plaintiffs satisfy each factor of the adequacy inquiry.

<u>First</u>, Lead Plaintiffs "suffer[ed] the same injury as the class members" as a result of Defendants' material misrepresentations and omissions and thus "possess the same interest" in obtaining the best possible recovery. *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 282 (S.D.N.Y. 2003). Like all Settlement Class Members, Lead Plaintiffs purchased Wells Fargo stock during the Class Period and were subjected to the same fraudulent conduct. No conflicts exist between Lead Plaintiffs and the Settlement Class. *See Purple Mountain*, 2022 WL 3357835, at *2.

<u>Second</u>, Lead Plaintiffs vigorously prosecuted this Action on behalf of the Settlement Class. Lead Plaintiffs fully understand their duties and responsibilities as class representatives, demonstrated their commitment to lead this Action for the Settlement Class, and will continue to actively participate in and supervise the litigation through its conclusion. *See* ECF Nos. 147-2, 147-3, 147-4, and 147-5 (Declarations of Lead Plaintiffs). Lead Plaintiffs have also retained qualified counsel who have extensive experience and success in prosecuting securities litigation. *See* Joint Declaration of J. Browne and L. Posner. Accordingly, Rule 23(a)(4) is satisfied here.

## 2. The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Settlement Class satisfies these requirements.

### a) Common Legal and Factual Questions Predominate

Class-wide issues predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). In making this determination, "a court's inquiry is directed toward whether the issue of liability is common to the members of the class." *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 240 (S.D.N.Y. 2006). "While Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of individual issues." *Id*. This "test [is] readily met in certain cases alleging . . . securities fraud." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Here, "the critical issues for establishing Defendants' liability include whether the Defendants (1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury. Each of these issues is susceptible of generalized proof and, accordingly, the predominance requirement of Rule 23(b)(3) is satisfied." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 1:04-cv-08144-CM, 2009 WL 5178546, at *11 (S.D.N.Y. Dec. 23, 2009); *see also Veeco*, 235 F.R.D. at 240 ("[Q]uestions of fact regarding

the content and implications of defendants' statements and defendants' intent in making these statements are central to the claims of each member of the putative class. Any individual issues will necessarily be secondary.").

> **b)** **A Class Action Is Superior to Other Methods of Adjudication**

Rule 23(b)(3) also asks whether class resolution will be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Courts have long recognized that class actions are a desirable means for resolving claims based on securities laws," and find superiority is easily established. *Allergan*, 2021 WL 4077942, at *17.

Each of the factors courts consider in assessing superiority is satisfied here. First, the number of Settlement Class members is far too numerous, and the typical claim is too small, for each individual Settlement Class Member to have an interest in maintaining a separate action. Second, Lead Plaintiffs are aware of no other action that seeks recovery under the federal securities laws for damages caused by Defendants' alleged fraud. Third, the geographical dispersion of the Settlement Class Members makes it desirable to litigate Lead Plaintiffs' claims in this forum. Finally, there are no management difficulties that would preclude this Action from being maintained as a class action. *See Allergan*, 2021 WL 4077942, at *16; *Purple Mountain*, 2022 WL 3357835, at *6 (finding superiority established in a case against Wells Fargo).

In sum, the proposed Settlement Class meets all of the requirements of Rules 23(a) and (b)(3) and is appropriate for certification for purposes of the Settlement.

## IV. THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval, the Claims Administrator will mail the Notice and Claim Form (Exhibits 1 and 2 to the Preliminary Approval Order) to all Settlement Class Members who can be identified with

reasonable effort, as well as post the Notice and the Claim Form on a website to be developed for the Settlement.[7] The Claims Administrator will utilize a list of the largest and most common U.S. banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners to facilitate the dissemination of notice. The Notice will advise Settlement Class Members of: (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's application for attorneys' fees and expenses. The Notice will also provide specifics on the date, time, and place of the Settlement Hearing and set forth the procedures for objecting to the Settlement, the proposed Plan of Allocation and/or the motion for attorneys' fees and expenses, and the procedure for requesting exclusion from the Settlement Class. In addition to the mailing of the Notice and Claim Form, the Summary Notice will be published in *The Wall Street Journal* and *Investor's Business Daily* and transmitted over the *PR Newswire*.

The form and manner of providing notice to the Settlement Class satisfies the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7). The Notice contains all of the information required by Rule 23(c)(2)(B), Local Rule 23.1, and the PSLRA, and will "fairly apprise the prospective members of the class of the terms of the proposed settlement[s] and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114. The manner of providing notice, which includes individual notice by first-class mail to all class members who can be reasonably identified, supplemented by additional publication and internet notice, represents the best notice practicable under the circumstances and satisfies the requirements of due

---

[7] Lead Plaintiffs request that the Court approve retention of Epiq Class Action and Claims Solutions, Inc. ("Epiq"), as the claims administrator for this case. Epiq has successfully administered numerous complex securities class action settlements in this District and elsewhere. *See, e.g.*, *In re Luckin Coffee Inc. Sec. Litig.*, No. 1:20-cv-01293-JPC-JLC (S.D.N.Y. 2022); *In re GreenSky Sec. Litig.*, No. 1:18-cv-11071-AKH (S.D.N.Y. 2021); *In re Salix Pharms., Ltd. Sec. Litig.*, No. 1:14-cv-08925-KMW (S.D.N.Y. 2017).

process and Rule 23. *See, e.g.*, *Pearlstein*, 2022 WL 4554858, at *8-9; *In re Signet*, 2020 WL 4196468, at *14; *Woburn Ret. Sys. v. Salix Pharms., Ltd.*, No. 14-cv-8925-KMW, 2017 WL 3579892, at *2 (S.D.N.Y. Aug. 18, 2017).

