# Exhibit 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE WELLS FARGO & COMPANY SECURITIES LITIGATION | Case No. 1:20-cv-04494-JLR-SN |

**LEAD PLAINTIFFS' JOINT DECLARATION IN SUPPORT OF THEIR MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**

We, Lead Plaintiffs Handelsbanken Fonder AB ("Handelsbanken"); Public Employees' Retirement System of Mississippi ("Mississippi"); State of Rhode Island, Office of the General Treasurer ("Rhode Island"); and Louisiana Sheriffs' Pension & Relief Fund ("Louisiana Sheriffs") (collectively, "Lead Plaintiffs"), pursuant to 28 U.S.C. § 1746, declare as follows:

1. We respectfully submit this joint declaration in support of the motion for final approval of the Settlement and Plan of Allocation and Lead Counsel's application for an award of attorneys' fees and expenses.

**<u>Handelsbanken</u>**

2. I, Staffan Ringvall, serve as Head of Corporate Governance of Handelsbanken, and am authorized to make this declaration on its behalf.

3. Included in my responsibilities are the oversight and supervision of all major case litigation to which Handelsbanken is a party, including managing Handelsbanken's relationships with outside counsel.

4. I am aware of and understand the requirements and responsibilities of a lead plaintiff in a securities class action as set forth in the Private Securities Litigation Reform Act of 1995.

5. I have personal knowledge of the matters set forth in this Declaration, as I have been directly involved in monitoring and overseeing the prosecution of the Action, and I could and would testify competently thereto. In particular, I closely monitored the mediation and settlement process, including flying from Sweden to New York to participate in the mediation in-person.

**Mississippi**

6. I, Tricia Beale, serve as a Special Assistant Attorney General of the Mississippi Attorney General, and am authorized to make this declaration on its behalf, in connection with litigation on behalf of Mississippi.

7. Included in my responsibilities are the oversight and supervision of securities litigation to which Mississippi is a party, including managing Mississippi's relationships with outside counsel.

8. I am aware of and understand the requirements and responsibilities of a lead plaintiff in a securities class action as set forth in the Private Securities Litigation Reform Act of 1995.

9. I have personal knowledge of the matters set forth in this Declaration, as I have been directly involved in monitoring and overseeing the prosecution of the Action, and I could and would testify competently thereto.

**Rhode Island**

10.    I, Eileen Cheng, serve as General Counsel of the State of Rhode Island, Office of General Treasurer, and am authorized to make this declaration on its behalf.

11.    Included in my responsibilities are the oversight and supervision of all major case litigation to which Rhode Island is a party, including managing Rhode Island's relationships with outside counsel.

12.    I am aware of and understand the requirements and responsibilities of a lead plaintiff in a securities class action as set forth in the Private Securities Litigation Reform Act of 1995.

13.    I have personal knowledge of the matters set forth in this Declaration or have educated myself regarding those matters so that I could and would testify competently thereto.

**Louisiana Sheriffs**

14.    I, Osey "Skip" McGee, Jr., serve as Executive Director of Louisiana Sheriffs, and am authorized to make this declaration on its behalf.

15.    Included in my responsibilities are the oversight and supervision of all major case litigation to which Louisiana Sheriffs is a party, including managing Louisiana Sheriff's relationships with outside counsel.

16.    I am aware of and understand the requirements and responsibilities of a lead plaintiff in a securities class action as set forth in the Private Securities Litigation Reform Act of 1995.

17.    I have personal knowledge of the matters set forth in this Declaration, as I have been directly involved in monitoring and overseeing the prosecution of the Action, and I could and would testify competently thereto.

## I.      **OVERSIGHT OF THE LITIGATION**

18.      By Order dated August 29, 2020 (ECF No. 59), the Court appointed Handelsbanken, Mississippi, Rhode Island, and Louisiana Sheriffs as Lead Plaintiffs in the Action. In fulfillment of our responsibilities as Lead Plaintiffs, and on behalf of all members of the Settlement Class, we supervised the prosecution of this Action.

