**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE WELLS FARGO & COMPANY SECURITIES LITIGATION | Case No. 1:20-cv-04494-JLR-SN |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**(I) LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF**
**SETTLEMENT AND PLAN OF ALLOCATION, AND (II) LEAD COUNSEL'S**
**MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.   ARGUMENT ........................................................................................................... 4

      A.    The Settlement Warrants Approval Under Rule 23(e) and Second Circuit
            Law, Including the Court's Recent Decision in *Moses v. NY Times* ..................... 4

      B.    The Settlement Class's Reaction Supports Approval of the Settlement
            and the Fee Request ..................................................................................... 7

      C.    The Minimal Objections Lack Merit ................................................................ 9

CONCLUSION ............................................................................................................. 15

i

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Arkansas Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*,
2023 WL 5112157 (2d Cir. Aug. 10, 2023)................................................................................6

*Bacchi v. Mass. Mut. Life Ins. Co.*,
2017 WL 5177610 (D. Mass. Nov. 8, 2017) ...........................................................................11

*City of Sterling Heights Police & Fire Ret. Sys. v. Reckitt Benckiser Grp. PLC*,
No. 20-cv-10041 (S.D.N.Y. July 19, 2023) .............................................................................10

*Copley v. Bactolac Pharm., Inc.*,
2023 WL 4490286 (E.D.N.Y. May 23, 2023) ..........................................................................10

*Cornwell v. Credit Suisse Grp.*,
2011 WL 13263367 (S.D.N.Y. July 20, 2011) .........................................................................14

*Davis v. Eastman Kodak Co.*,
2010 WL 11558014 (W.D.N.Y. Sept. 3, 2010) ........................................................................10

*Davis v. J.P. Morgan Chase & Co.*,
827 F. Supp. 2d 172 (W.D.N.Y. Oct. 11, 2011) ......................................................................14

*In re Deutsche Telekom AG Sec. Litig.*,
2005 WL 7984326 (S.D.N.Y. June 14, 2005) ..........................................................................15

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*,
822 F. App'x 40 (2d Cir. 2020) ...............................................................................................12

*Fleisher v. Phoenix Life Ins. Co.*,
2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)............................................................................8

*Fort Worth Emps. Ret. Fund v. J.P. Morgan Chase & Co.*,
No. 1:09-cv-03701-JPO-JCP (S.D.N.Y. Dec. 4, 2015) ...........................................................14

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)........................................................................9, 12

*Hicks v. Morgan Stanley*,
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .............................................................................8

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)......................................................................................14

*In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*,
   246 F.R.D. 156 (S.D.N.Y. 2007) ......................................................................................8

*In re Micro Focus Int'l PLC Sec. Litig.*,
   No. 18-CIV-01549 (Cal. Super. Ct. July 27, 2023) ...................................................10

*Moses v. New York Times Co.*,
   2023 WL 5281138 (2d Cir. Aug. 17, 2023)................................................................ *passim*

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
   No. 08-cv-10783, 2016 WL 3369534 (S.D.N.Y. May 2, 2016) ..............................15

*In re Nielsen Holdings PLC Sec. Litig.*,
   No. 18-cv-7143 (S.D.N.Y. July 20, 2022) ...................................................................11

*O'Brien v. Brain Rsch. Labs, LLC*,
   2012 WL 3242365 (D.N.J. Aug. 9, 2012) ....................................................................11

*Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
   2021 WL 76328 (S.D.N.Y. Jan. 7, 2021) ......................................................................7

*Pearlstein v. BlackBerry Ltd.*,
   2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022)..........................................................3, 7

*Reynolds v. FCA US LLC*,
   No. 19-cv-11745 (E.D. Mich. June 27, 2023) ...........................................................10

*Rodriquez v. It's Just Lunch Int'l*,
   2020 WL 1030983 (S.D.N.Y. Mar. 2, 2020) ...............................................................8

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
   2013 WL 5505744 (D.N.J. Oct. 1, 2013)...................................................................3, 9

*Shaffer v. Cont'l Cas. Co.*,
   362 F. App'x 627 (9th Cir. 2010) ................................................................................10

*In re Signet Jewelers Ltd. Sec. Litig.*,
   2020 WL 4196468 (S.D.N.Y. July 21, 2020) ............................................................8, 9

*In re Veeco Instruments Inc. Sec. Litig.*,
   2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)..............................................................3, 8

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
   2018 WL 6333657 (S.D.N.Y. Dec. 4, 2018) ................................................................7

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005).................................................................................5, 13, 14

iii

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(e) ................................................................................................2, 4, 5, 7

Lead Plaintiffs and Lead Counsel respectfully submit this reply memorandum in further support of their motions for approval of the Settlement and the award of attorneys' fees and reimbursement of litigation expenses.

