# Exhibit 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

PUBLIC EMPLOYEES RETIREMENT
SYSTEM OF MISSISSIPPI,

               Lead Plaintiff,

CRAIG GORDON, Individually and
On behalf of all others
Similarly situated,

              Plaintiffs,

        v.                  18 CV 7143 (JMF)

NIELSEN HOLDINGS PLC, *et al.*,

             Defendants.         Hearing
                            (via Telephone)
------------------------------x

                          New York, N.Y.
                          July 20, 2022
                          4:00 p.m.

Before:

                HON. JESSE M. FURMAN,

                          District Judge

                    APPEARANCES

LABATON & SUCHAROW LLP
     Attorneys for Lead Plaintiff
BY:  CHRISTINE M. FOX

ROBBINS GELLER RUDMAN & DOWD LLP
     Attorneys for Plaintiffs
BY:  ELLEN GUSIKOFF STEWART

SIMPSON THACHER & BARTLETT LLP
     Attorneys for Defendants
BY:  ALAN C. TURNER
     TYLER ANGER

THE COURT: Good afternoon. This is Judge Furman. We are here in the matter of In Re Nielsen Holdings PLC Securities Litigation, 18 CV 7143.

Before I take appearances from counsel, couple of quick reminders. One, please mute your phone so there is no background noise distraction, especially all those that are on listen-only status. Number two, remember to unmute if or when you wish to say something, and please begin with your name so that the court reporter and I are clear on who is doing the speaking. Number three, a reminder that this is a public conference just as it would be if we were in open court. And, finally, a reminder that the conference may not be recorded or rebroadcast by anyone.

With that, I'll take appearances, beginning with counsel for lead plaintiff.

MS. FOX: Christine Fox from Labaton & Sucharow on behalf of plaintiffs.

MS. STEWART: Good afternoon, your Honor, Ellen Gusikoff Stewart of Robbins Geller, also on behalf of plaintiffs.

THE COURT: Good afternoon.

Counsel for defendants.

MR. TURNER: Good afternoon, your Honor, Alan Turner from Simpson Thacher & Bartlett, representing the defendants, and appearing with me is Mr. Anger, Tyler Anger.

THE COURT: Good afternoon to you as well.

We are here for the fairness hearing in connection with the proposed settlement. I did receive a motion for final approval of the settlement, as well as the plan of allocation for approval of proposed fees, costs, and payments to lead plaintiff and other named plaintiffs.

Earlier today I received and docketed a letter that I received. I am not quite sure why it took so long to make its way to me, but I got it just before this proceeding, which does purport to be an objection to the fee application. It's not clear from the face of the objection that it comes from a class member, but I guess I will presume it is an otherwise valid objection. It does appear to be timely, given when it was sent. I want to just make sure everybody has seen that.

Beyond that, I also received the moving papers, as well as one objection by Mr. Killion to the proposed fee application and supplemental objections, and I have also received a reply memorandum and related filings and then three proposed orders. Number one, I don't know if there was else I should have received, but let me check with you and also check if you have any updates beyond what I would have learned from reading all of those papers.

Ms. Fox.

MS. FOX: Good afternoon, your Honor.

The parties did receive one additional exclusion after

the filing of the reply memo.  While that exclusion appears to be invalid, we wanted to let your Honor know about that.  We also have some additional, more up-to-date metrics from the claims administrator regarding the number of claims that have come in to date, if your Honor would like me to go through that.

THE COURT:  Yes, please.

MS. FOX:  So the claims submission deadline just passed on Friday, July 15.  The notice program, which was very robust, we sent out more than 273,000 notices.  And so far, through electronic mail that has been processed and paper mail that has been opened and processed, the claims administration firm has received 14,700 claims.  Of those 14,700 claims, approximately 12,098 appear to be valid claims and 2602 claims are invalid or are pending submission of additional data.

Now, the claims administration firm reports that they do expect these numbers to continue to increase, especially since the claims submission deadline only passed a few days ago, and there are claims of all sizes that are still being opened and processed.

THE COURT:  Thank you.

