**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE WELLS FARGO & COMPANY SECURITIES LITIGATION | Case No. 1:20-cv-04494-JLR-SN |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS'**
**<u>MOTION FOR APPROVAL OF DISTRIBUTION PLAN</u>**

Dated:  July 29, 2024

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................................. ii

I.     BACKGROUND ....................................................................................................................3

II.    CLAIMS ADMINISTRATION..............................................................................................3

       A.     Disputed Claims..................................................................................................... 4

       B.     Late Claims and Final Cut-Off Date...................................................................... 7

III.   FEES AND EXPENSES OF CLAIMS ADMINISTRATOR ...............................................8

IV.    DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND .......................................9

       A.     Initial Distribution of the Net Settlement Fund ..................................................... 9

       B.     Additional Distribution(s) of the Net Settlement Fund........................................ 10

V.     RELEASE OF CLAIMS......................................................................................................13

VI.    CONCLUSION....................................................................................................................14

# TABLE OF AUTHORITIES

**CASES**                                                                      **PAGE(S)**

*In re Cnova N.V. Sec. Litig.*,
    2021 WL 100548 (S.D.N.Y. Jan. 12, 2021) ..........................................................................14

*In re Eletrobras Sec. Litig.*,
    467 F. Supp. 3d 149 (S.D.N.Y. 2020)...................................................................................13

*In re Henry Schein, Inc. Sec. Litig.*,
    No. 1:18-cv-01428 (E.D.N.Y. July 2, 2021)........................................................................12

*In re Signet Jewelers Ltd. Sec. Litig.*,
    2021 WL 5357468 (S.D.N.Y. Nov. 17, 2021).....................................................................12

*In re Vale S.A. Sec. Litig.*,
    2021 WL 3287343 (S.D.N.Y. July 30, 2021).....................................................................12

*Perkins v. Am. Nat'l Ins. Co.*,
    2012 WL 2839788 (M.D. Ga. July 10, 2012).....................................................................12

Lead Plaintiffs Handelsbanken Fonder AB; Public Employees' Retirement System of Mississippi; State of Rhode Island, Office of the General Treasurer; and Louisiana Sheriffs' Pension & Relief Fund (collectively "Lead Plaintiffs"), respectfully submit this motion for entry of the proposed Order Approving Distribution Plan ("Class Distribution Order"). This Motion is filed in accordance with this Court's Order Approving Plan of Allocation of Net Settlement Fund (ECF No. 205) and Judgment Approving Class Action Settlement (ECF No. 207). The proposed Distribution Plan is included in the accompanying Declaration of Alexander P. Villanova ("Villanova Declaration" or "Villanova Decl."), which was submitted on behalf of the Court-approved Claims Administrator, Epiq Class Action and Claims Solutions, Inc. ("Epiq").[1]

Lead Plaintiffs agreed to settle the Action in exchange for a cash payment of $1 billion, which has been deposited into an escrow account and is earning interest for the benefit of the Settlement Class. The Settlement is among the top six largest securities class action settlements in the past decade, the ninth largest ever in the Second Circuit, and the seventeenth largest ever in the United States. The Settlement was also the largest securities settlement in history not involving a restatement, an action by the Securities and Exchange Commission, or criminal charges or convictions. Following mailing of notice of the Settlement to over 1.8 million potential Settlement Class Members, there were only a minimal number of objections and opt-outs, and the Settlement was approved on September 8, 2023. The Claims Administrator has processed the Claims received and is now ready to distribute the settlement funds to Settlement Class Members who filed valid Claims Forms.

---

[1] Unless otherwise indicated in this memorandum, all terms with initial capitalization shall have the meanings ascribed to them in the Villanova Declaration or the Stipulation and Agreement of Settlement dated as of May 8, 2023 (ECF No. 178-1).