Accordingly, Lead Plaintiffs respectfully submit that the proposed notice procedures are appropriate and should be approved.

## V.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Lead Plaintiffs respectfully propose the schedule for Settlement-related events as set forth in Appendix A. If the Court agrees with the proposed schedule, Lead Plaintiffs request that the Court schedule the Settlement Hearing for a date 105 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter. If the Court grants preliminary approval as requested, the only date that the Court need schedule is the date for the final Settlement Hearing. The remaining dates will be determined by the date the Preliminary Approval Order is entered and the date the Settlement Hearing is scheduled.

## VI.    CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court (i) preliminarily approve the proposed Settlement; (ii) approve the proposed form and manner of notice to putative Settlement Class Members; and (iii) schedule a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters.

Dated: May 15, 2023                          Respectfully submitted,

/s/    *Laura H. Posner*                      /s/    *John C. Browne*

**COHEN MILSTEIN SELLERS &**          **BERNSTEIN LITOWITZ BERGER**
  **TOLL PLLC**                                    **& GROSSMANN LLP**
Laura H. Posner (LP-8612)                    John C. Browne (JB-0391)
88 Pine Street, Fourteenth Floor             Jeroen van Kwawegen (JV-1010)
New York, New York  10005                    Michael D. Blatchley (MB-7279)
Tel.: (212) 220-2925                         Robert Kravetz
Fax: (212) 838-7745                          1251 Avenue of the Americas

lposner@cohenmilstein.com

Steven J. Toll (admitted *pro hac vice*)
Julie G. Reiser (admitted *pro hac vice*)
S. Douglas Bunch (SB-3028)
Molly J. Bowen (admitted *pro hac vice*)
1100 New York Avenue, N.W., Suite 500
Washington, DC 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699
stoll@cohenmilstein.com
jreiser@cohenmilstein.com
dbunch@cohenmilstein.com
mbowen@cohenmilstein.com

*Counsel for Lead Plaintiffs Mississippi
and Rhode Island, and Co-Lead Counsel
for the Settlement Class*

New York, New York 10020
Tel.: (212) 554-1400
Fax: (212) 554-1444
johnb@blbglaw.com
jeroen@blbglaw.com
michaelb@blbglaw.com
robert.kravetz@blbglaw.com

Jonathan D. Uslaner (JU-1942)
Lauren M. Cruz (admitted *pro hac vice*)
2121 Avenue of the Stars
Los Angeles, California 90067
Tel.: (310) 819-3470
jonathanu@blbglaw.com
lauren.cruz@blbglaw.com

*Counsel for Lead Plaintiffs Handelsbanken
and Louisiana Sheriffs, and Co-Lead Counsel
for the Settlement Class*

**KLAUSNER, KAUFMAN, JENSEN &
LEVINSON**
Robert D. Klausner (admitted *pro hac vice*)
7080 NW 4th Street
Plantation, Florida 33317
Tel.: (954) 916-1202
Fax: (954) 916-1232
bob@robertdklausner.com

*Additional Counsel for Louisiana Sheriffs*

**Appendix A**

**Proposed Schedule of Settlement Events**

| **Event** | **Proposed Timing** | **Example Date**[8] |
|---|---|---|
| Deadline for mailing the Notice and Claim Form to Settlement Class Members (which date shall be the "Notice Date") (Preliminary Approval Order ¶ 7(b)) | No later than 15 business days after entry of Preliminary Approval Order | June 20, 2023 |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶ 7(d)) | No later than 10 business days after the Notice Date | July 5, 2023 |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's motion for attorneys' fees and expenses (Preliminary Approval Order ¶ 27) | 35 calendar days before the date set for the Settlement Hearing | August 7, 2023 |
| Deadline for receipt of requests for exclusion or objections (Preliminary Approval Order ¶¶ 14, 18) | 21 calendar days before the date set for the Settlement Hearing | August 21, 2023 |
| Deadline for filing reply papers (Preliminary Approval Order ¶ 27) | 7 calendar days before the Settlement Hearing | September 1, 2023 |
| Settlement Hearing (Preliminary Approval Order ¶ 5) | 105 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter | September 11, 2023 |
| Postmark deadline for submitting Claim Forms (Preliminary Approval Order ¶ 11) | 120 calendar days after the Notice Date | October 18, 2023 |

---

[8] The example dates provided are based on the assumptions that the Court enters the Preliminary Approval Order on May 29, 2023, and schedules the Settlement Hearing for September 11, 2023.