19.      In seeking appointment as Lead Plaintiffs and as Class Representatives in this Action, each Lead Plaintiff understood its responsibility to serve the best interests of the class by supervising the effective prosecution of this litigation, and each has diligently done so at all times.

20.      Since being appointed as Lead Plaintiffs in August 2020, each Lead Plaintiff has devoted substantial time and energy to discharging its duties as a Lead Plaintiff. We and members of our staff working at our direction have, among other things: (a) reviewed significant court filings in the Action and provided comments, edits and direction as needed; (b) prepared and submitted declarations in support of the motion for appointment as lead plaintiff and the motion for class certification; (c) received and reviewed regular reports from Lead Counsel regarding developments in the Action; (d) participated in telephonic and email communications with Lead Counsel regarding case strategy and developments; (e) gathered and produced relevant documents; (f) responded to discovery requests; (g) prepared for and testified in one or more Rule 30(b)(6) depositions; and (h) actively participated in the mediation and negotiation of the Settlement, including discussing the appropriate amount at which to settle the claims asserted in the Action, attending or participating virtually in, or staying apprised during, the mediation and negotiation sessions, and conveying appropriate settlement authority to Lead Counsel.

## II.    LEAD PLAINTIFFS STRONGLY ENDORSE APPROVAL OF THE SETTLEMENT

21.    Lead Plaintiffs are sophisticated institutional investors who are well-equipped to oversee counsel and ensure the vigorous prosecution of the Action for the benefit of the Settlement Class.

22.    Based in Stockholm, Sweden, Handelsbanken is a mutual fund management company that manages approximately $67.5 billion in assets. Handelsbanken benefits from the resources and dedicated personnel of its in-house legal department; these personnel are highly experienced in supervising complex litigation and overseeing outside counsel and brought that experience to bear in supervising this litigation and evaluating the settlement.

23.    Mississippi, Rhode Island, and Louisiana Sheriffs are public pension funds with collectively thousands of members and tens of billions of dollars in assets under management, and all have experience serving as lead plaintiffs in numerous securities class action or derivative lawsuits which (including this Action) have recovered billions for investors.  The three funds have significant experience in conducting and supervising complex litigation.  In addition to this Action, notable cases in which these funds served as lead plaintiff or class representative include: *In re Merck & Co. Securities, Derivative & "ERISA" Litigation*, No. 05-cv-1151 (D.N.J.) ($1.06 billion recovered by Mississippi serving as co-lead plaintiff with three other investors); *In re Citigroup Inc. Bond Litigation*, No. 08-cv-9522 (S.D.N.Y.) ($730 million recovered by Louisiana Sheriffs serving as a co-lead plaintiff with six other institutional investors); *In re Wachovia Preferred Securities and Bond/Notes Litigation*, No. 09-cv-6351 (N.D. Cal.) ($627 million recovered by Louisiana Sheriffs serving as a co-lead plaintiff with two other institutional investors); *In re Bear Stearns Mortgage Pass-Through Certificates Litigation*, No. 08-cv-8093 (S.D.N.Y.) ($500 million recovered by Mississippi serving as co-lead plaintiff with another institutional investor); *In re*

5

*Schering-Plough Corporation/ENHANCE Securities Litigation*, No. 08-cv-397 (D.N.J.) ($473 million recovered by Mississippi serving as co-lead plaintiff with three other institutional investors); *In re Pinterest Derivative Litigation*, No. 20-cv-0331 (N.D. Cal.) ($50 million funding commitment and substantial corporate governance reforms recovered by Rhode Island); and *In re Coinstar Inc. Securities Litigation*, No. 11-cv-133 (W.D. Wash.) ($6 million recovery with Rhode Island serving as lead plaintiff). The three funds benefit from the resources and dedicated personnel of either sophisticated in-house legal departments or outside counsel, including in the case of Mississippi, the Mississippi Attorney General's Office, and in the case of Rhode Island, the Rhode Island State Treasurer's Office. These personnel are highly experienced in supervising complex litigation and overseeing outside counsel and brought that experience to bear in supervising this litigation and evaluating the settlement. The proposed Settlement is the product of Lead Plaintiffs' hard-fought negotiation on behalf of the Settlement Class.