## I.    PRELIMINARY STATEMENT

This Settlement is historic. It is the largest settlement ever in a securities class action not involving a restatement, an SEC action, or DOJ criminal charges. The litigation was fraught with risk from its inception, particularly on the critical issues of loss causation and damages given that the key alleged corrective disclosures occurred amid the unprecedented turmoil roiling global capital markets at the outset of the COVID-19 pandemic. In the face of these and other substantial challenges, Lead Plaintiffs recovered $1 billion on behalf of investors—an enormous amount in both absolute terms and as a percentage of the maximum recoverable damages using a plaintiff-style damage analysis, where Defendants would have argued that maximum damages were far less or nothing at all. Lead Plaintiffs' efforts in this case resulted in the *only* recovery achieved for investors in a matter that both the SEC and DOJ declined to pursue.

This brief addresses three primary issues bearing on the motions for approval of the Settlement and Lead Counsel's fee request: (1) the impact, if any, of the Second Circuit's recent decision in *Moses v. New York Times Co.*, 2023 WL 5281138 (2d Cir. Aug. 17, 2023) ("*Moses*"); (2) the weight that should be afforded under Second Circuit caselaw to the highly favorable reaction of the Settlement Class to the proposed Settlement and fee request; and (3) a response to the few objections received, including an update on the objection from Wells Fargo's ERISA plan, which has now been withdrawn.

First, the Second Circuit's recent decision in *Moses* further supports approval of the Settlement. The Settlement here is nothing remotely like the coupon settlement in *Moses*, which provided nominal value to class members with a request for a 76% attorneys' fee. *Id.* at *7. Rather,

this Settlement creates a $1 billion common fund for Settlement Class Members' benefit and, as set forth in the Settlement Memorandum (ECF No. 187), each of Rule 23(e)(2)'s procedural and substantive factors amply support its approval.

The Settlement in this case was reached after a vigorous arms-length negotiation overseen by a former federal judge who is one of the nation's premier mediators. *Id*. at 7-8. Unlike in *Moses,* however, Lead Plaintiffs do not rest on a presumption of reasonableness arising from the arms'-length nature of the negotiations; rather, as detailed extensively in the Settlement Memorandum, this Settlement represents a remarkable achievement in the face of substantial litigation risks and the maximum realistically recoverable damages at trial.

The Settlement is also eminently fair and reasonable under *Moses* when considering Lead Counsel's attorneys' fee request. The request was endorsed by four highly sophisticated Lead Plaintiffs, is lower than the governing *ex ante* retention agreements and, as set forth in the Declaration of Professor Brian Fitzpatrick (ECF No. 190-2), is consistent with attorneys' fees awarded in comparable cases. Indeed, even after accounting for Lead Counsel's fee and expense request, the Settlement Class will receive the benefit of an enormous $819 million (plus interest) common fund—which in and of itself would be one of the largest securities class action settlements in history.

Second, the Settlement has enjoyed an overwhelmingly positive reaction from the Settlement Class. In accordance with the Preliminary Approval Order, the Court-approved Claims Administrator delivered over 1.8 million notice packets to potential Settlement Class Members and provided summary notice in the *Wall Street Journal* and *Investor's Business Daily* and over the *PR Newswire*. *See* ECF No. 190-7; *see also* Ex. 1 (Supplemental Declaration of Alexander

Villanova).[1] The Settlement also received extensive news coverage including in *The New York Times*, the *Washington Post*, the *Wall Street Journal*, and *Reuters*. Consistent with Rule 23 of the Federal Rules of Civil Procedure, the notice and summary notice both advised Settlement Class Members of the opportunity to "opt-out" or "object" to the Settlement by August 18, 2023.

Tellingly, *none* of the many institutional investors in the Settlement Class chose to opt out of the Settlement or to object to Lead Counsel's fee request. The sole objection received from an institutional investor, Wells Fargo's own ERISA plan, related to a small aspect of the Settlement release, and has been withdrawn. And, unusually for any securities class action, but particularly for a settlement of this size, there are only three total objections to the attorneys' fee request, all from individuals with, at best, minimal holdings of Wells Fargo stock. *See* Exs. 5, 6, 11. The striking lack of objections demonstrates that the Settlement Class views the $1 billion Settlement as a tremendous result and Lead Counsel's fee request as reasonable. That view is "entitled to great weight" under the case law. *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *10 (S.D.N.Y. Nov. 7, 2007); *see also In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013 WL 5505744, at *40 (D.N.J. Oct. 1, 2013) (two objections to a fee request is "an exceptionally low number" and a "rare phenomenon"); *Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *3 (S.D.N.Y. Sept. 29, 2022) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.").