Any other relevant or new information?

MS. FOX:  That's all that we have, your Honor.

THE COURT:  Obviously, you have been heard in connection with Mr. Killion's objection.  I don't know if the

letter docketed earlier today requires any additional response, but I wanted to give you an opportunity to respond or be heard on that, if you wish.

MS. FOX:  Certainly, your Honor.

In both our opening memo and in our reply memo, we addressed Mr. Killion's objection, which we feel should be overruled for a number of reasons, including the fact that it's counsel's opinion that the factors raised by Mr. Killion are not the factors which are looked at in this circuit.  And in fact we have set forth in our memo why we are asking for a fee of 25 percent pursuant to the *Goldberger* factors.  And I'm happy to go through any one of those if your Honor would like additional information.

But, in short, we feel that Mr. Killion's objection misses the mark on all fronts.  And with respect to the objection that we just received before the hearing, we will rest on our papers regarding the support for the 25 percent fee requested.

THE COURT:  Mr. Turner, anything you wish to say before I proceed?

MR. TURNER:  Nothing further from the defendants, your Honor.

THE COURT:  Thank you both and thank plaintiffs and lead counsel for their thorough submissions.

I am prepared to rule on the motions at this time, so

I will proceed.

On April 4, I preliminarily approved a settlement and certified a settlement class. That appears at ECF number 140. In the same order, I approved a plan of notice, set deadlines for the filing of claims, exclusions, objections, and final approval papers, and a date for this fairness hearing.

Upon review of plaintiffs' unopposed motion for final approval of the settlement and plan of allocation, *see* ECF number 143, the motion is granted, substantially for the reasons set forth in plaintiffs' thorough memoranda of law. *See* ECF numbers 145, which I will refer to as settlement memorandum, and 148, which I will refer to as the reply.

As an initial matter, nothing material having changed since my preliminary certification order, I find that certification of the settlement class and appointment of the named plaintiffs and class counsel pursuant to Rule 23 are appropriate.

I also find that the notice, which included almost 257,000 copies of the notice by mail, I think, summary notice in the Wall Street Journal and on PR Newswire, *see* ECF number 146-4 at paragraphs 7-8 and the settlement memorandum, pages 20 and 24-25, satisfies the requirements of Rule 23(e)(1) and the due process clause.

Second, I find that the settlement itself is fair, reasonable, and adequate, in light of the factors set forth in

Rule 23(e)(2) and in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). These factors include "the complexity of the litigation, comparison of the proposed settlement with the likely result of litigation, experience of class counsel, scope of discovery preceding settlement, and the ability of the defendant to satisfy a greater judgment." *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 292 (2d Cir. 1992).

Here, all of the so-called *Grinnell* factors favor approval except perhaps the ability of the defendant to satisfy a greater judgment, but that factor, standing alone, does not suggest that a settlement is unfair. *See, e.g., Castagna v. Madison Square Garden L.P.*, 2011 WL 2208614 at *7 (S.D.N.Y. June 7, 2011). Among other things, the settlement compares favorably with comparable settlements*, see* the settlement memorandum, 22-23; *see* also ECF number 146-3 at pages 1 and 19, and the settlement was negotiated at arm's length by highly experienced counsel under the supervision of a third-party mediator. *See* settlement memorandum at page 7. Moreover, the litigation was highly complex, with significant risks for the class, and plaintiffs had engaged in substantial litigation and discovery before agreeing to a settlement. *See* settlement memorandums 8-17, 21. Finally, the reaction of the class has been very positive. There were zero objections to the proposed settlement and only one valid request for exclusion. *See* pages 1-2 of the reply and ECF number 149 at paragraphs 4 and 5.

That reaction is especially noteworthy, given the many class members are institutional investors or pension funds.  In short, or, in sum, on balance, the *Grinnell* factors strongly favor approval.

Next, I find that the allocation plan is fair and adequate and has a reasonable rational basis, taking into account "the relative strength and values of different categories of claims."  *In re Telik, Inc. Securities Litigation*, 576 F.Supp.2d 570, 580 (S.D.N.Y. 2008).  *See* also the settlement memorandum, pages 23 and 24.