The Class Distribution Order will, upon being entered by the Court, permit the Court-approved Claims Administrator to make an Initial Distribution of the Settlement proceeds to eligible Claimants. The Class Distribution Order will, among other things:  (i) approve the administrative determinations of the Claims Administrator accepting and rejecting Claims submitted in connection with the Settlement reached in the Action; (ii) direct the distribution of the Net Settlement Fund to Claimants whose Claims are accepted by the Claims Administrator as valid and approved by the Court ("Authorized Claimants"), while maintaining a Reserve for any tax liability or claims administration-related contingencies that may arise; (iii) direct that distribution checks state that the check must be cashed within 90 days after the issue date; (iv) direct that Authorized Claimants will forfeit all recovery from the Settlement if they fail to cash their distribution checks in a timely manner; and (v) approve the recommended plan for any funds remaining after the distribution.

As discussed below, there are only twenty Claimants with outstanding requests for Court review of the Claims Administrator's administrative determination with respect to their Claims. Upon the filing of this Motion, Lead Counsel will send each of these Disputing Claimants a copy of the motion papers with the supporting documentation that relates to each Claimant's Disputed Claim, and will inform the Disputing Claimants that they do not need to take any further action to have the Court consider their dispute, but that if they wish to make an additional submission, they should direct it to the Court's attention with a copy to Lead Counsel postmarked no later than August 15, 2024. If any such submission is made, Lead Counsel will submit a reply by August 26, 2024.

## I.    BACKGROUND

On September 8, 2023, the Court entered the Judgment Approving Class Action Settlement (ECF No. 207) approving the one billion all-cash Settlement of this Action and entered an Order Approving Plan of Allocation of Net Settlement Fund (ECF No. 205). The Settlement's "Effective Date" under paragraph 32 of the Stipulation has now occurred, and accordingly the Net Settlement Fund may now be distributed to Authorized Claimants. In accordance with paragraph 27 of the Stipulation, Lead Plaintiffs respectfully request that the Court enter the Class Distribution Order and approve the Distribution Plan.

In accordance with the Court's Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice of Settlement (ECF No. 182) ("Preliminary Approval Order"), Epiq mailed the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses ("Notice") and the Proof of Claim and Release Form ("Claim Form" and, collectively with the Notice, the "Notice Packet") to potential Settlement Class Members, brokers, and other nominees. Villanova Decl. ¶ 2. Epiq disseminated a total of 1,835,695 Notice Packets to potential Settlement Class Members, brokers, and nominees. *Id*. ¶ 4. The Notice Packets informed Settlement Class Members that if they wished to be eligible to participate in the distribution of the Net Settlement Fund, they were required to submit a properly executed Claim Form postmarked (if mailed) or online no later than October 5, 2023. *Id*. ¶ 7.

## II.    CLAIMS ADMINISTRATION

As set forth in the Villanova Declaration, through July 1, 2024, Epiq received and processed 801,957 Claims. Villanova Decl. ¶ 7. All Claims received through July 1, 2024, have been fully processed in accordance with the Stipulation and the Court-approved Plan of Allocation

included in the Notice (*see id*.), and Epiq has worked with Claimants to help them perfect their Claims. *See id.* ¶¶ 19-32. Many of the Claims were initially deficient or ineligible for one or more reasons, including being incomplete, not signed, not properly documented, or otherwise deficient, which required substantial follow-up work by Epiq. *Id*. ¶¶ 19, 22.

If Epiq determined a Claim to be defective or ineligible, Epiq sent a letter (if the Claimant or filer filed a paper Claim) or an email (if the Claimant or filer filed an electronic Claim) to the Claimant or filer, as applicable, describing the defect(s) or condition(s) of ineligibility in the Claim and the steps necessary to cure any curable defect(s) in the Claim ("Deficiency Notices"). *Id*. ¶¶ 20, 22. The Deficiency Notices advised the Claimant or filer that the appropriate information or documentary evidence to complete the Claim had to be sent within twenty (20) days from the date of the Deficiency Notice or Epiq would recommend the Claim for rejection to the extent the deficiency or condition of ineligibility was not cured. *Id*. ¶¶ 20, 23. Examples of the Deficiency Notices are attached as Exhibits A, B, and C to the Villanova Declaration.