24.    Lead Plaintiffs' personnel were actively involved in settlement strategy and the mediation process. Lead Plaintiffs carefully considered Judge Layn Phillips' mediator's proposal in consultation with Lead Counsel. In doing so, Lead Plaintiffs considered (among other things) the significant risks related to liability and damages; the discovery record; and their experts' analyses of loss causation and potential damages. Although Lead Plaintiffs believed strongly in the merits of the Action, Lead Plaintiffs recognized that further litigation would expose the Settlement Class to significant delay and other risks.

25.    Based on Lead Plaintiffs' active involvement throughout the Action, participation in the mediation process, understanding of the strength of the merits, the amount of damages, the risks of the Action, and collective experience as court-appointed lead plaintiffs and class

6

representatives in other cases, Lead Plaintiffs determined that the proposed Settlement is fair, reasonable, and adequate to the Settlement Class.

26.    Lead Plaintiffs believe the Settlement represents an outstanding result, particularly in light of the size of the recovery, the percentage of maximum realistically recoverable damages, and the substantial risks and uncertainties outlined above. Based on Lead Plaintiffs' involvement in the negotiation of the proposed Settlement of the Action, and with the benefit of their sophistication and extensive experience, Lead Plaintiffs strongly endorse approval of the Settlement by the Court.

## III.    LEAD PLAINTIFFS SUPPORT LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

27.    Lead Plaintiffs carefully assessed and approved Lead Counsel's request for an award of attorneys' fees in the amount of 18% of the Settlement Fund, net of expenses. Before providing such approval, Lead Plaintiffs conducted a rigorous review and evaluation of the proposed fee request, independent of Lead Counsel, which included consideration of the governing caselaw, data on fee awards, and expert analysis (which is attached hereto as Exhibit A, the Fitzpatrick Report).  The basis for Lead Plaintiffs' approval of Lead Counsel's fee request is more fully described below.

### A.    Lead Plaintiffs' Retention of Lead Counsel and Retention Agreements

28.    Lead Plaintiffs each entered into retainer agreements with Lead Counsel to litigate this Action based, in significant part, on their track record of success litigating securities class actions. Lead Counsel have prosecuted some of the most complex and high-profile cases in U.S. history and achieved many of the largest recoveries for investors of all-time. BLB&G has been lead or co-lead counsel in more of the top 100 largest recoveries in U.S. history than any other firm in the country; and CMST has achieved some of the largest securities class actions settlements

in history. Lead Plaintiffs believed, and continue to believe, that these past successes demonstrate Lead Counsel's ability and commitment to maximize recoveries for investors. Additionally, Lead Counsel have the resources necessary to achieve the best results, including full-time financial analysts, investigators, and attorneys that specialize in securities litigation, many of whom have been lauded as among the top securities-class action attorneys in the world. Further, Lead Plaintiffs recognized that litigating this action successfully against Defendants would be resource-intensive, risky, and expensive. Wells Fargo is represented by Sullivan & Cromwell LLP. Lead Plaintiffs understood that the Defendants and their counsel would spare no expense in litigating this case to the end, so to maximize investors' recovery in this case, Lead Counsel would, likewise, need to be willing to devote all reasonable resources and incur all necessary litigation expenses.

29.     Because litigating this case on an hourly, non-contingency basis would be prohibitively expensive and fail to incentivize counsel to litigate efficiently and vigorously to achieve the best possible result, Lead Plaintiffs requested that Lead Counsel represent them in this action on a fully-contingent basis—meaning, that Lead Counsel would only receive compensation and only recoup their litigation expenses if investors recovered. Contingency-fee agreements are standard in high-risk and complex securities class actions of this type. Lead Plaintiffs believed a contingency-fee agreement was appropriate here and would provide the strongest incentive for Lead Counsel to achieve a favorable resolution for the Settlement Class. Each Lead Plaintiff entered into a contingency-fee agreement at the start of the litigation with Lead Counsel. The contingency-fee agreements provide that Lead Counsel may only receive compensation and recoup their litigation expenses if investors recover through the action; in other words, Lead Counsel would bear all of the economic risk of the prosecution of this litigation.