Third, the three remaining objections, each only to the fee request, lack merit. They are from individual investors that collectively represent less than 0.0001% of the eligible shares and

---

[1] In this memorandum, citations to "Ex. __" refer to exhibits to the Supplemental Joint Declaration of John C. Browne and Laura H. Posner, filed herewith. In the interest of efficiency, Lead Plaintiffs have responded to all four objections filed with the Court in one omnibus brief, rather than responding separately to each.

0.0002% of the 1.8 million notices distributed. Their objections to the fee request are highly generalized, with no basis in caselaw for the requested relief. Additionally, one of the objections was filed by a serial objector whose ideologically driven form objections have been rejected by every court that has received them. These minor objections are no doubt made in good faith, but because they are at odds with the law and the wider views of the Settlement Class, they should be rejected.

\*        \*        \*

Lead Counsel and Lead Plaintiffs respectfully request that the Court approve the Settlement and the fee and expense request.

## II.    ARGUMENT

### A.    The Settlement Warrants Approval Under Rule 23(e) and Second Circuit Law, Including the Court's Recent Decision in *Moses v. NY Times*

As set forth in the Settlement Memorandum, the proposed Settlement fully satisfies each of the procedural and substantive factors set forth in Rule 23(e)(2), as well as the Second Circuit's traditional *Grinnell* factors. *See* Settlement Memorandum at 6-22. The Settlement also is fair, reasonable, and adequate under the Second Circuit's recent decision in *Moses*, which involved a far different type of settlement than this case.

In *Moses*, the Second Circuit was confronted with a coupon settlement that provided nominal value to class members (estimated at three to five dollars each) and a fee award of 76% of the $1.65 million Settlement Fund. *Moses*, 2023 WL 5281138, at \*7. The Second Circuit held that the district court erred in applying a "presumption of fairness" due to arm's length negotiation of the settlement without carefully considering each of the enumerated Rule 23(e)(2) factors to determine procedural and substantive fairness, including whether the settlement was adequate when considering the attorneys' fee request. *Id.* at \*5-7.

4

The $1 billion common fund Settlement here is plainly fair and adequate under each of the Rule 23(e)(2) factors, and no "presumption of fairness" is necessary. As set forth in the Settlement Memorandum, the Settlement is procedurally fair under Rule 23(e)(2)(A) and (B), as it was obtained after nearly three years of vigorous litigation overseen by four sophisticated institutional investors. The Settlement was reached following intense arm's-length negotiations, including an all-day mediation, extensive presentations by the parties and, even then, only after a settlement proposal recommended on a double-blind basis by one of the nation's premier mediators, former District Court Judge Layn R. Phillips. *See* Settlement Memorandum at 7-9; Joint Decl. (ECF No. 190) at ¶¶ 68-73.[2]

The Settlement is also substantively fair and adequate under Rule 23(e)(2)(C) and (D). The $1 billion recovery achieved for the Settlement Class is an extraordinary result considering the risks and delays of further litigation—representing a truly historic result in a case involving no restatement or government proceeding on behalf of investors. *See* Settlement Memorandum at 1-3, 10-18.

The recovery represents approximately 24% of maximum realistically recoverable damages, which aggressively assumes, under a plaintiff-style damage analysis, that Lead Plaintiffs would prevail on *all* claims, as to *all* Defendants, and for *every* corrective disclosure. Defendants would have argued that, even if Lead Plaintiffs had prevailed in full at trial and after appeals, their maximum recoverable damages were far less than the amount that Lead Plaintiffs contend. The

---

[2] In discussing the arm's-length negotiations with the assistance of an experienced mediator, the Settlement Memorandum made reference to the Second Circuit's then-governing law concerning a "presumption of fairness" under *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). *See* Settlement Memorandum at 8-9. However, the record here makes clear no presumption is needed for the Court to conclude the Settlement is fair, reasonable, and adequate, and Lead Plaintiffs do not rely on any such presumption.

recovery here is many multiples above the percentage of recovery achieved in most securities actions (Settlement Memorandum at 18), which is a particularly remarkable accomplishment in a case where Defendants had strenuously maintained that the bulk of investors' losses were not the result of any fraud, but rather the consequence of unprecedented market turbulence triggered by the onset of the COVID-19 pandemic. *Id*. at 16.