That leaves the motion for fees and costs.  The Second Circuit has articulated six factors that courts must consider when determining whether to award attorneys' fees where the settlement contains a common fund:  (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.  *See In re World Trade Center Disaster Site Litigation*, 754 F.3d 114, 126 (2d Cir. 2014) (quoting *Goldberger v. Integrated Research Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)).  In addition to considering those factors, commonly referred to as the *Goldberger* factors, a Court may use one of two methods to calculate attorneys' fees:  The lodestar method or the percentage-of-the-fund method.  *See, e.g., McDaniel v. County of Schenectady*, 595 F.3d

411, 417 (2d Cir. 2010). The "trend in this circuit" favors the percentage method. *Wal-Mart Stores, Inc. v. Visa USA Inc.*, 396 F.3d 96, 121 (2d Cir. 2005), upon which plaintiffs rely here, and using the lodestar to conduct a cross-check.

Applying the *Goldberger* factors here, I find that the proposed fee award is reasonable. To what I've already said, since there is substantial overlap between the *Grinnell* factors and the *Goldberger* factors, I will add that the percentage proposed is consistent with the percentage of fees commonly awarded in this circuit in comparable litigations. *See* settlement memorandum, pages 26-28 (citing cases, including several of my own prior decisions). The reasonableness of the fee award is further confirmed by the lodestar cross-check, which results in a multiplier of 1.7, which is also comparable, if not below, those in other, similar cases both within and outside of this district. *See* the settlement memorandum at pages 33-35. That confirms that the "otherwise reasonable personal fee" does not result in a windfall. *In re Colgate Palmolive Company ERISA Litigation*, 36 F.Supp. 3d 344, 353 (S.D.N.Y. 2014).

Once again, the reaction of the class supports that conclusion. One and only one class -- arguably, two class members did object to the proposed fee award, *see* ECF numbers 146-9, 147, and the order of earlier today, 155, that small number is itself "powerful evidence that the requested fee is

fair and reasonable."  That's also from *In re Telik, Inc. Securities Litigation* at page 594.  Moreover, I find that the one objection from Mr. Killion is flawed both as a matter of law and a matter of fact, substantially for the reasons set forth in the reply at pages 5-7.  The objection is particularly off base in suggesting that lead counsel's talent and experience is a reason to discount their fee; such a conclusion would provide a perverse incentive to experienced counsel to seek leadership positions, which would obviously redound to the disadvantage of plaintiffs' classes.

With respect to the objection that I received earlier today, number one, as I stated earlier, it's not readily apparent from the letter that it is even a valid objection from a member of the class.  And, in any event, it provides no reason, no citation to any law or the relevant standards.  Bottom line, no basis to conclude that the proposed fee award is unreasonable.

Accordingly, I exercise my "very broad discretion," that's from *Goldberger*, 209 F.3d at 57, to overrule the one or possibly two objections and conclude that the proposed fee award is fair, reasonable, and appropriate.  I further find that lead counsel are entitled to the $850,266.93 in expenses that they seek in reimbursement, substantially for the reasons explained in their motion.  *See* pages 35-37 of the settlement memorandum.

Finally, I approve of service awards to lead plaintiff Mississippi PERS and additionally named plaintiff Monroe County, substantially for the reasons explained in their motion as well. *See* pages 37-39. *See* also ECF number 146-1 and 146-2; as well as *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 101 (E.D.N.Y. 2015).

That resolves the pending motions. I will go ahead and sign the proposed orders making any changes that I think are appropriate.

Is there anything else for us to discuss, Ms. Fox?

MS. FOX: No. Thank you, your Honor. Appreciate the time and consideration.

THE COURT: Thank you for your efforts and, again, your thorough submissions.

Anything else from defendants. Mr. Turner?

MR. TURNER: Nothing, your Honor. Thank you.

THE COURT: Again, I will deal with the orders promptly.

With that, we are adjourned. I wish everybody a pleasant afternoon. Stay safe and healthy.

(Adjourned)