Of the 801,957 Claims that are the subject of this motion, Epiq has determined that 452,096 Claims are acceptable in whole or in part, and that 349,861 Claims should be rejected because they are ineligible for payment from the Net Settlement Fund. Villanova Decl. ¶¶ 33-37. Lead Plaintiffs respectfully request that the Court approve Epiq's administrative determinations accepting and rejecting Claims as set forth in the Villanova Declaration.

A.    **Disputed Claims**

Epiq carefully reviewed Claimants' and filers' responses to the Deficiency Notices and worked with them to resolve deficiencies where possible. *Id*. ¶¶ 21, 26. Consistent with paragraph 25(e) of the Stipulation, the Deficiency Notices specifically advised the Claimant or filer of the right, within twenty (20) days after the mailing or emailing of the Deficiency Notice, to contest

4

the rejection of the Claim and request Court review of Epiq's administrative determination of the Claim. *Id*. ¶¶ 20, 23, and Exhibits A and B.

With respect to the fully processed Claims, Epiq received 244 requests for Court review of its administrative determinations. To resolve these disputes without necessitating the Court's intervention, Epiq contacted the Claimants who requested Court review and attempted to answer all questions, to explain Epiq's administrative determination of the Claim's status, and to facilitate the submission of missing information or documentation where applicable. *Id*. ¶ 28. As a result of these efforts, 181 Claimants resolved their deficiencies and their Claims are now recommended for approval. *Id*. An additional forty-three (43) Claimants withdrew their requests for Court review after receiving further explanation of the reasons why their Claims were rejected. *Id*. Currently twenty (20) Claims remain disputed and are being submitted to the Court for resolution ("Disputed Claims"). *Id*.

Exhibit D of the Villanova Declaration contains a copy of each Disputed Claim with its supporting documentation. A summary chart at the beginning of Exhibit D sets forth the reasons for Epiq's rejection of each Disputed Claim. *Id*. For privacy reasons, the documents included in Exhibit D have been redacted to remove personal information such as street addresses, email addresses, telephone numbers, account numbers, Taxpayer ID, Social Security, or Social Insurance Numbers, and all financial and transaction information not related to the Claimants' transactions in Wells Fargo common stock.

Epiq recommends the twenty (20) remaining Disputed Claims for rejection. *Id.* Specifically, Epiq recommends Claim Nos. 2023, 23286, 27370, and 27371 (Exhibits D-1 through D-4) for rejection because the Claimants had a Market Gain on their transactions in Wells Fargo

common stock during the Class Period, and therefore the Recognized Claim for these Claims under the Plan of Allocation is $0.00. *See* Notice ¶¶ 74, 75.

Claims Nos. 5184, 11396, 13961, 24943, 25446, and 22547 (Exhibits D-5 through D-9) are recommended for rejection because these Claimants sold all shares of Wells Fargo common stock that they purchased during the Class Period before the initial corrective disclosure date of January 15, 2019, and therefore any losses these Claimants suffered on those sales were not caused by revelation of the alleged misstatements in the Action. The Recognized Claim for these Claims under the Plan of Allocation is $0.00. *See* Notice ¶ 65(a). Claim No. 22547 (Exhibit D 10) is similarly recommended for rejection because the Claimant both purchased and sold all shares of Wells Fargo common stock within the same disclosure period and, as such, the amount of artificial inflation in the shares was the same on the date of purchase as on the date of sale, and thus any losses this Claimant suffered were not caused by revelation of the alleged misstatements in the Action. Because the artificial inflation per share ($1.93) was the same on the dates of the Claimant's purchases and sale, resulting in a calculation of $1.93 minus $1.93, the Recognized Loss Amount for this Claimant is $0.00. *See* Notice ¶ 65(b)(i), Table A.