30.     Lead Plaintiffs are aware that the Court must ultimately approve any fee request. With that in mind, to incentivize Lead Counsel to maximize investors' recovery, Lead Plaintiffs believed—and continue to believe—that it was important that their retention agreements with Lead Counsel retain their authority over the fee that Lead Plaintiffs would ultimately request. Thus, each Lead Plaintiff's retainer with Lead Counsel either required that Lead Counsel obtain its authorization for the fee percentage it proposed to seek from the Court or set the fee-percentage that Lead Counsel may request, in the event of a successful outcome. We also believed—and continue to believe—that, to best align Lead Counsel's interests with the interest of the Settlement Class, any cap on the permissible fee percentage should be a percentage of the amount of any settlement or judgment. By retaining authorization over the fee ultimately sought and setting the amount of the fees paid to Lead Counsel as a percentage of the settlement amount, Lead Plaintiffs believed that Lead Counsel would be most incentivized to maximize investors' recovery and, thus, their compensation.

31.     Although each Lead Plaintiff separately negotiated the terms of its retainer agreement with its chosen counsel, each of the retainer agreements provides that the Action will be litigated on a fully contingent basis, with Lead Counsel bearing all costs and expenses.  For those retainer agreements that set forth a specific percentage of attorneys' fees that could be sought in the event of a successful resolution, the agreements contemplate attorneys' fees as high as 25% and as low as 20% for a settlement the size of the present one.  Accordingly, the requested fee of 18% of the Settlement, net of expenses is less than the agreed-upon fee percentages contemplated in Lead Counsel's retention agreements with Lead Plaintiffs.

### B.      Lead Plaintiffs' Evaluation of Lead Counsel's Performance in the Litigation

32.     As set forth above, we closely supervised and monitored Lead Counsel and participated actively throughout every stage of this litigation. We have been consistently impressed

throughout this litigation by Lead Counsel's skill, thoughtfulness, and commitment to maximize investors' recovery. Lead Counsel exhibited their deep and specialized knowledge of securities class actions at every stage of the litigation over the last three years—including in drafting a detailed complaint; overcoming Defendants' motion to dismiss; successfully overcoming the confidential supervisory information designations by the regulators to obtain critical documents; carefully analyzing the millions of pages of documents produced by Wells Fargo and non-party witnesses; defending and participating in numerous depositions; seeking class certification; and negotiating an extremely favorable settlement for investors. Lead Counsel also demonstrated that they were willing to devote the necessary attorneys, professionals, staff, and resources, including substantial investment in the advice of outside experts, to achieve the best possible outcome for investors, even though there was a risk that the case would not achieve a favorable result and they could receive no fee at all.

33.     In evaluating the proposed fee request, we considered the following:

34.     **Result Achieved.**  We all agree that the result achieved is outstanding. The $1 billion Settlement, if approved, will be among the top six securities class action settlements in the past decade, and among the top 17 of all time and represents a substantial percentage of the class's maximum potential damages. Unlike nearly all of the other largest securities settlements of all time, Wells Fargo has never issued any restatement of any of the Securities and Exchange Commission (the "SEC") filings relevant to this litigation; and Defendants have never been penalized, convicted, or even charged of wrongdoing by the SEC or Department of Justice in connection with any of the alleged misstatements.

35.     **Quality and Amount of Work Performed.**  As set forth above, we took steps throughout the litigation to ensure that Plaintiffs' Counsel devoted the necessary and appropriate

10

level of resources for this important matter. Plaintiffs' Counsel conducted a successful pre-suit investigation; drafted a compelling amended complaint; defeated Defendants' motion to dismiss in large part; reviewed approximately 3.5 million pages of documents from Defendants and third-party witnesses; consulted with experts on complex and thorny issues; assembled a compelling factual record; and engaged in successful mediation efforts. This work was extensive, and Plaintiffs' Counsel devoted significant attorney-time and incurred substantial litigation expenses in connection with these efforts.