Further, the Settlement was achieved in the face of numerous novel and challenging defenses concerning falsity, materiality, scienter and other liability questions including those posed by the Company's CSI defense. *See* Settlement Memorandum at 10-17. The meaningful risks to the Settlement Class in this case were further underscored by the Second Circuit's decision earlier this month in *Arkansas Teacher Retirement System v. Goldman Sachs Group, Inc.*, 2023 WL 5112157 (2d Cir. Aug. 10, 2023) ("*Goldman*"). In *Goldman*, following a trip to the Supreme Court and three prior trips to the Second Circuit, the Second Circuit de-certified a class of investors that had been certified for more than *five years*, finding an absence of "price impact." Wells Fargo would have argued that *Goldman* precluded class certification in this case or, at minimum, significantly reduced damages, particularly in light of the nature of the alleged false statements in this case and their position that publicly available news articles disclosed the truth regarding Wells Fargo's Consent Order problems long before the alleged corrective disclosures. *Cf. Goldman*, 2023 WL 5112157, at *14-23 *with* Joint Decl. at ¶¶ 86-99. Had the Court accepted any of Defendants' arguments, Settlement Class Members may have recovered nothing, or considerably less than $1 billion.

The Settlement is also fair, reasonable, and adequate when the requested attorneys' fees are considered under *Moses*. *See* Settlement Memorandum at 20. The Settlement here is not remotely similar to the coupon settlement in *Moses* that included a request for attorneys' fees of

76% of the Settlement Fund. *See Moses*, 2023 WL 5281138, at *3. The fee request here of 18% is well supported by applicable law and expert evidence; less than the 20% authorized by the most restrictive *ex ante* fee agreements with any of the Lead Plaintiffs; the product of *ex post* review by the Lead Plaintiffs supported by an expert's analysis; meaningfully below the amounts often awarded in typical securities class actions; less than the 19% set forth in the notice to the Settlement Class; and identical to the 18% awarded on average in similar-sized settlements that, like this one, do not involve a restatement (even when those other cases, unlike here, involved related SEC or DOJ actions). *See* Fee Memorandum (ECF No. 189) at 17-19 *and* Fitzpatrick Decl. ¶ 30 (discussing average fee awards in similar cases). Even after deducting attorneys' fees and expenses, the amount for distribution to Settlement Class members is over $819 million—an extraordinary amount that on its own would *still* represent the largest securities class action settlement of all time that did not involve a restatement, SEC action, or DOJ criminal charge, even *before* accounting for the fees and expenses awarded in connection with those other settlements. *See Moses*, 2023 WL 5281138, at *7-8.

In sum, as set forth in Lead Plaintiffs' opening papers and herein, the Settlement and fee request are fair, reasonable, and adequate under Rule 23(e)(2). The *Moses* decision does not alter, and actually reinforces, that conclusion.

**B.      The Settlement Class's Reaction Supports Approval of the Settlement and the Fee Request**

Courts in this district recognize that "[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Pearlstein*, 2022 WL 4554858, at *3; *see also Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 2021 WL 76328, at *2 (S.D.N.Y. Jan. 7, 2021) (absence of objections "strongly favors approval"); *In re Virtus Inv. Partners, Inc. Sec. Litig.*, 2018 WL 6333657, at *2 (S.D.N.Y. Dec. 4, 2018) ("the

absence of objections by the class is extraordinarily positive and weighs in favor of settlement"); *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at \*6 (S.D.N.Y. Sept. 9, 2015) ("the absence of objections may itself be taken as evidencing the fairness of a settlement").

Here, despite notice to 1.8 million potential Settlement Class Members, not a single objection to the Settlement is being presented to the Court. Additionally, and importantly, no institutional investors elected to exclude themselves or "opt-out" of the Settlement, and the handful of individuals that requested exclusion purchased less than 0.001% of the total amount of damaged shares. This tremendous endorsement of the Settlement supports its approval. *See In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at \*6 (S.D.N.Y. July 21, 2020) (the fact that all requests for exclusion were "from individuals and none from institutional investors" supported approval of settlement); *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 246 F.R.D. 156, 167-68 (S.D.N.Y. 2007) (299 requests for exclusion and 11 objections following mailing 1.8 million notices was a "relatively small number of objections and requests for exclusion" and "militate[d] in favor of approving the settlement as being fair, adequate, and reasonable"); *Hicks v. Morgan Stanley*, 2005 WL 2757792, at \*4 (S.D.N.Y. Oct. 24, 2005) (123 requests for exclusion and three objections following mailing 100,000 notices supported settlement approval).