Claim No. 22823 (Exhibit D-11) is recommended for rejection because the Claimant did not provide documentation to confirm the disposition of the Wells Fargo common stock that the Claimant purchased during the Class Period. *See* Notice ¶ 64.

Claim Nos. 762, 3914, 19900, and 34668 (Exhibits D-12 through D-15) are recommended for rejection because all shares of Wells Fargo common stock included in these Claims were held through the Wells Fargo & Company 401(k) Plan or Wells Fargo & Company Cash Balance Plan (the "Plans"). The Plans are the direct owners of the shares in question and, as is customary, have submitted their own Claims to participate in the Settlement based on the same shares of Wells

Fargo common stock. Thus, these Disputed Claims have been rejected as duplicates of the Plans'

Claims. Lead Plaintiffs understand that the Plans will allocate the portion of the Settlement they

receive in payment of their Claims among the participants or former participants in the Plans. The

Plans have the ultimate authority and responsibility, consistent with their fiduciary duties, to

allocate the settlement proceeds that they receive among the participants or former participants of

the respective Plans.

Claims Nos. 10284, 33338, 30633, 18901, and 6889 (Exhibits D-16 through D-20) are

recommended for rejection because these Claimants did not purchase any shares of Wells Fargo

common stock during the Class Period, and therefore these Claimants are not members of the

Settlement Class and are not eligible for any recovery from the Settlement. *See* Notice ¶¶ 17, 33,

43; *see also* Notice ¶¶ 64, 65.

The Villanova Declaration explains in detail the calculations that Epiq conducted that

demonstrate the Disputed Claims do not calculate to a Recognized Claim. *Id*. Lead Counsel have

reviewed the Disputed Claims and Epiq's determinations and agree that the Disputed Claims

should be rejected for the reasons set forth in the Villanova Declaration.

**B.    Late Claims and Final Cut-Off Date**

The 801,957 Claims received through July 1, 2024, include 502,733 Claims that were

postmarked or received after October 5, 2023, the Court-approved Claim submission deadline. *Id*.

¶¶ 29, 35. Those late Claims have been fully processed, and 304,211 of them are, but for their late

submission, otherwise eligible to participate in the Settlement. *Id*. Although these 304,211 Claims

were late, they were received while the processing of timely Claims was ongoing. *Id*. Due to the

amount of time needed to process the timely Claims received, the processing of these late Claims

did not delay the completion of the Claims administration process or the distribution of the Net

Settlement Fund. *Id*. ¶ 29. The Court has discretion to accept Claims received after the Claim submission deadline. *See* Preliminary Approval Order ¶ 11; *see also* Notice ¶ 40. Lead Plaintiffs respectfully submit that, when the equities are balanced, it would be unfair to prevent an otherwise eligible Claim from participating in the distribution of the Net Settlement Fund solely because it was received after the Court-approved Claim submission deadline if it were submitted while timely Claims were still being processed.

To facilitate the efficient distribution of the Net Settlement Fund, however, there must be a final cut-off date after which no other Claims may be accepted. Accordingly, Lead Plaintiffs respectfully request that the Court order that any new late Claims (and any requested adjustments to previously filed Claims that would result in an increased Recognized Claim Amount) received after July 1, 2024, shall be barred (*see also* Villanova Decl. ¶ 39(f)) – subject to the proviso that if Lead Counsel later determine that an additional distribution is not cost-effective (*see* Villanova Decl. ¶ 39(e)), then any post-July 1, 2024 new (or adjusted) Claims may, at the discretion of Lead Counsel (and to the extent possible after paying remaining administrative fees and expenses owed), be paid on a *pro rata* basis so as to bring them into parity with other Authorized Claimants who have cashed their distribution checks.