36.    **Risks of Litigation.**  We are well aware of the unique and real risks present in securities class action litigation. These risks existed in this case. Defendants had threatening challenges to falsity, scienter, loss causation, and damages. Defendants denied every element of the claims and every material allegation. Meanwhile, if Defendants prevailed at any stage of this litigation, Plaintiffs' Counsel would have received no compensation for their years of work and no reimbursement for the substantial expenses that they incurred.

37.    **Nature of Representation.**  Lead Counsel litigated this case on a fully contingent basis. Lead Plaintiffs shared the view that Lead Counsel should be commended and rewarded for achieving an outsized recovery for investors in light of the risks of non-payment.

38.    **Fee Awards in Comparable Cases**. We considered the governing caselaw and data on fee awards in comparable class actions and settlements, including fee awards in securities class actions that settled at similar stages and those in cases that did not involve a restatement, as well as in other "mega fund" class action settlements.

39.    **Appropriate Incentive**.  Awarding the requested fee incentivizes Lead Counsel and the securities bar more broadly to pursue difficult cases, stick with them despite the duration of litigation, expend the significant resources on experts that will help achieve the best result for

11

the class, and most critically, achieve the historic results obtained here. Ultimately, in authorizing the requested fee, Lead Plaintiffs concluded that Lead Counsel forcefully, vigorously, and efficiently litigated the Action and have demonstrated exemplary skill and ability. Lead Plaintiffs had the opportunity to witness Lead Counsel's mastery of the case, compelling presentation to Defendants and Judge Phillips, and tenacious advocacy for the Settlement Class against formidable defense counsel.

40.     In light of the result achieved, the work performed, governing law and fee awards in comparable cases, and the risks faced over multiple years of litigation, Lead Plaintiffs support Lead Counsel's request for a fee award of 18% of the Settlement Fund and believe the requested amount represents a reasonable attorneys' fee award in the Action.

### C.    Lead Counsel's Litigation Expenses

41.     Lead Plaintiffs further believe that the Litigation Expenses for which Lead Counsel is seeking payment are reasonable and represent costs and expenses necessary for the prosecution and resolution of this complex Action, which required significant expert analysis of loss causation and damages, among other issues, that was critical for Lead Plaintiffs' motion for class certification, the mediation presentation, and subsequent negotiations. This analysis significantly advanced the Settlement Class's position and maximized the recovery by demonstrating Lead Counsel's ability to prove the Settlement Class's claims and alleged damages.

42.     Lead Plaintiffs thus support Lead Counsel's request for payment of the Litigation Expenses.

## IV.    CONCLUSION

43.     For the foregoing reasons, Lead Plaintiffs respectfully request that the Court grant the motion for final approval of the Settlement and Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses.

12

in history. Lead Plaintiffs believed, and continue to believe, that these past successes demonstrate Lead Counsel's ability and commitment to maximize recoveries for investors. Additionally, Lead Counsel have the resources necessary to achieve the best results, including full-time financial analysts, investigators, and attorneys that specialize in securities litigation, many of whom have been lauded as among the top securities-class action attorneys in the world. Further, Lead Plaintiffs recognized that litigating this action successfully against Defendants would be resource-intensive, risky, and expensive. Wells Fargo is represented by Sullivan & Cromwell LLP. Lead Plaintiffs understood that the Defendants and their counsel would spare no expense in litigating this case to the end, so to maximize investors' recovery in this case, Lead Counsel would, likewise, need to be willing to devote all reasonable resources and incur all necessary litigation expenses.

29.     Because litigating this case on an hourly, non-contingency basis would be prohibitively expensive and fail to incentivize counsel to litigate efficiently and vigorously to achieve the best possible result, Lead Plaintiffs requested that Lead Counsel represent them in this action on a fully-contingent basis—meaning, that Lead Counsel would only receive compensation and only recoup their litigation expenses if investors recovered. Contingency-fee agreements are standard in high-risk and complex securities class actions of this type. Lead Plaintiffs believed a contingency-fee agreement was appropriate here and would provide the strongest incentive for Lead Counsel to achieve a favorable resolution for the Settlement Class. Each Lead Plaintiff entered into a contingency-fee agreement at the start of the litigation with Lead Counsel. The contingency-fee agreements provide that Lead Counsel may only receive compensation and recoup their litigation expenses if investors recover through the action; in other words, Lead Counsel would bear all of the economic risk of the prosecution of this litigation.