The absence of meaningful objection to Lead Counsel's motion for attorneys' fees and expenses also supports its approval. *See Veeco*, 2007 WL 4115808, at \*10 (the reaction of class members to a fee and expense request is "entitled to great weight" by the court). Only three of the 1.8 million recipients of the Notice Packets objected to Lead Counsel's fee request. This extremely small percentage of objections—representing less than 0.0002% of the recipients of the Notice Packets—supports approval of Lead Counsel's fee request. *See Rodriquez v. It's Just Lunch Int'l*, 2020 WL 1030983, at \*11 (S.D.N.Y. Mar. 2, 2020) (where two individuals in a class of 140,000

members objected, the court found the "relatively low number of objections weighs in favor of approving the attorneys' requested fees as reasonable"); *Schering-Plough*, 2013 WL 5505744, at *40 ("The filing of only two objections here . . . neither by an institution, constitutes an equally 'rare phenomenon' and overwhelmingly supports the [] Fee Application").

Moreover, the fact that none of those three objections was from an institutional investor—while the four institutional investor Lead Plaintiffs overseeing the litigation endorse the fee request after careful consideration—further confirms the reasonableness of Lead Counsel's fee request. *See Signet*, 2020 WL 4196468, at *21 ("the lack of objections [to the fee motion] by institutional investors is notable, and lends further support to approval of the fee request"); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *15 (N.D. Cal. Dec. 18, 2018) ("the lack of objections from institutional investors 'who presumably had the means, the motive, and the sophistication to raise objections' weighs in favor of approval" of the fee motion). Institutional investors are sophisticated, and often have their own in-house legal departments and access to experienced outside lawyers. They know how to object to fee requests when appropriate. It is telling that none did so here—and further supports that the fee request is fair and reasonable

### C.    The Minimal Objections Lack Merit

In total, there were just four objections to any aspect of the Settlement or request for attorneys' fees and reimbursement of expenses. As noted, one of these objections was withdrawn. The other three are unpersuasive and should be rejected.

*Newport ERISA Objection.* On August 17, 2023, Lead Counsel received an objection from Newport Trust Company, LLC ("Newport") on behalf of Wells Fargo's own ERISA plan. *See* Ex. 2 ("Newport Objection"). The Newport Objection did not challenge the adequacy of the Settlement or the request for attorneys' fees and expenses. To the contrary, it "acknowledge[d] that the Settlement would provide the Plans material recovery of losses suffered as a result of the actions

9

set forth in the Complaint." *Id.* at 2. Newport did, however, request a narrowing of the Settlement's

release for hypothetical future ERISA claims against Wells Fargo. *Id.* at 2-3. As reflected in

Exhibit 3, attached, Wells Fargo agreed to modify the Stipulation to narrow the Settlement's

release accordingly, and Newport has withdrawn its objection. *See* Ex. 4.[3]

  *Larry D. Killion and Patricia A. White's Objections.* Larry D. Killion submitted an

objection seeking a "modification and downward adjustment" of Lead Counsel's fee request. *See*

Ex. 5. Patricia A. White submitted a similar objection. *See* Ex. 6.

  Mr. Killion's objection and attached "amicus curiae discussion brief" are nearly verbatim

to many other ideologically-driven objections he has lodged in other securities class actions.[4] Mr.

Killion's reflexive "one-size-fits-all" objections are consistently rejected by courts around the

country—and for good reason, particularly here. *See, e.g.*, *In re Micro Focus Int'l PLC Sec. Litig.*,

No. 18-CIV-01549, slip op. at 6-7 (Cal. Super. Ct. July 27, 2023) (Ex. 7) (rejecting Killion's

objection and awarding 33.3% fee); *City of Sterling Heights Police & Fire Ret. Sys. v. Reckitt*

*Benckiser Grp. PLC*, No. 20-cv-10041, slip op. at 3 (S.D.N.Y. July 19, 2023), ECF No. 181 (Ex.