## III.    FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

The Court-approved Claims Administrator for the Settlement, Epiq, was responsible for, among other things, disseminating notice of the Settlement to the Settlement Class, creating and maintaining a website and toll-free telephone helpline, processing Claims, and allocating and distributing the Net Settlement Fund to Authorized Claimants. Villanova Decl. ¶ 2. Epiq's fees and expenses for its work performed through June 30, 2024, are $3,224,188.31, and its estimated fees and expenses for work to be performed in connection with the Initial Distribution are

$264,602.50, which together total $3,488,790.81. *Id*. ¶ 38. Should the estimate of fees and expenses to conduct the Initial Distribution of the Net Settlement Fund exceed the actual cost, the excess will be returned to the Net Settlement Fund and will be available for subsequent distribution to Authorized Claimants. *Id*. To date, Epiq has received payment in the amount of $2,032,720.89 for its fees and expenses. *Id*. Accordingly, there is an outstanding balance of $1,456,069.92 payable to Epiq, which amount includes the estimated fees and expenses to be incurred by Epiq in connection with the Initial Distribution. *Id*. Lead Counsel reviewed Epiq's invoices and respectfully request on behalf of Lead Plaintiffs that the Court approve all of Epiq's fees and expenses.

## IV.    DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND

### A.    Initial Distribution of the Net Settlement Fund

Under the proposed Distribution Plan, Epiq will distribute in the Initial Distribution 90% of the Net Settlement Fund after deducting (i) the payments previously allowed, (ii) payments approved by the Court on this motion, and (iii) any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees (*i.e.*, the Initial Distribution). *See* Villanova Decl. ¶ 39(a). In the Initial Distribution, Epiq will calculate award amounts for all Authorized Claimants as if the entire Net Settlement Fund were to be distributed at this time. *Id*. ¶ 39(a)(1). Epiq will first determine each Authorized Claimant's *pro rata* share of the total Net Settlement Fund based on the Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants. *Id*. Epiq will eliminate from the Initial Distribution any Authorized Claimant whose *pro rata* share calculates to less than $10.00, as these Claimants will not receive any payment from the Net Settlement Fund and will be so notified by Epiq. *Id*. ¶ 39(a)(2). Epiq will then recalculate the *pro rata* share of the Net Settlement Fund for Authorized Claimants who

would have received $10.00 or more based on the amount of the Authorized Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants who would have received $10.00 or more. *Id*. ¶ 39(a)(3). This *pro rata* share is the Authorized Claimant's Distribution Amount. *Id*. Authorized Claimants whose Distribution Amount calculates to less than $200.00 will be paid their full Distribution Amount in the Initial Distribution ("Claims Paid in Full"). *Id*. ¶ 39(a)(4). These Authorized Claimants will receive no additional funds in subsequent distributions. *Id*. After deducting the payments to the Claims Paid in Full, 90% of the remaining balance of the Net Settlement Fund will be distributed *pro rata* to Authorized Claimants whose Distribution Amount calculates to $200.00 or more. *Id*. ¶ 39(a)(5). The remaining 10% of the Net Settlement Fund will be held in reserve (the "Reserve") to address any tax liability and claims administration-related contingencies that may arise. *Id*. To the extent the Reserve is not depleted, the remainder will be distributed in the Second Distribution. *Id*.

To encourage Authorized Claimants to cash their checks promptly, Lead Plaintiffs propose that all distribution checks bear the notation, "CASH PROMPTLY. VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY [DATE 90 DAYS AFTER ISSUE DATE]." *Id*. ¶ 39(b). Authorized Claimants who do not cash their checks within the time allotted or on the conditions stated in paragraph 39(b) of the Villanova Declaration will irrevocably forfeit all recovery from the Settlement, and the funds allocated to these stale-dated checks will be available to be redistributed to other Authorized Claimants in a subsequent distribution, as described below. *Id*. ¶ 39(c).