30.     Lead Plaintiffs are aware that the Court must ultimately approve any fee request. With that in mind, to incentivize Lead Counsel to maximize investors' recovery, Lead Plaintiffs believed—and continue to believe—that it was important that their retention agreements with Lead Counsel retain their authority over the fee that Lead Plaintiffs would ultimately request. Thus, each Lead Plaintiff's retainer with Lead Counsel either required that Lead Counsel obtain its authorization for the fee percentage it proposed to seek from the Court or set the fee-percentage that Lead Counsel may request, in the event of a successful outcome. We also believed—and continue to believe—that, to best align Lead Counsel's interests with the interest of the Settlement Class, any cap on the permissible fee percentage should be a percentage of the amount of any settlement or judgment. By retaining authorization over the fee ultimately sought and setting the amount of the fees paid to Lead Counsel as a percentage of the settlement amount, Lead Plaintiffs believed that Lead Counsel would be most incentivized to maximize investors' recovery and, thus, their compensation.

31.     Although each Lead Plaintiff separately negotiated the terms of its retainer agreement with its chosen counsel, each of the retainer agreements provides that the Action will be litigated on a fully contingent basis, with Lead Counsel bearing all costs and expenses.  For those retainer agreements that set forth a specific percentage of attorneys' fees that could be sought in the event of a successful resolution, the agreements contemplate attorneys' fees as high as 25% and as low as 20% for a settlement the size of the present one.  Accordingly, the requested fee of 18% of the Settlement, net of expenses is less than the agreed-upon fee percentages contemplated in Lead Counsel's retention agreements with Lead Plaintiffs.

**B.      Lead Plaintiffs' Evaluation of Lead Counsel's Performance in the Litigation**

32.     As set forth above, we closely supervised and monitored Lead Counsel and participated actively throughout every stage of this litigation. We have been consistently impressed

throughout this litigation by Lead Counsel's skill, thoughtfulness, and commitment to maximize investors' recovery. Lead Counsel exhibited their deep and specialized knowledge of securities class actions at every stage of the litigation over the last three years—including in drafting a detailed complaint; overcoming Defendants' motion to dismiss; successfully overcoming the confidential supervisory information designations by the regulators to obtain critical documents; carefully analyzing the millions of pages of documents produced by Wells Fargo and non-party witnesses; defending and participating in numerous depositions; seeking class certification; and negotiating an extremely favorable settlement for investors. Lead Counsel also demonstrated that they were willing to devote the necessary attorneys, professionals, staff, and resources, including substantial investment in the advice of outside experts, to achieve the best possible outcome for investors, even though there was a risk that the case would not achieve a favorable result and they could receive no fee at all.

33.    In evaluating the proposed fee request, we considered the following:

34.    **Result Achieved.**   We all agree that the result achieved is outstanding. The $1 billion Settlement, if approved, will be among the top six securities class action settlements in the past decade, and among the top 17 of all time and represents a substantial percentage of the class's maximum potential damages. Unlike nearly all of the other largest securities settlements of all time, Wells Fargo has never issued any restatement of any of the Securities and Exchange Commission (the "SEC") filings relevant to this litigation; and Defendants have never been penalized, convicted, or even charged of wrongdoing by the SEC or Department of Justice in connection with any of the alleged misstatements.

35.    **Quality and Amount of Work Performed.**   As set forth above, we took steps throughout the litigation to ensure that Plaintiffs' Counsel devoted the necessary and appropriate

10

level of resources for this important matter. Plaintiffs' Counsel conducted a successful pre-suit investigation; drafted a compelling amended complaint; defeated Defendants' motion to dismiss in large part; reviewed approximately 3.5 million pages of documents from Defendants and third-party witnesses; consulted with experts on complex and thorny issues; assembled a compelling factual record; and engaged in successful mediation efforts. This work was extensive, and Plaintiffs' Counsel devoted significant attorney-time and incurred substantial litigation expenses in connection with these efforts.