8) ("The Court has considered the objection to the fee application filed by Larry D. Killion . . . and

finds it to be without merit. The objection is overruled in its entirety."); *Reynolds v. FCA US LLC*,

---

[3] It is established law that adjustments to a class release that *narrow* its scope, as here, do not require further notice to the class. *See, e.g.*, *Shaffer v. Cont'l Cas. Co.*, 362 F. App'x 627, 631 (9th Cir. 2010) ("Although changes were made to the release after potential class members received the notice, the changes did not render the notice inadequate because they narrowed the scope of the release"); *see also Copley v. Bactolac Pharm., Inc.*, 2023 WL 4490286, at *3 (E.D.N.Y. May 23, 2023) (the "modifications to the Settlement provide additional benefits to Class members who elected an Alternative Payment; the modifications do not prejudice any Class member or impair any Class member's rights"); *Davis v. Eastman Kodak Co.*, 2010 WL 11558014, at *20 (W.D.N.Y. Sept. 3, 2010) (the "modification of the Settlement Agreement . . . will only benefit members of the Class").

[4] Indeed, the "amicus curiae" brief attached to Mr. Killion's objection provides a "form" objection for potential class members in other cases to fill out and object to class action settlements—the very form Mr. Killion used in this case. *See* Ex. 4, at 50-54.

No. 19-cv-11745, slip op. at 4 (E.D. Mich. June 27, 2023), ECF No. 106 (Ex. 9) ("The Killion Objection's challenge to the contingent nature of the requested attorneys' fees is not well taken and inconsistent with the law of this Circuit."); *In re Nielsen Holdings PLC Sec. Litig.*, No. 18-cv-7143, Hearing Tr. at 10 (S.D.N.Y. July 20, 2022), ECF No. 159 (Ex. 10) ("I find that the one objection from Mr. Killion is flawed both as a matter of law and a matter of fact . . . .").

Mr. Killion's objection airs his personal grievances about fees in class actions generally, stating that "[t]here is always a certain degree of risk and consequence all us humanoids must absorb as life's destiny . . ." and referring to "ambulance chasing" attorneys. Ex. 5 at 4, 5. He sides with Defendants by noting that "most [defendants] are law abiding advocates," and roots his objection in his personal opinion, which is contrary to the law, that "contingency fees should/must be disallowed." *Id.* at 4.

Mr. Killion's objection is highly generalized and based more upon his personal views of the judicial system generally and plaintiffs' attorneys than it is on caselaw or meaningful analysis of the issues relevant to this particular (historic) settlement. These types of objections are consistently rejected. *See, e.g.*, *Bacchi v. Mass. Mut. Life Ins. Co.*, 2017 WL 5177610, at *5 (D. Mass. Nov. 8, 2017) (rejecting objections which "take issue with the notion of contingency fee structures in class actions in general"); *O'Brien v. Brain Rsch. Labs, LLC*, 2012 WL 3242365, at *25 (D.N.J. Aug. 9, 2012) (rejecting objection that "embodie[d] the objector's personal views about class action litigation generally and is not addressed to the specifics of this settlement").[5]

---

[5] Mr. Killion and the objection received from Charles A. McIntyre (which is discussed below) state that these individuals received the Notice Packet on, respectively, August 7 or 8, 2023 (ten days before the objection deadline) for Mr. Killion and sometime in the "prior week" for Mr. McIntyre. Ex. 5 at 1; Ex. 11 at 1. To the extent they are claiming that they received the Notice in an untimely fashion, they are the only people of the 1.8 million recipients of the Notice Packets who have made such a suggestion. Moreover, both objectors received the notice in time to prepare

11

Equally meritless is Mr. Killion's conclusory assertion that the attorneys' fee percentage awarded in this case should be "noticeably less than 5%", and Ms. White's similar assertion that the fee percentage should be less than "2.5%." *See* Ex. 5 at 3; Ex. 6 at 1. Neither Mr. Killion nor Ms. White cite any legal authority or provide any legitimate basis to reduce the fee percentage as they request. They do not dispute Dr. Fitzpatrick's expert report, they do not attempt to distinguish the cases set forth in Lead Plaintiffs' briefing, they do not address the risks attendant to this litigation, and they certainly provide no basis to criticize the historic Settlement achieved in this case. *See Hefler*, 2018 WL 6619983, at *15 (rejecting "generalized objections" to attorney fee request that "generally asserted that Plaintiffs' Counsel's fees request was unreasonably high"). As detailed in the Fee Memorandum and the declaration of Professor Fitzpatrick (ECF No. 190-2): (i) Lead Counsel's fee request of 18% is lower than "the fee awards in other 'megafund' securities fraud actions in this Circuit," Fee Memorandum at 17 (quoting cases); (ii) courts award, on average, fees of 18% in settlements of a similar size (between $500 million and $1.5 billion) that, like this one, do not involve a restatement (Fitzpatrick Decl. ¶ 30) even when those other cases, unlike here, involve SEC or DOJ actions; (iii) the fee request was authorized on both an *ex ante* and *ex post* basis by four sophisticated Lead Plaintiffs bound by fiduciary duties to the Settlement