## B.    <u>Additional Distribution(s) of the Net Settlement Fund</u>

After Epiq has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks, but not earlier than six (6) months after the Initial Distribution,

Epiq will, after consulting with Lead Counsel, conduct the Second Distribution of the Net Settlement Fund. *Id.* ¶ 39(d). In the Second Distribution, any amount remaining in the Net Settlement Fund, after deducting any unpaid fees and expenses incurred, will be distributed to all Authorized Claimants (other than Claims Paid in Full) who cashed their Initial Distribution checks and would receive at least $10.00 from the Second Distribution based on their *pro rata* share of the remaining funds. *Id*. If any funds remain in the Net Settlement Fund after the Second Distribution, and if cost-effective, subsequent distributions will take place at six-month intervals. *Id*. When Lead Counsel, in consultation with Epiq, determine that a further distribution is not cost-effective, if sufficient funds remain to warrant the processing of Claims received after July 1, 2024, Epiq will process those Claims. *Id*. ¶ 39(e). Any of these Claims that are otherwise valid, as well as any earlier received Claims for which an upward adjustment was received after July 1, 2024, may be paid in accordance with paragraph 39(f) of the Villanova Declaration. *Id*. If any funds remain in the Net Settlement Fund after payment of these Claims and any unpaid fees or expenses, Lead Counsel propose that such remaining funds (if there are any) be contributed to the National Consumer Law Center ("NCLC"). Lead Counsel propose that the NCLC be designated as the "non-sectarian, not-for-profit 501(c)(3) organization to be recommended by Lead Counsel" referenced in the Court-approved Plan of Allocation. *See* Notice ¶ 78.

NCLC is a private, non-sectarian, non-profit organization exempt from taxation under Section 501(c)(3) of the Internal Revenue Code. *See Financials*, National Consumer Law Center, https://www.nclc.org/about-us/financials/ (last visited July 11, 2024). For over 50 years, NCLC has worked to build and strengthen a legal network to provide legal services addressed to two main goals: improving access to the legal system for all people and enabling advocates to seek remedies for low-income people where needed. *See History*, National Consumer Law Center,

https://www.nclc.org/about-us/history/ (last visited July 11, 2024).  "NCLC uses its unmatched expertise in consumer law to protect consumers from exploitation and expand access to fair credit by advocating for laws, rules, and regulations that benefit real people: those with low incomes, older people, students, people of color, and others who have been abused, deceived, discriminated against, or left behind in our economy." *See About Us*, National Consumer Law Center, https://www.nclc.org/about-us/ (last visited July 11, 2024). NCLC has received "the highest ratings from charity watchdogs" and "welcomes *cy pres* designations of unclaimed settlement funds from class action lawsuits, which are used to support [its] consumer rights work advancing the core interests of underlying class members." *See History*, National Consumer Law Center, https://www.nclc.org/about-us/history/ (last visited July 11, 2024), and *Cy Pres*, National Consumer Law Center, https://www.nclc.org/get-involved/ways-to-give/cy-pres/ (last visited July 11, 2024).

Federal courts have approved NCLC as a *cy pres* recipient of residual balances of net settlement funds in other settlements. *See, e.g.*, *In re Signet Jewelers Ltd. Sec. Litig.*, 2021 WL 5357468, at *2 (S.D.N.Y. Nov. 17, 2021); *In re Vale S.A. Sec. Litig.*, 2021 WL 3287343, at *2 (S.D.N.Y. July 30, 2021); Memorandum of Law in Support of Lead Plaintiff's Unopposed Motion for Approval of Distribution Plan, *In re Henry Schein, Inc. Sec. Litig.*, No. 1:18-cv-01428 (E.D.N.Y. June 24, 2021), ECF No. 92 & Order Approving Distribution Plan, *In re Henry Schein, Inc. Sec. Litig.*, No. 1:18-cv-01428 (E.D.N.Y. July 2, 2021), ECF No. 96, attached hereto as Exhibit 1; *Perkins v. Am. Nat'l Ins. Co.*, 2012 WL 2839788, at *5 (M.D. Ga. July 10, 2012) ("The Court is also satisfied that The National Consumer Law Center's mission, reputation and established track record will ensure that it will be a good steward of the grant award made to it.").