36.    **Risks of Litigation.**  We are well aware of the unique and real risks present in securities class action litigation. These risks existed in this case. Defendants had threatening challenges to falsity, scienter, loss causation, and damages. Defendants denied every element of the claims and every material allegation. Meanwhile, if Defendants prevailed at any stage of this litigation, Plaintiffs' Counsel would have received no compensation for their years of work and no reimbursement for the substantial expenses that they incurred.

37.    **Nature of Representation.**  Lead Counsel litigated this case on a fully contingent basis. Lead Plaintiffs shared the view that Lead Counsel should be commended and rewarded for achieving an outsized recovery for investors in light of the risks of non-payment.

38.    **Fee Awards in Comparable Cases**. We considered the governing caselaw and data on fee awards in comparable class actions and settlements, including fee awards in securities class actions that settled at similar stages and those in cases that did not involve a restatement, as well as in other "mega fund" class action settlements.

39.    **Appropriate Incentive**.  Awarding the requested fee incentivizes Lead Counsel and the securities bar more broadly to pursue difficult cases, stick with them despite the duration of litigation, expend the significant resources on experts that will help achieve the best result for

11

the class, and most critically, achieve the historic results obtained here. Ultimately, in authorizing the requested fee, Lead Plaintiffs concluded that Lead Counsel forcefully, vigorously, and efficiently litigated the Action and have demonstrated exemplary skill and ability. Lead Plaintiffs had the opportunity to witness Lead Counsel's mastery of the case, compelling presentation to Defendants and Judge Phillips, and tenacious advocacy for the Settlement Class against formidable defense counsel.

40.    In light of the result achieved, the work performed, governing law and fee awards in comparable cases, and the risks faced over multiple years of litigation, Lead Plaintiffs support Lead Counsel's request for a fee award of 18% of the Settlement Fund and believe the requested amount represents a reasonable attorneys' fee award in the Action.

### C.    Lead Counsel's Litigation Expenses

41.    Lead Plaintiffs further believe that the Litigation Expenses for which Lead Counsel is seeking payment are reasonable and represent costs and expenses necessary for the prosecution and resolution of this complex Action, which required significant expert analysis of loss causation and damages, among other issues, that was critical for Lead Plaintiffs' motion for class certification, the mediation presentation, and subsequent negotiations. This analysis significantly advanced the Settlement Class's position and maximized the recovery by demonstrating Lead Counsel's ability to prove the Settlement Class's claims and alleged damages.

42.    Lead Plaintiffs thus support Lead Counsel's request for payment of the Litigation Expenses.

### IV.    CONCLUSION

43.    For the foregoing reasons, Lead Plaintiffs respectfully request that the Court grant the motion for final approval of the Settlement and Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _3rd__ day of August, 2023

Staffan Ringvall
Digitally signed by Staffan Ringvall
Date: 2023.08.03 16:12:04 +02'00'

Staffan Ringvall
Head of Corporate Governance
Handelsbanken Fonder AB

13

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 4ᵗʰ day of August, 2023

Tricia Beale
Special Assistant Attorney General of the
Mississippi Attorney General, on behalf of the
Public Employees' Retirement System of
Mississippi

14

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 3rd day of August, 2023

_____
Eileen Cheng
General Counsel
State of Rhode Island, Office of the General
Treasurer, on behalf of the Employees' Retirement
System of Rhode Island

15

I have reviewed the foregoing with counsel and on the basis of that consultation, I affirm under the laws of the United States of America that the above statements are true and correct, to the best of my knowledge and belief, and that I have authority to execute this declaration on behalf of Louisiana Sheriffs.

Executed this __3rd__ day of August, 2023

Osey "Skip" McGee, Jr.
Executive Director
Louisiana Sheriffs' Pension & Relief Fund

16