---

and submit objections, and Lead Plaintiffs do not argue that their objections should be denied as untimely. Indeed, Mr. Killion had sufficient time to include 62 pages of argument and exhibits, making it apparent that he was not prejudiced by any purported delay in his receipt of the Notice. In any event, the notice program ordered by Judge Woods was adequate and fully comports with due process and Second Circuit law. Per the Court's prior order, notice was provided by numerous means, including through Court-authorized publication in the *Wall Street Journal* and on *PR Newswire*. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 411 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020) (notice sufficient even though certain investors did not receive notices prior to deadlines because "notice was provided in widely distributed publications" and was "reasonably calculated to achieve the widest possible class-wide distribution").

Class (Fee Memorandum at 7-9); and (iv) the fee request constitutes a lodestar multiplier well within the norm for contingency-fee cases in this Circuit (*id*. at 21-22).

Finally, contrary to Mr. Killion's assertion, the "many million pages of cited documents" that Lead Counsel obtained and reviewed during the course of this three-year litigation were not "already available" in the public domain. Ex. 5 at 3. Lead Counsel only obtained the millions of pages produced in this case by defeating Defendants' motions to dismiss, issuing comprehensive document requests to Wells Fargo and 27 subpoenaed witnesses, and overcoming Wells Fargo's and the Regulators' challenges to the disclosure of CSI. It was a Herculean task that took enormous effort and significant litigation skill and tenacity to accomplish. *See* Fee Memorandum at 11-14, 21-22.

Additionally, Mr. Killion wrongly suggests that Lead Counsel was able to piggyback on the government's work product. Mr. Killion is wrong. While Congress investigated certain of the underlying facts relevant to the action, it took no action on behalf of investors. When Congress specifically asked the DOJ to investigate whether Wells Fargo made misleading statements (*see* ECF. No. 74, at ¶ 1), it (and the SEC) declined to do so. Mr. Killion, among thousands of other Settlement Class Members, will benefit from the fact that Lead Counsel brought the *only* action on behalf of investors in this matter. Without Lead Counsel's efforts, investors such as Mr. Killion would not have received a single penny.

*McIntyre Objection*. Charles A. McIntyre submitted an objection on August 22, 2023 asking the Court to reduce Lead Counsel's fee to 6.5% based solely upon his citation to a portion of *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ("*Walmart*")— specifically, the opinion's discussion of a reasonable "lodestar multiplier" *See* Ex. 11. Mr. McIntyre does not cite any other case law, he does not address the unique risks of this case, he

13

does not comment upon the outstanding nature of the recovery, he does not remark upon the fact that in this case four extremely sophisticated institutional investor Lead Plaintiffs have already negotiated for a lower fee than what was in their retainer agreements, and he does not respond to the expert report of Dr. Fitzpatrick demonstrating the reasonableness of the fee.

In any event, Mr. McIntyre's citation to the Second Circuit's opinion in *Walmart*, including the portion quoted by Mr. McIntyre, fully supports the reasonableness of Lead Counsel's fee request in this case. In *Walmart*, the Second Circuit *affirmed* a fee award that amounted to a lodestar multiplier of 3.5 in connection with a $3.05 billion settlement. 396 F.3d at 123 ("Here, the lodestar yields a multiple of 3.5, which has been deemed reasonable under analogous circumstances."). In so doing, the Second Circuit noted approvingly that "multipliers of between 3 and 4.5 have become common." *Id.*; *see also* Fee Memorandum at 21 (citing cases).

As detailed in the Fee Memorandum and accompanying papers, Lead Counsel's extensive work in this case amounted to a lodestar multiplier of 3.8, squarely with the range of "multipliers of between 3 and 4.5" that the Second Circuit recognized in *Walmart* as "common." 396 F.3d at 123. The lodestar multiplier is also entirely consistent with the 3.5 lodestar multiplier awarded and affirmed by the Second Circuit in *Walmart. Id*. Courts have repeatedly granted fee requests that amount to lodestar cross-check multipliers meaningfully greater than the multiplier here. *See Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (4.65 multiplier is "well within the range awarded by courts in this Circuit and courts throughout the country"); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. Oct. 11, 2011) (awarding 5.3 multiplier and finding it was "not atypical for similar fee-award cases"); *Cornwell v. Credit Suisse Grp.*, 2011 WL 13263367, at *2 (S.D.N.Y. July 20, 2011) (4.7 multiplier); *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, No. 1:09-cv-03701-JPO-JCP, slip op. at 2 (S.D.N.Y. Dec. 4,

2015), ECF No. 379 (4.57 multiplier); *In re Deutsche Telekom AG Sec. Litig.*, 2005 WL 7984326, at *4 (S.D.N.Y. June 14, 2005) (3.97 multiplier); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, No. 08-cv-10783, 2016 WL 3369534, at *1 (S.D.N.Y. May 2, 2016) (3.9 multiplier). Accordingly, Mr. McIntyre's objection should be denied.