## V.    RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to (i) bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and (ii) provide that all persons involved in any aspect of Claims processing, or who are involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from all claims arising out of that involvement. *See* Stipulation ¶ 29; *see also* Notice ¶ 79. Accordingly, Lead Plaintiffs respectfully request that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, from all claims arising out of that involvement, and bar all Settlement Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Lead Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to Authorized Claimants.

Courts have repeatedly approved similar releases in connection with the distribution of settlement proceeds. *See, e.g.*, *In re Eletrobras Sec. Litig.*, 467 F. Supp. 3d 149, 151 (S.D.N.Y. 2020) ("All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Proofs of Claim submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are hereby released and discharged from any and all claims arising out of such involvement, and all members of the

13

Settlement Class, whether or not they receive payment from the Net Settlement Fund, are hereby barred from making any further claims against the Net Settlement Fund, Lead Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent, or any other agent retained by Lead Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund beyond the amount allocated to them as Authorized Claimants."); *In re Cnova N.V. Sec. Litig.*, 2021 WL 100548, at *2 (S.D.N.Y. Jan. 12, 2021) (approving substantially similar language in order authorizing distribution of settlement proceeds).

## VI.    CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court grant their Motion for Approval of Distribution Plan and enter the [Proposed] Order Approving Distribution Plan.

14

Dated: July 29, 2024

Respectfully submitted,

/s/ Laura H. Posner*

**COHEN MILSTEIN SELLERS & TOLL PLLC**

Laura H. Posner (LP-8612)
88 Pine Street, Fourteenth Floor
New York, New York 10005
Tel.: (212) 220-2925
Fax: (212) 838-7745
lposner@cohenmilstein.com

Steven J. Toll (admitted *pro hac vice*)
Julie G. Reiser (admitted *pro hac vice*)
S. Douglas Bunch (SB-3028)
Molly J. Bowen (admitted *pro hac vice*)
1100 New York Avenue, N.W., Suite 500
Washington, DC 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699
stoll@cohenmilstein.com
jreiser@cohenmilstein.com
dbunch@cohenmilstein.com
mbowen@cohenmilstein.com

*Counsel for Lead Plaintiffs Public Employees' Retirement System of Mississippi and State of Rhode Island, Office of the General Treasurer, on behalf of the Employees' Retirement System of Rhode Island, and Co-Lead Counsel for the Settlement Class*

s/ Jonathan D. Uslaner*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

Jeroen van Kwawegen (JV-1010)
Michael D. Blatchley (MB-7279)
1251 Avenue of the Americas
New York, New York 10020
Tel.: (212) 554-1400
Fax: (212) 554-1444
jeroen@blbglaw.com
michaelb@blbglaw.com

Jonathan D. Uslaner (JU-1942)
Lauren M. Cruz (admitted *pro hac vice*)
2121 Avenue of the Stars
Los Angeles, California 90067
Tel.: (310) 819-3470
jonathanu@blbglaw.com
lauren.cruz@blbglaw.com

*Counsel for Lead Plaintiffs Handelsbanken Fonder AB and Louisiana Sheriffs' Pension & Relief Fund, and Co-Lead Counsel for the Settlement Class*

**KLAUSNER, KAUFMAN, JENSEN & LEVINSON**

Robert D. Klausner (admitted *pro hac vice*)
7080 NW 4th Street
Plantation, Florida 33317
Tel.: (954) 916-1202
Fax: (954) 916-1232
bob@robertdklausner.com

*Additional Counsel for Louisiana Sheriffs' Pension & Relief Fund*

* All electronic signatures ("*/s/*") are signed with consent of counsel pursuant to Rule 8.5 of this Court's Electronic Case Filing Rules & Instructions, as of July 24, 2023.