**CONCLUSION**

For the foregoing reasons, and those set forth in the Fee Memorandum, Settlement Memorandum, and accompanying papers, Lead Plaintiffs and Lead Counsel respectfully request that the Court approve the Settlement, the Plan of Allocation, and the motion for attorneys' fees and Litigation Expenses. Copies of (i) the [Proposed] Judgment Approving Class Action Settlement; (ii) the [Proposed] Order Approving Plan of Allocation of Net Settlement Fund; and (iii) the [Proposed] Order Awarding Attorneys' Fees and Litigation Expenses are being submitted herewith.

Dated: September 1, 2023                          Respectfully submitted,

15

/s/ *Laura H. Posner\**

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Laura H. Posner (LP-8612)
88 Pine Street, Fourteenth Floor
New York, New York 10005
Tel.: (212) 220-2925
Fax: (212) 838-7745
lposner@cohenmilstein.com

Steven J. Toll (admitted *pro hac vice*)
Julie G. Reiser (admitted *pro hac vice*)
S. Douglas Bunch (SB-3028)
Molly J. Bowen (admitted *pro hac vice*)
1100 New York Avenue, N.W., Suite 500
Washington, DC 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699
stoll@cohenmilstein.com
jreiser@cohenmilstein.com
dbunch@cohenmilstein.com
mbowen@cohenmilstein.com

*Counsel for Lead Plaintiffs Mississippi and Rhode Island, and Co-Lead Counsel for the Settlement Class*

/s/ *John C. Browne\**

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
John C. Browne (JB-0391)
Jeroen van Kwawegen (JV-1010)
Michael D. Blatchley (MB-7279)
1251 Avenue of the Americas
New York, New York 10020
Tel.: (212) 554-1400
Fax: (212) 554-1444
johnb@blbglaw.com
jeroen@blbglaw.com
michaelb@blbglaw.com

Jonathan D. Uslaner (JU-1942)
Lauren M. Cruz (admitted *pro hac vice*)
2121 Avenue of the Stars
Los Angeles, California 90067
Tel.: (310) 819-3470
jonathanu@blbglaw.com
lauren.cruz@blbglaw.com

*Counsel for Lead Plaintiffs Handelsbanken and Louisiana Sheriffs, and Co-Lead Counsel for the Settlement Class*

**KLAUSNER, KAUFMAN, JENSEN & LEVINSON**
Robert D. Klausner (admitted *pro hac vice*)
7080 NW 4th Street
Plantation, Florida 33317
Tel.: (954) 916-1202
Fax: (954) 916-1232
bob@robertdklausner.com

*Additional Counsel for Louisiana Sheriffs*

*All electronic signatures ("*/s/*") are signed with consent of counsel pursuant to Rule 8.5 of this Court's Electronic Case Filing Rules & Instructions, as of July 24, 2023.

16

## CERTIFICATE OF SERVICE

I certify that on September 1, 2023, a copy of the foregoing Reply Memorandum of Law in Further Support of (I) Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation and (II) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses, its exhibits, and the accompanying proposed orders were filed electronically by ECF and will be delivered in that manner to all parties of record. In addition, on September 1, 2023, I served a copy of these documents by email on the following persons:

| | | |
|---|---|---|
| Larry D. Killion | Patricia A. White | Charles Aaron McIntyre |
| 2114 Oxford Street | 38 Youngs Road | 25019 Angela Court |
| Houston, TX 77008 | Basking Ridge, NJ 07920 | Damascus, MD 20872 |
| 11235ldk@comcast.net | patwhiteflatley@comcast.net | lawguru@gmail.com |

Newport Trust Company, LLC
570 Lexington Avenue
Suite 1502
New York, NY 1022
Kristen.Kennedy@newportgroup.com
Kelsey.Karls@newportgroup.com

On the next business day, hard copies of these documents will also be served on these persons by FedEx overnight delivery.

> _/s/ John C. Browne_
> John C. Browne

17